UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

RELIANCE TELEPHONE OF GRAND
FORKS INCORPORATED, a North Dakota
corporation, and RELIANCE SYSTEMS,
INC., a Nevada corporation,

               Plaintiffs,

v.

YANKTON COUNTY, SOUTH DAKOTA
and NETWORK COMMUNICATIONS
INTERNATIONAL CORP.,
               Defendants.

Case No.: 4:24-cv-04098

**MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION TO
COMPEL DISCOVERY FROM
DEFENDANT YANKTON COUNTY,
SOUTH DAKOTA**

## INTRODUCTION

Plaintiffs' Motion to Compel must be denied.  Plaintiffs cannot require Defendant Yankton County, South Dakota ("Yankton County") to disclose confidential email communications between and amongst the Defendants and their counsel that were exchanged several months after this lawsuit was commenced because those communications are protected from disclosure by the common interest privilege, joint defense privilege, and attorney-client privilege.

## BACKGROUND

To date, Yankton County has produced 37,255 documents in discovery, and has responded to four (4) sets of requests for production and two (2) sets of interrogatories in this lawsuit. *Wilka Dec., ¶2.*

In its Motion to Compel, the Plaintiffs seek to compel Yankton County to "produce

twenty (20) documents"[1] that Yankton County identified on its privilege log and withheld on the basis of the joint defense or common interest privilege. *(DOC 70, 77).* Plaintiffs' motion overstates the extent of the discovery dispute between the parties. To be clear, all twenty-one (21) of the documents that Yankton County identified on its privilege log and withheld on the basis of the joint defense privilege and common interest privilege involve an off-shoot or portions of the exact same email chain.[2] The email chain in Yankton County's Supplemental Privilege Log Document No. 29 contains the entire email string at issue, which includes the following communications spanning from February 9, 2024 to April 4, 2024:

- Email from the Attorney for Network Communications International Corp. ("NCIC"), Lee Petro, to NCIC's President/CEO Bill Pope on February 9, 2024
- Email from Bill Pope to Yankton County Sheriff Preston Crissey on February 9, 2024
- Email from Sheriff Crissey to Bill Pope on February 10, 2024
- Email from Bill Pope to Sheriff Crissey, cc Yankton County's Attorney William Harrie, on February 10, 2024
- Email from Attorney Harrie to Bill Pope and Sheriff Crissey on February 13, 2024
- Email from Bill Pope to Attorney Harrie and Sheriff Crissey on February 13, 2024
- Email from Attorney Harrie to Bill Pope and Sheriff Crissey on February 14, 2024
- Email from Bill Pope to Attorney Harrie and Sheriff Crissey on February 14, 2024
- Email from Sheriff Crissey to Attorney Harrie and Bill Pope on February 14, 2024
- Email from Bill Pope to Sheriff Crissey and Attorney Harrie on February 14, 2024
- Email from Bill Pope to Sheriff Crissey and Attorney Harrie on February 22, 2024
- Email from Bill Pope to Sheriff Crissey and Attorney Harrie on March 3, 2024
- Email from Attorney Harrie to Bill Pope, cc Sheriff Crissey, on March 4, 2024
- Email from Bill Pope to Attorney Harrie, cc Sheriff Crissey, on March 4, 2024
- Email from Attorney Harrie to Bill Pope, cc Sheriff Crissey and Attorney Harrie's legal staff member Rachel Henry, on March 4, 2024
- Email from Bill Pope to Attorney Harrie, cc Sheriff Crissey and Rachel Henry, on March 4, 2024

---

[1] Yankton County's Supplemental Privilege Log lists twenty-one (21) documents that it withheld on the basis of the Attorney Client Privilege, Common Interest Privilege and Joint Defense Privilege.

[2] Indeed, Plaintiffs' counsel was specifically advised that "the emails that we have withheld, Docs. 22-42, are not 20 separate email communications. Many of them are repeats of the same email chain or parts of the same email chain." *Wilka Dec, Ex. B.*

- Email from Bill Pope to Attorney Harrie, cc Sheriff Crissey and Rachel Henry, on March 22, 2024
- Email from Attorney Harrie to Bill Pope, cc Sheriff Crissey and Rachel Henry, on March 22, 2024
- Email from Bill Pope to Attorney Harrie, cc Sheriff Crissey and Rachel Henry, on March 22, 2024
- Email from Attorney Harrie to Bill Pope, cc Sheriff Crissey and Rachel Henry, on April 4, 2024
- Email from Bill Pope to Attorney Harrie, cc Sheriff Crissey and Rachel Henry, on April 4, 2024
- Email from Attorney Harrie to Bill Pope, cc Sheriff Crissey and Rachel Henry, on April 4, 2024
- Email from Bill Pope to Attorney Harrie, cc Sheriff Crissey and Rachel Henry, on April 4, 2024
- Email from Attorney Harrie to Bill Pope, cc Sheriff Crissey, Rachel Henry, and Scott Kerr with EMC Insurance (Yankton County's insurer), on April 4, 2024
- Email from Bill Pope to Attorney Harrie, cc Sheriff Crissey, Rachel Henry and Scott Kerr, on April 4, 2024

*(DOC 75, Ex. R – Yankton County's First Supplemental Privilege Log).*

The email chains in Yankton County's Supplemental Privilege Log Document Nos. 22, 23, 24, 25, 26, 27, 30, 31, 32, 33, 34, 35, 36, 38, 40, 41, and 42 contain smaller subsets of this exact same email string. *(DOC 75, Ex. R).* Yankton County's Supplemental Privilege Log Document Nos. 28 and 39 also include subsets of this exact same email string, followed by subsequent email communications between Sheriff Preston Crissey and Yankton County's Attorney, William Harrie, that are undisputedly protected by the Attorney-Client Privilege. *(DOC 75, Ex. R).* That leaves Yankton County's Supplemental Privilege Log Document No. 37, which also contains a subset of the exact same email string set forth above, but includes one additional email from Bill Pope to Attorney William Harrie and Sheriff Preston Crissey dated February 14, 2024. *(DOC 75, Ex. R).* Thus, in reality, there is only one (1) email string and one (1) additional email that has been withheld by Yankton County on the basis of the Joint Defense Privilege, Common Interest Privilege, and Attorney-Client Privilege. Notably, all of these email

communications at issue took place ***several months after*** this lawsuit was commenced by the Plaintiffs, and thus, are irrelevant to any claim or defense. *(DOC 1).*

Yankton County would note that it provided Plaintiffs with a Privilege Log on October 31, 2024, identifying the documents at issue and providing a brief description of the subject matter contained in the communications being withheld.[3] *Wilka Dec., Ex. A.* In an email dated December 18, 2024, Plaintiffs demanded a more detailed description of the subject matter of those communications, and Yankton County cooperated and provided a Supplemental Privilege Log that included a more detailed description of the documents that were withheld on January 14, 2025. *(DOC 75-18, Ex. R).* There were no phone conferences or meetings between counsel for Plaintiffs and counsel for Yankton County to discuss these discovery disputes. On February 19, 2025, Yankton County's counsel advised Plaintiffs' counsel that they did not believe a meet and confer call would resolve the disagreement regarding the privileged communications. *Wilka Dec., Ex. B.*

However, from February 19, 2025 through the filing of the motion to compel on April 4, 2025, there were no further communications between counsel for Plaintiffs and counsel for Yankton County whatsoever regarding this discovery dispute. *Wilka Dec.,* ¶ 5. Plaintiffs now claim, for the first time, that Defendant NCIC produced two (2) documents ***on March 20, 2025***, that "waived" Yankton County's privilege. Thus, Yankton County has had no opportunity to meet and confer with Plaintiffs to address Plaintiffs' new contention that the privileges have been waived.

For the reasons set forth below, Plaintiffs' Motion to Compel should be denied because the documents it seeks are privileged, and thus, are not subject to discovery.

---

[3] Thus, Plaintiffs' statement on page 7 of its brief (DOC 77) that Yankton County failed to comply with Fed. R. Civ. P. 26(b)(5)(A) is completely false.

## LEGAL STANDARD

Fed. R. Civ. P. 26 governs the scope of discovery in civil matters, providing:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding ***any nonprivileged matter*** that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) (emph. added). If a party does not produce requested documents, the

party seeking discovery requests may move for an order compelling production.  Fed. R. Civ. P.

37(a)(3)(B).

A motion to compel answers to interrogatories or requests for the production of

documents is governed by Fed. R. Civ. P. 37. That rule provides in pertinent part as follows:

On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

*See* Fed. R. Civ. P. 37(a)(1). D.S.D. Local Rule 37.1 similarly provides:

A party filing a motion concerning a discovery dispute must file a separate certification describing the good faith efforts of the parties to resolve the dispute. If the court schedules a hearing on the motion, at least 7 calendar days prior to the hearing, or sooner as the court may require, the parties must file a statement setting forth the matters upon which they have been unable to agree.

Regarding the meet-and-confer requirement, this Court has recognized:

Case law puts "flesh on the bone" of the meet-and-confer requirement. The certification mentioned in Rule 37 must include "the names of the parties who conferred or attempted to confer, the manner by which they communicated, the dispute at issue, as well as the dates, times, and results of their discussions, if any." *Shuffle Master, Inc. v. Progressive Games*, Inc., 170 F.R.D. 166, 170-171 (D. Nev. 1996). "Good faith" requires that the parties made a genuine attempt to resolve the discovery dispute without involving the court. *Id*. Finally,

5

"conferment" requires the parties "to have had an actual meeting or conference." *Id*. Hence, prior to making a motion to compel, "a moving party must personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." *Id*. Unilaterally sending correspondence demanding that the other side comply with a discovery request does not satisfy the requirement. *Id*. at 172. …

The purpose of the meet-and-confer requirement is to "force litigants to attempt to  resolve, or at least narrow, the disputed issues to prevent the unnecessary waste of time and effort on any given motion." *Id*. at 199.

Nor is the meet-and-confer requirement satisfied by the sending of a letter that indicated that a motion to compel would be filed if the opposing party did not comply with discovery requests. *Bolger v. District of Columbia*, 248 F.R.D. 339, 343-344 (D.D.C. 2008). Likewise, in *Ross v. Citifinancial, Inc.*, 203 F.R.D. 239 (S.D. Miss. 2001), the court specifically held that sending a letter discussing the discovery issue did not satisfy the meet-and-confer requirement or the prerequisite of having conferred in good faith. *Id*. at 239-240. The court noted that the requirement was not "an empty formality," and that, in a large number of cases, obliging the attorneys to meet and confer resulted in resolution of the discovery dispute. *Id*.

The decision in *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456 (D. Kan. 1999), illustrates how fact-dependent the inquiry is. In that case, four telephone calls by the movant on a motion to compel were not enough to satisfy the meet-and-confer requirement where all four calls took place while opposing counsel was out of the country on vacation. Id. at 458-459. As the court explained, the meet-and-confer requirement is intended to require counsel to "converse, confer, compare views, consult and deliberate." *Id*. at 459. Therefore, sending a letter or making an oral request that simply demands compliance with the discovery request generally does not satisfy the meet-and-confer requirement. *Id*. The court frowned upon the movant's setting of an arbitrary deadline for the filing of a motion to compel because the facts showed that the parties were not at impasse. *Id*. They had yet to engage in a discussion of the genuineness of the opposing party's objections, what, if any, documents the discovering party was reasonably capable of producing, and what specific, genuine issues remained that could not be resolved without the court's intervention. *Id*.

*Lureen v. Holl*, 2017 U.S. Dist. LEXIS 140420, 2017 WL 3834739, *8-10 (D.S.D. August 31, 2017).

## ARGUMENT AND AUTHORITIES

**I.    Plaintiffs failed to meet and confer in good faith with respect to their new "waiver" argument before filing their motion to compel**.

Counsel for Yankton County stood by its objections related to the attorney-client privilege, common interest privilege, and joint defense privilege, and acknowledged on February 19, 2025, that they "do not believe a meet and confer call will resolve our disagreement." *Wilka Dec., Ex. B.* However, in support of its motion to compel, Plaintiffs raise, for the very first time, that Yankton County and NCIC waived the common interest/joint defense privilege because NCIC produced two (2) documents it previously had withheld under a claim of joint defense/common interest privilege on ***March 20, 2025***.  Plaintiffs rushed to the Court and filed this motion to compel shortly thereafter on ***April 4, 2025***.  The "waiver" issue was never raised by Plaintiffs with Yankton County prior to the Plaintiffs filing their motion to compel.  Indeed, there were zero communications between Plaintiffs and Yankton County regarding this discovery dispute between March 20, 2025 and April 4, 2025.  *Wilka Dec.* ¶ 5. Plaintiffs' failure to communicate with Yankton County about this issue before filing its motion to compel constitutes a clear failure to meet and confer in good faith as required by Fed. R. Civ. P. 37. Thus, at a minimum, Plaintiffs' argument regarding waiver of the privilege after March 20, 2025, is not properly before the Court on Plaintiffs' motion to compel and must be summarily rejected.

**II.    The email communications at issue are not discoverable because they are privileged.**

In diversity actions, a federal court must apply state law to determine the existence and scope of attorney-client privilege. Fed. R. Evid. 501; *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000). Because this matter arises under diversity jurisdiction, the court must apply South Dakota law to determine if the documents are privileged or whether a privilege has been waived.  Thus, the Plaintiffs' heavy reliance on cherry-picked case law from other

jurisdictions outside of the 8th Circuit relating to the common interest privilege and joint defense privilege is misguided, as those cases are not controlling or persuasive to the extent they contradict South Dakota law. In fact, Plaintiffs hardly analyze or address the plain language of SDCL § 19-19-502(b)(3), which is South Dakota's codified common interest privilege. *See Saar v. Kingdom Trust Co.*, 2020 U.S. Dist. LEXIS 95959, at *10 (D.S.D. June 2, 2020).

Under South Dakota law, "privileges created by statute are to be strictly construed to avoid suppressing otherwise competent evidence." *State v. Catch the Bear*, 352 N.W.2d 640, 646-47 (SD 1984). "The burden of showing entitlement to assert the privilege rests with [the] claimant." *Id*. at 645.

**A. Yankton County and NCIC have always shared a common interest throughout this litigation, and thus, their communications are privileged under SDCL § 19-19-502(b)(3).**

SDCL 19-19-502 provides, in pertinent part:

(a) Definitions. As used in this section:
(1) A "client" is a person, a fiduciary of a trust or estate, public officer, or corporation, limited liability company, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him;
(2) A representative of the client is one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client;
(3) A "lawyer" is a person authorized, or reasonably believed by the client to be authorized, to engage in the practice of law in any state or nation;
(4) A "representative of the lawyer" is one employed by the lawyer to assist the lawyer in the rendition of professional legal services;
(5) A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.
(b) General rule of privilege. *__A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:__*
*__(1) Between himself or his representative and his lawyer or his lawyer's representative;__*
...

8

(3) ***By him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein;***

…

(c) Who may claim privilege. The privilege may be claimed by the client, his guardian or conservator, the personal representative of a deceased client, or the successor, trustee, or similar representative of a corporation, association, or other organization, whether or not in existence. The person who was the lawyer or the lawyer's representative at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the client.

SDCL § 19-19-502 (emph. added).

Under South Dakota law, a privileged communication has four elements: (1) it is confidential and (2) communicated for the purpose of rendering or receiving legal services to a (3) client who is (4) in one of five statutorily enumerated relationships. *State v. Catch the Bear*, 352 N.W.2d 640, 657 (SD 1984). Notably, SDCL 19-19-502(b) and the South Dakota Supreme Court's articulated elements for establishing a privileged communication do not include a requirement for any "joint defense agreement."

The "common interest privilege" is also referred to as the joint defense privilege. "When information is exchanged between various co-defendants and their attorneys[,]… this exchange is not made for the purpose of allowing unlimited publication and use, but rather, the exchange is made for the limited purpose of assisting in their common cause." *John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers*, 913 F.2d 544, 556 (8th Cir. 1990). Indeed, it is well established that [t]he common interest privilege protects communications between individuals and entities and counsel for another person or company when the communications are 'part of an on-going and joint effort to set up a common defense strategy.'" *Robert Bosch LLC v. Pyon Mfg. Corp.*, 263 F.R.D. 142 (D. Del. 2009).

***"[A] 'joint-defense' or 'common-interest' privilege protects confidential communications made by the client or his lawyer to a lawyer representing another in a matter of common interest."*** *UltiMed, Inc. v. Becton, Dickson and Co.*, 2008

9

U.S. Dist. LEXIS 90537, 2008 WL 4849034 at *3 (D. Minn., Nov. 6, 2008), citing *John Morrell & Co. v. Local Union 304A*, 913 F.2d 544, 555-56 (8th Cir. 1990); *see also, In re Grand Jury Subpoena*, 274 F.3d 563, 572 (1st Cir. 2001) ("***The joint defense privilege protects communications between an individual and an attorney for another when the communications are part of an ongoing and joint effort to set up a common defense strategy***.") [internal quotations and citations omitted], citing *United States v. Bay State Ambulance and Hosp. Rental Service*, Inc., 874 F.2d 20, 28 (1st Cir. 1989) [citation omitted]; *In re QTL Phototherapeutics, Inc.*, 25 Fed. Appx. 825, 826 (Fed. Cir. 2001) ("[W]hen two parties communicate to each other through their attorneys and share a sufficient common interest, those communications may be protected by the attorney-client privilege insofar as they are sought by a party that was not involved in the communications.").

"This doctrine softens the ordinary requirement that the lawyer-client communications must be made in confidence in order to be protected by the privilege.*" In re Grand Jury Subpoena Duces Tecum*, supra at 922. Moreover, ***"[i]t is fundamental that 'the joint defense privilege cannot be waived without the consent of all parties to the defense*.'" *John Morrell & Co. v. Local Union 304A*, supra* at 556, quoting *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21, 29 (N.D. Ill. 1980). ***A common legal interest can be legal, factual, or strategic, in nature*.** *See, Pucket v. Hot Springs School Dist. No. 23-2*, 239 F.R.D. 572, 583 (D.S.D. 2006), quoting *In re Grand Jury Subpoena Duces Tecum*, supra at 922.

***Further, the common interest privilege extends to work created or shared with a common interest party***. *See, In re Grand Jury Subpoena Duces Tecum*, supra at 939; *John Morrell & Co. v. Local Union 304A*, supra* at 555-56 (***finding that clients and others shared the joint defense privilege because they were aligned on the same side of the litigation***); *see also, Hanson v. United States Agency for Intern. Development*, 372 F.3d 286, 292 (4th Cir. 2004) ("[T]he common interest doctrine applies when two or more parties consult or retain an attorney concerning a legal matter in which they share a common interest," and "[i]n this context the communications between each of the clients and the attorney are privileged against third parties[.]") [internal citations and quotations omitted]; *In re Regents of University of California*, 101 F.3d 1386, 1391 (Fed. Cir. 1996) ("When such pre-litigation advice and assistance serve a shared legal interest, the parties to that interest do not lose the privilege when litigation arises."), *cert. denied, sub. nom., Genentech, Inc. v. Regents of the University of California*, 520 U.S. 1193, 117 S. Ct. 1484, 137 L. Ed. 2d 695 (1997*); Haines v. Liggett Group, Inc.*, 975 F.2d 81, 94 (3rd Cir. 1992) ("This joint defense privilege enables counsel for clients facing a common litigation opponent to exchange privileged communications and attorney work product in order to adequately prepare a defense without waiving either privilege.") [citation omitted]; *In re Grand Jury Subpoenas*, 89-3 and 89-4, John Doe 89-129, 902 F.2d 244, 249 (4th Cir. 1990) (The joint defense privilege applies "not only to communications subject to the attorney-client privilege, but also to communications protected by the work-product doctrine.").

*Tekstar Communs., Inc. v. Sprint Communs. Co., L.P.*, 2009 U.S. Dist. LEXIS 144184, 2009 WL 1071188, *10-12 (D. Minn. May 14, 2009) (emph. added). *See also Pucket v. Hot Springs Sch. Dist. No. 23-2*, 239 F.R.D. 572, 582-83 (D.S.D. 2006) ("The common interest doctrine permits persons or entities with a common interest to share privileged information without waiving the underlying privilege.").

> *The [ ] "common interest" rule provides protection of exchanged privileged communications between attorneys or parties who face a common litigation opponent.* Travelers Cas. & Surety Co.*, 197 F.R.D. at 606-607. **This protection encourages "'the free flow of information from [the] client to [the] attorney' when a number of clients share a common interest in litigation."** *Id.*, quoting *United States v. Schwimmer*, 892 F.2d 237, 243-44 (2nd Cir.1989). **This rule applies in situations where the parties have a "common litigation opponent" or when information is exchanged between "friendly litigants" with similar interests.** *Travelers Cas. & Surety Co.*, 197 F.R.D. at 607 (citations omitted). **The common interest doctrine requires that the cooperating parties can share confidential communications only if the parties have common legal interests in which they are sharing these confidential communications for formulating a common legal strategy.** *See Cigna Ins. Co. v. Cooper Tires and Rubber, Inc.*, No. 3:99CV7397, 2001 U.S. Dist. LEXIS 7546, 2001 WL 640703 (N.D. Ohio May 24, 2001), unpublished.

*Bosley v. 21 WFMJ*, 2005 U.S. Dist. LEXIS 59324, *14 (N.D. Ohio June 24, 2005) (emph. added).

The District Court of South Dakota has previously held that confidential communications between two parties who have a common interest are protected under the common interest doctrine even if an attorney is not a party to the communication. *Pucket*, 239 F.R.D. at 583-84. In addition, this Court has previously recognized the various approaches by other jurisdictions in addressing the common interest privilege, as some have adopted a more flexible approach in determining whether two parties' interests are "common." *See Saar*, 2020 U.S. Dist. LEXIS 95959, at *10-12.

Here, Plaintiffs ignore the nuances recognized by various jurisdictions in approaching the common interest privilege, and instead suggest that the strictest approach is undoubtedly the

standard. *See* Doc 77 (Pl. Brief) at 10, 14-15. Plaintiffs fail to acknowledge that South Dakota

has not adopted the strictest approach. *See Saar*, 2020 U.S. Dist. LEXIS 95959, at *10-12. Thus,

at the outset, Plaintiffs' arguments regarding the "common" interest between Yankton County

and NCIC fall woefully short.

Nevertheless, under either approach, Yankton County and NCIC's interests are

undoubtedly in common.  A common interest may be inferred if parties are aligned on the same

side in a litigation.  *Northwest Airlines v Phillips*, 2009 U.S. Dist. LEXIS 146081, *8  (D. Minn.

Nov. 20, 2009) (citing *John Morrell & Co. v. Local Union 304A of United Food & Commercial

Workers,* 913 F.2d 544, 555-56 (8th Cir. 1990) (summarily observing that parties "shared a joint

defense privilege by virtue of being aligned on the same side")). Yankton County and NCIC are

co-defendants, and thus, are on the same side in this litigation.  Consequently, a common interest

can be inferred by this Court.  Furthermore, Plaintiffs' causes of action against Yankton County

and NCIC arise from the exact same set of common facts—namely, Yankton County's

termination of its lease agreements with Plaintiffs and Yankton County's subsequent entry into a

contract with NCIC for inmate communication services for the Yankton County Jail, and thus,

involve common witnesses.  *(DOC 28).* Plaintiffs' claims against Yankton County and NCIC,

while different causes of action, are intertwined, and Yankton County and NCIC are united in

opposing Plaintiffs' claims because they both disagree with Plaintiffs' allegations on what

occurred.

More importantly, in its Complaint, Plaintiffs have asserted a cause of action for, among

other things, specific performance of their 5-year exclusive lease agreements with Yankton

County for space at the Yankton County jail for Plaintiffs' inmate communications system.

*(DOC 28).*  Yankton County and NCIC both desire to continue their contractual relationship for

NCIC's provision of inmate communications services at the Yankton County Jail.  Thus, Yankton County and NCIC's joint defense in this litigation stems from that shared common interest.  Yankton County and NCIC share a common interest in having the 5-year exclusive lease agreements between Yankton County and the Plaintiffs for space at the Yankton County Jail related to Plaintiffs' inmate communications systems being deemed void ab initio, or alternatively, properly terminated based on Plaintiffs' material breaches of contract, *and* for Yankton County's subsequent execution of its contract with NCIC for the provision inmate communications services at the Yankton County Jail to be deemed legal and proper so that NCIC can continue to provide its inmate communication services at the Yankton County Jail. *(DOC 49, 51).* Both Yankton County and NCIC also share a common interest in retaining the revenue that they have received pursuant to that contractual relationship. *(DOC 28, 49, 51).*  Thus, Yankton County and NCIC clearly share a mutual common interest in defense strategy and in the outcome of this litigation—and they have since day one.  In addition, Yankton County and NCIC's preservation of affirmative defenses in their Answers to the Complaint did not abrogate their common interest. *See* Doc. 77, p. 15 (contending Yankton County and NCIC blame each other).  Both Yankton County and NCIC share a common interest in defeating the Plaintiffs' claims against them.

At the time of the email communications at issue, both NCIC and Yankton County were represented by counsel.  NCIC was represented by Attorney Lee Petro, and Yankton County was represented by Attorney William Harrie. *(DOC 75, Ex. R).*   The emails at issue involved confidential communications amongst and between the following individuals:

- Bill Pope – representative of NCIC
- Sheriff Preston Crissey - representative of Yankton County

- Attorney Lee Petro – attorney for NCIC[4]
- Attorney William Harrie – attorney for Yankton County
- Rachel Henry – a representative (legal staff member) of Attorney William Harrie (cc only)
- Scott Kerr – representative of Yankton County (claims adjuster for Yankton County's insurer, EMC Insurance Company) (cc only)

*(DOC 75, Ex. R).*   All of the aforementioned individuals are members of the "common interest group," and thus, are covered by the common interest privilege in SDCL 19-19-502(b)(3).

### B. Yankton County will submit the email communications to the Court for *in camera* review.

Yankton County is agreeable to submitting the email communications at issue to the Court for a review *in camera,* and indeed, is filing a joint stipulated motion requesting permission to submit the subject email communications to the Court for *in camera* review simultaneously with the filing of this Memorandum.  Those email communications span February 9, 2024 to April 4, 2024, while this lawsuit was pending in the District of North Dakota.  *(DOC 75, Ex. R).*   It is important to note that this lawsuit was commenced against Yankton County on November 28, 2023.  *(DOC 1).*  On March 1, 2024, Plaintiffs filed a Motion to Amend the Complaint to add NCIC as a defendant in this lawsuit.  *(DOC 21).*   Yankton County filed a Motion to Dismiss for Lack of Personal Jurisdiction or, alternatively, for Improper Venue and Forum Non Conveniens on March 4, 2024.  *(DOC 22).*  Plaintiffs and Yankton County filed a Joint Stipulation to Grant Plaintiffs' Motion to Amend Complaint, Defendant's

---

[4] Plaintiffs' assertions in its brief that NCIC did not have an attorney until May 13, 2024 is patently false and intentionally misleading to this Court.  NCIC's attorney, Lee Petro, was named in Yankton County's Supplemental Privilege Log relative to communications that took place on February 9, 2024 *(DOC 75, Ex. R)*, and more importantly, Plaintiffs attached Exhibit Q to Alan Anderson's Declaration, which includes emails that clearly state that NCIC is represented by counsel as of February 9, 2024, *and* includes a communication from Attorney Lee Petro to Bill Pope dated February 9, 2024. *(DOC 75, Ex. Q)*

Motion to Dismiss and Transfer Civil Action on March 18, 2024. *(DOC 26).* The Amended Complaint was filed on March 20, 2024, and NCIC was served with the Summons and Amended Complaint on March 25, 2024. *(DOC 28, 32).*

Plaintiffs, Yankton County and NCIC filed a Joint Stipulation to Transfer Civil Action on May 13, 2024. *(DOC 36).* But given the parties' active litigation filings and obvious representation by counsel dating back to February 9, 2024, Plaintiffs' suggestion that the emails withheld by Yankton County could not be privileged because they occurred before Plaintiffs agreed to transfer this action to the District of South Dakota and added NCIC as a named Defendant on May 14, 2024 is specious. *See* Doc. 77, at 11.

## C. The withheld email communications relate to legal, not business, advice.

Jurisdictions recognize that the common interest privilege only applies to legal advice, not business advice. *See Saar*, 2020 U.S. Dist. LEXIS 95959, at *12 (citing Edna Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 383). Here, Plaintiffs contend, without any basis whatsoever, that "Yankton cannot establish that the withheld communications related to legal, not business advice, much less a sufficient common interest." (DOC 77, pg. 15). Plaintiffs' assumption lacks support and is frankly wrong. Again, Yankton County respectfully submits that this Court's *in camera* review will confirm that the email communications were all made with an expectation of confidentiality and for the purpose of rendering or receiving legal services, not business advice. The email communications themselves clearly demonstrate an effort by Yankton County and NCIC to set up and establish a joint defense strategy, not the seeking of business advice.

This Court's *in camera* review of the email communications at issue will confirm that the communications at issue involved confidential discussions regarding litigation matters, the status

of the litigation, litigation defense strategy, Attorney William Harrie's mental impressions, joint defenses to the claims made by Plaintiffs, and efforts to prepare a joint defense to the Plaintiffs' lawsuit.   Again, these are all communications related to the legal matters in which NCIC and Yankton County share a common interest, and were made for the purpose of facilitating the rendition of professional legal advice and services for Yankton County and NCIC.

### D.  NCIC has not authorized Yankton County to disclose confidential communications that fall under the purview of SDCL § 19-19-502(b)(3).

Notably, under the plain language of SDCL 19-19-502(b)(3), NCIC has the ability to "prevent any other person," ***including Yankton County***, from disclosing confidential communications "by [NCIC] or his representative … to a lawyer… representing another party in a pending action and concerning a matter of common interest therein." SDCL § 19-19-502(b)(3). In other words, NCIC representatives, including Bill Pope, who communicated with Attorney William Harrie, who represented Yankton County before this case was transferred to the District of South Dakota, may prohibit disclosure of their communications "concerning a matter of common interest."  The Restatement (Third) of the Law Governing Lawyers § 76, cmt. G further notes that "any member may waive the privilege with respect to that person's own communications," but "a member is not authorized to waive the privilege for another member's communication."  Accordingly, because NCIC has never authorized Yankton County to waive the confidential communications at issue that concern a matter of common interest, Yankton County cannot do so and cannot disclose those common interest privileged communications. And to be sure, Yankton County has not waived the privilege with respect to these email communications either.

### E.  The joint defense privilege also protects the subject communications.

The email communications at issue are also protected by the joint defense privilege.

16

> ***"The joint defense privilege protects communications between an individual and an attorney for another when the communications are 'part of an on-going and joint effort to set up a common defense strategy.'*** In *Re Bevill, Bresler & Schulman Asset Management Corp.,* 805 F.2d 120, 126 (3d Cir. 1986) (citation omitted). ***"Communications to an attorney to establish a common defense strategy are privileged even though the attorney represents another client with some adverse interests."*** *Eisenberg v. Gagnon,* 766 F.2d 770, 787-88 (3d Cir.), *cert. denied,* 474 U.S. 946, 106 S. Ct. 342, 343, 88 L. Ed. 2d 290, 106 S. Ct. 343 (1985); *see also United States v. McPartlin,* 595 F.2d 1321, 1336 (7th Cir.) *Cert. denied,* 444 U.S. 833, 100 S. Ct. 65, 62 L. Ed. 2d 43 (1979). ***To qualify for the privilege, the communication must have been made in confidence.*** See *United States v. Keplinger,* 776 F.2d 678, 701 (7th Cir. 1985), *cert. denied* 476 U.S. 1183, 91 L. Ed. 2d 548, 106 S. Ct. 2919 (1986).

*Marquez v. United States*, 258 F. Supp. 2d 7, 14-15 (D.P.R. 2003).  In other words,

> "***Where several parties, though represented by separate counsel, are on the same side of a legal dispute and share information for their mutual benefit in that dispute, the 'joint litigant' privilege protects 'attorney-client privileged matters when they are shared with co-parties, even though those parties are represented by separate counsel.***'" *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, *347 (N.D.Ohio 1999), quoting *James M. Fischer, The Attorney-Client Privilege Meets Common Interest Arrangement*, 16 Rev. Litig. 631, 634 (Summer 1997). ***This joint-defense privilege allows "attorneys or parties facing a common litigation opponent" to "exchange privileged communications without waiving the privilege" and "protects communications between two or more parties and their respective counsel if they are engaged in a joint defense effort."*** *Travelers Cas. & Surety Co. v. Excess Ins. Co.*, 197 F.R.D. 601, 606 (S.D. Ohio 2000). ***Parties asserting this privilege must show that: "(1) the communications were made in the course of a joint defense effort; (2) the statements were designed to further the effort; and (3) the privilege has not been waived***." *Id.* at 606, quoting *In re Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.2d 120, 126 (3rd Cir. 1986). ***A written agreement to engage in a joint defense is not necessarily a prerequisite for invoking the joint defense privilege***. *Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 93 (D. Mass. 2002). ***The joint-defense privilege is an extension of the attorney-client privilege and provides "protection to confidential communications shared among persons with a common or similar interest in order to set up a common defense strategy***." *Royal Surplus Lines Ins. v. Sofamor Danek Group*, 190 F.R.D. 463, 472 (W.D.Tenn. 1999).

*Bosley v. 21 WFMJ*, 2005 U.S. Dist. LEXIS 59324, *13-14 (N.D. Ohio June 24, 2005) (emph. added).

Here, the communications at issue demonstrate that they were made in the course of an

on-going and joint effort between NCIC and Yankton County to set up a common defense strategy, were certainly designed to further that joint defense effort, and as discussed in more detail below, the joint defense privilege has not been waived. Accordingly, the email communications are protected under the joint defense privilege as well.

Plaintiffs contend that the communications at issue cannot be privileged because they pre-date the parties entering into any "joint defense" agreement. That argument is wholly without merit and Plaintiffs fail to cite any support for it. By the plain language of SDCL 19-19-502, South Dakota law does not require that the parties enter into a "joint defense agreement" in order for the common interest privilege or joint defense privilege to apply. The South Dakota Supreme Court, likewise, does not require a party to prove the existence of a "joint defense agreement" in order to establish a privileged communication under SDCL 19-19-502. *Catch the Bear*, 352 N.W.2d at 657 (Four elements for establishing privileged communication do not include a requirement for a "joint defense agreement").

Case law outside South Dakota is also abundantly clear that a written "joint defense agreement" is not necessary to establish joint defense privilege. *See e.g. Intex Rec. Corp. v. Team Worldwide Corp.*, 471 F.Supp.2d 11, 16 (D.D.C. 2007). Rather, the parties asserting the privilege ***must merely show an expressed intent*** to cooperate in the litigation. *Ludwig v. Pilkington N. Am., Inc., No. 03 C 1086,* 2004 U.S. Dist. LEXIS 16059, at *11 (N.D. Ill. Aug. 13, 2004) (citing *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 2003 U.S. Dist. LEXIS 14084 at *4-6 (N.D. Ill. Aug. 11, 2003)). *See also Tekstar, supra.* (joint defense privilege protects communications between an individual and an attorney for another when the communications are part of an ongoing and joint effort to set up a common defense strategy). The email communications at issue demonstrate, on their face, Yankton County and NCIC's

18

intent and effort to cooperate in the litigation and to present a joint defense to Plaintiffs' claims against Yankton County, as well as to the prospective claims that Plaintiffs would be bringing against Yankton County and NCIC when the Complaint was amended and the case was transferred to South Dakota.  Neither Yankton County nor NCIC has waived the joint defense privilege.

The email communications, on their face, demonstrate that they were made with an expectation of confidentiality <u>and</u> for the purpose of rendering or receiving legal services and as part of an on-going and joint effort to set up a common defense strategy.  Plaintiffs contend that "[n]o evidence exists that any of the communications were made with the understanding that they would be maintained as confidential, or that they were made for the purpose of giving or receiving legal advice" or as part of an on-going and joint effort to set up a common defense strategy.  Plaintiffs' argument, however, is contradicted by the very evidence Plaintiffs submitted to support their motion to compel.   Exhibit Q to the Declaration of Alan Anderson, which includes an email from Bill Pope to Sheriff Preston Crissey on February 9, 2024 stating:

> Can I speak with the attorneys handling this case.  I haven't heard from any of them and my attorney thinks _**we**_ need to be pushing for a decision on _**our**_ motion to dismiss.  The court is moving along with scheduling and discovery in North Dakota, which is not the direction _**we**_ want to be going with this case.

*(DOC 75, EX Q)* (emph. added).  That email alone provides clear evidence of an on-going and joint effort between Yankton County and NCIC to set up a common defense strategy with respect to this lawsuit as of February 9, 2024 (which happens to be the exact same date of the first email in the email string at issue).

Yankton County would further note that, prior to the Plaintiffs' filing of the subject motion to compel, Counsel for Yankton County communicated to Plaintiffs' counsel that the emails at issue "demonstrate, on their face, Yankton County and NCIC's effort to set up and

establish a joint defense strategy and an expressed intent and agreement to cooperate in the litigation and present a joint defense to the claims [Plaintiffs] had filed against Yankton County, as well as to the prospective claims that [Plaintiffs] would bring against Yankton County and NCIC when the case was transferred to South Dakota." *(DOC 75, Ex. R)*. Counsel for Yankton County again communicated to Plaintiffs' Counsel "We understand you believe we have not proven common interest/joint defense before the case was transferred to the District of South Dakota. Again, the communications [to] establish that joint defense/common interest and agreement to cooperate are within the emails withheld so we are not able to provide those communications to you." *Wilka Dec., Ex. B.* Yankton County respectfully submits that this Court's *in camera* review will confirm that the email communications were made with an expectation of confidentiality and for the purpose of rendering or receiving legal services and in an effort by Yankton County and NCIC to set up and establish a joint defense strategy.

**F. The Common Interest Privilege and Joint Defense Privilege have not been waived.**

Plaintiffs contend that Yankton County has waived any common interest or joint defense privilege because NCIC produced two (2) documents "it previously had withheld under a claim of joint defense/common interest privilege" on March 20, 2025. That assertion flies in the face of well-established law. The Eighth Circuit has specifically recognized that it is fundamental that the common interest/joint defense privilege ***"cannot be waived without the consent of all parties to the defense."*** *John Morrell*, 913 F.2d at 556 (emph. added). The overwhelming case law is abundantly clear that the common interest privilege cannot be waived without the consent of all parties who share the privilege, that each party retains the right to invoke the privilege, and that no single party can unilaterally waive it for others. *See e.g. United States v. Gonzalez*, 669 F.3d 974 (9th Cir. 2012); *In re Grand Jury Subpoenas*, 902 F.2d 244, 250 (4th Cir. 1990); *ZVI*

*Construction Company, LLC v. Levy*, 60 N.E.3d 368 (Mass. App. Ct. 2016); *Groth v. Pence*, 67 N.E.3d 1104 (Ind. Ct. App. 2017). *See also Restatement (Third) of the Law Governing Lawyers §76, cmt. g* (2000). Here, there is no allegation or evidence that Yankton County itself has waived the common interest or joint defense privilege. Without Yankton County's consent to waive the privilege, there can be no waiver of the common interest and joint defense privilege under this clear case law precedent.

Moreover, the two (2) documents that NCIC produced on March 20, 2025, just two weeks before this motion was filed, primarily involves internal emails between various representatives of NCIC, and only includes the following two emails that are part of the email string that is the subject of this motion:

- Email of a screenshot of the docket entries from NCIC's Attorney Lee Petro to NCIC's President/CEO Bill Pope on February 9, 2024
- Email from Bill Pope to Yankton County Sheriff Preston Crissey on February 9, 2024 requesting to speak with Yankton County's attorney about the lawsuit

*(DOC 75, Ex. Q).* [5] Notably, unlike the email string withheld by Yankton County pursuant to the common interest and joint defense privilege, neither of these emails produced by NCIC on March 20, 2025, include any communications with Yankton County's counsel, William Harrie. *(DOC 75, Ex. Q).* NCIC has never communicated to Yankton County that they are waiving the common interest or joint defense privilege, and more importantly, Yankton County has not consented to the waiver of the common interest or joint defense privileges. There has been no waiver of the common interest or joint defense privilege by all of the parties to the defense, and thus, the privilege has not been waived.

---

[5] It is important to note that Plaintiffs had those two emails in their possession <u>before</u> filing this motion to compel against Yankton County.

**G. The emails between Sheriff Crissey and Yankton County's attorney are protected by the attorney-client privilege.**

Finally, to be clear, it is undisputed that the emails between Sheriff Preston Crissey and Yankton County's Attorney, William Harrie, are clearly protected from disclosure by the attorney-client privilege. SDCL 19-19-502(b)(1).

The foregoing demonstrates that all of the communications at issue are protected by the common interest privilege, joint defense privilege and attorney-client privilege, and thus, are not subject to discovery under Fed. R. Civ. P. 26.

**III.    Extraneous content submitted by the Plaintiffs should be disregarded.**

In support of its Motion, Plaintiffs hundreds of pages of documents and have devoted numerous pages in its brief relating to the Plaintiffs' underlying claims against the Defendants, and therein have made salacious allegations against Yankton County and its sheriff in its brief. For example, Plaintiffs have falsely accused the Yankton County Sheriff of engaging in felonious conduct in a footnote. Plaintiffs have also included information relating to their alleged discovery disputes with NCIC and various statements made by NCIC employees that have absolutely nothing to do with Yankton County or the discovery dispute between Yankton County and Plaintiffs. *See* Doc. 77, at 14 (citing Ex. Q and stating the "emails reflect Yankton and NCIC's nefarious plotting"). Non one from Yankton County was included on the majority of the email chain in Ex. Q. It would be inappropriate for Yankton County to waste this Court's time in addressing each of those matters or the factual allegations relating to the underlying claims in this case as they bear no relevance to the issues raised in the Plaintiffs' motion to compel. This is neither the time nor the place for the parties to "try" their case. However, Yankton County wants to make clear that Yankton County denies the Plaintiffs' causes of action

asserted against it, and further denies any wrongdoing by Yankton County or its sheriff. Yankton County requests that this Court disregard these extraneous documents and statements as they have no bearing whatsoever on Plaintiffs' motion to compel or the discovery dispute at issue.

## CONCLUSION

Based on the foregoing, Plaintiffs' motion to compel discovery from Defendant Yankton County, South Dakota should be denied. The email communications at issue are protected by the common interest/joint defense privilege and attorney client privilege.

Alternatively, if this Court should determine that the emails at issue must be produced, Yankton County respectfully submits that an award of attorneys fees under Fed. R. Civ. P. 37(5)(A) would not be appropriate for three reasons: (1) Yankton County's nondisclosure and objection based on the common interest privilege and joint defense privilege was substantially justified; (2) there was a legitimate, good faith, discovery dispute between the parties; and (3) Plaintiffs did not satisfy the good faith meet and confer requirements relating to their "waiver" argument before filing the present motion.

Dated: April 25, 2025.

/s/ Melissa R. Jelen
Melissa R. Jelen
Claire E. Wilka
Cadwell Sanford Deibert & Garry LLP
200 E 10th Street Suite 200
Sioux Falls, SD 57104
(605)336-0828
mjelen@cadlaw.com
cwilka@cadlaw.com
Attorneys for Defendant
Yankton County, South
Dakota