## IN THE UNITED STATES DISTRICT COURT
## FOR SOUTH DAKOTA

|  |  |  |
|---|---|---|
| RELIANCE TELEPHONE OF GRAND FORKS INCORPORATED, a North Dakota corporation, | ) ) ) ) | Civil No. 4:24-cv-04098-ECS |
| and | ) ) |  |
| RELIANCE SYSTEMS INC., a Nevada corporation, | ) ) ) | **PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY FROM DEFENDANT YANKTON COUNTY, SOUTH DAKOTA** |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) |  |
| YANKTON COUNTY, SOUTH DAKOTA, | ) ) |  |
| and | ) ) |  |
| NETWORK COMMUNICATIONS INTERNATIONAL CORP., a Texas corporation, | ) ) ) ) |  |
| Defendants. | ) ) |  |

This Reply Memorandum is submitted on behalf of Plaintiffs Reliance Telephone of Grand Forks Incorporated ("Reliance Telephone") and Reliance Systems Inc. ("Reliance Systems") (collectively "Plaintiffs") in support of their Motion to Compel against Defendant Yankton County, South Dakota ("Yankton") (Doc. 70). Yankton's Memorandum in Opposition (Doc. 79) fails to establish that it is entitled to withhold twenty (20) otherwise responsive documents on the basis of a claim of joint defense privilege. Conspicuously, Yankton does not address the predicate requirement that the documents it is withholding post-date the existence of any joint defense privilege agreement. <u>All</u> of Yankton's withheld documents <u>pre-date May 14, 2024</u>, the earliest date on which it claims it entered into an oral "standard joint defense

agreement" with Defendant Network Communications International Corp. ("NCIC"). This fact renders Yankton's claim of joint defense privilege meritless.

Regardless, "privileges created by statute are to be *strictly construed to avoid suppressing otherwise competent evidence*." *State v. Catch the Bear*, 352 N.W.2d 640, 646-647 (S.D. 1984) (emphasis added). Yankton must meet its burden of establishing its entitlement to the privilege to withhold otherwise discoverable documents. Despite all of its indented, underlined, italicized and bold-font case quotations, Yankton does not and cannot establish each of the factors required to claim a joint defense privilege under applicable South Dakota law. This Court should therefore grant Plaintiffs' motion in its entirety.[1]

## ARGUMENT

### I.    Yankton's Withheld Emails All Pre-Date the Alleged "Standard Joint Defense Agreement."

Yankton stated unequivocally under oath in its interrogatory answers that it did not enter into an oral "standard joint defense agreement" with NCIC until transfer of this action to this Court. *See* Doc. 75, Ex. V. (NCIC made the same assertion. *See id.*, Ex. W.) All of the documents Yankton has refused to produce pre-date May 14, 2024, the date on which this action was transferred to this Court. *See* Doc. 79 at 2-3; Doc. 75, Ex. R. Thus, they all pre-date the existence of any joint defense agreement.

Yankton does not address this critical fact anywhere in its opposition memorandum. It simply ignores it. Yankton clearly and unequivocally stated the date it entered into an oral joint

---

[1] Yankton whines about Plaintiffs' Statement of Relevant Facts. *See* Doc. 79 at 22-23. Those complaints are of no moment. Yankton may not like the facts as they have developed thus far concerning it and its co-defendant's improper conduct, but that does not change the fact it has improperly refused to produce 20 documents. Plaintiffs' Statement of Relevant Facts properly places this motion in context with the facts of the dispute.

defense agreement with NCIC. It makes no argument for any other date – which in any event would contradict its sworn interrogatory answer. Yankton at best presents attorney-arguments that conspicuously dance around this predicate requirement without addressing it at all.

Yankton's failure makes this Court's decision on Plaintiffs' motion to compel relatively simple. This Court's decision in *Dakota Energy Coop., Inc. v. E. River Elec. Power Coop., Inc.*, 2021 U.S. Dist. LEXIS 212516 at *6-7 (D.S.D. Nov. 3, 2021), is instructive and dispositive. In that case, the defendant withheld a document based on a claim of joint defense privilege. This Court rejected the defendant's claim on multiple grounds, one of which was the fact the document in question was created "four months *before* the parties entered into the CIA [common interest agreement]." *Id.* at *6. *See also id.* at *7, n.3 ("By not stating the date the oral CIA was first entered into, [defendant] has failed to carry its burden.").

Similarly, in *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 2003 U.S. Dist. LEXIS 14084 at *6-7 (N.D. Ill. Aug. 12, 2003), the court rejected a claim of joint defense privilege for all communications that occurred prior to October 11, 2002, "because there was no evidence that the parties had a joint defense agreement in place at that time." As a result, the court found that the defendant had "failed to meet its burden of demonstrating the existence of a joint defense agreement or understanding before" the critical date. *Id.* at *6. *Accord Ludwig v. Pilkington N. Am., Inc.*, 2004 U.S. Dist. LEXIS 16049, at *11-13 (N.D. Ill. Aug. 13, 2004).

Here, Yankton unequivocally stated that it and NCIC entered into an oral joint defense agreement on "upon transfer of this action to South Dakota." Doc. 75, Ex. V. That date was May 14, 2024. *See* Doc. 38. Yankton makes no argument for any specific earlier date. All of the documents Yankton has refused to produced are dated prior to May 14, 2024. *See* Doc. 79 at 2-3.

The absence of any joint defense agreement prior to May 14, 2024, mandates production of the 20 withheld documents. Consistent with this Court's decision in *Dakota Energy Coop.*, this Court should order Yankton to produce all 20 withheld documents.

## II.    Yankton Cannot Establish All Factors Necessary for the Existence of a Joint Defense Privilege Under South Dakota Law.

Even if this Court ignores the fact all of the documents withheld pre-date the asserted oral joint defense agreement, this Court still should order production of all 20 documents. Yankton cannot and does not establish all the necessary factors for the existence of a joint defense privilege under South Dakota law.

The parties appear to agree on one point: South Dakota law, specifically SDCL §19-19-502(b), provides the law applicable to Yankton's claim of joint defense privilege. *See* Doc. 70 at 9-10; Doc. 79 at 8-9. But Yankton relies on decisions in cases applying the federal law of privilege, not South Dakota law, to contend it should be permitted to withhold 20 relevant documents. Yankton fails to carefully or correctly read South Dakota law.

Under SDCL §19-19-502, Yankton must establish: (1) the communication was made with an understanding that it would be confidential; (2) the communication was made for the purpose of rendering or receiving legal services; (3) the communication was made to a client; and (4) the client falls within one of the enumerated relationships in SDCL §19-19-502(b). *See, e.g., Catch the Bear*, 352 N.W.2d at 647. SDCL §19-19-502(b)(3) narrowly circumscribes the situations in which a joint defense may be asserted. It limits such a claim to "communications made for *the purpose of facilitating the rendition of professional legal services to the client*: … (3) [b]y him or his representative or his lawyer or a representative of the lawyer to *a lawyer or a representative of a lawyer representing another party* in a pending action and concerning a matter of common

interest therein. (Emphasis added.) Thus, the communication must have been made to a lawyer represent another party in the action.

At a minimum, Yankton cannot establish that the first two requirements to properly claim privilege. It makes no showing – other than perhaps lawyer argument – that NCIC's employees who were involved in the alleged joint defense communications made the communications with an understanding they would be confidential. Yankton has not submitted any declaration from any of the non-lawyer participants to the withheld documents stating that they understood the communication would be kept confidential as privileged. Absent such a declaration or other admissible evidence, Yankton's lawyer-arguments are insufficient to satisfy this necessary element.

Similarly, there is no evidence that "the communication was made for the purpose of rendering or receiving legal services." Yankton and NCIC's decision to submit all the withheld documents to the Court for *in camera* inspection will be "the proof of the pudding is in the eating." *See* Docs. 78, 82. However, the two documents NCIC voluntarily produced reveal the withheld communications were not made for the purpose of rendering or receiving legal services, even if they ever were privileged, given their dissemination to a third party. *See* Doc. 75, Ex. Q.

The February 9 email from an attorney who allegedly represented NCIC to NCIC's president clearly has nothing to do with rendering legal advice. It merely forwards a printout of docket entries. The email from Mr. Pope to Sheriff Crissey on the same date does not relate to the rendering of legal advice. Rather, it is Mr. Pope's request to speak with Yankton's counsel and his opinion that manner in which the case against Yankton was proceeding "is not the direction we want to be going with this case." Doc. 75, Ex. Q. Neither email is for the purpose of a lawyer rendering legal advice. Yankton's creative mischaracterization of these two emails calls

5

into question its boilerplate description that all the withheld emails "relate to legal advice regarding the Reliance lawsuit and joint defense strategy." *See* Doc. 75, Ex. R.

Most of the emails are likely just Yankton's counsel simply gathering facts. But telling facts to a lawyer does not render that communication privileged. Even if a client tells their lawyer that the "light was red when I went through it and hit the plaintiff's car," that fact does not thereby become privileged. It is a *fact*, and facts are not privileged; only the legal advice rendered as a result of the facts might be privileged. *See IBJ Whitehall Bank & Trust Co. v. Cory & Assocs.*, 1999 U.S. Dist. LEXIS 12440, at *12, 15 (N.D. Ill. Aug. 12, 1999) (ordinary business communications or documents concerning strategic business matters are not privileged).

Additionally, the plain text of SDCL §19-19-502(b)(3) requires that a communication be made "to a lawyer or a representative of a lawyer representing another party." But many of the 20 communications were not made "to a lawyer or a representative of a lawyer representing another party." For example, the withheld emails dated February 9 and 10, 2024, did not include any "lawyer or representative of a lawyer representing a third party." Other withheld communications simply added Yankton's then-counsel as a copyee, likely as a guise or attempted shield to claim privilege. Yankton cannot shield otherwise responsive documents simply by including its counsel in the communications. *See IBJ Whitehall Bank & Trust Co.*, 1999 U.S. Dist. LEXIS 12440 at *13 ("If an attorney is simply a 'mail drop' for the purposes of trying to create a screen against discovery, … the fact that a document is sent through an attorney cannot prevent its having to be produced." (quoting *In Re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. 515, 520 (N.D. Ill. 1990)).

In *Dakota Energy Coop.*, this Court rejected the defendant's claim of joint defense privilege in part because no lawyers "were even present at the" allegedly privileged presentation.

*Dakota Energy Coop.*, 2021 U.S. Dist. LEXIS 215516, at *6. Yankton's reliance on this Court's decision in *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 239 F.R.D. 572 (D.S.D. 2006), in addition to being contrary to *Dakota Energy Coop.*, is misplaced. *Pucket* was an action brought pursuant to 42 U.S.C. §1983. *Id.* at 578. Thus, it was a federal cause of action and the federal rules, not state law, applied to the claim of joint defense privilege. The Court never mentioned or cited SDCL §19-19-502, which applies here, in its decision. *See generally id.* at 578-591.

This Court should not apply a case that did not find a basis for ignoring the plain language of SDCL §19-19-502(b)(3), and which is contrary to decisions of other federal courts of appeal. *See, e.g., In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 364 (3d Cir. 2007) ("To be protected, 'the communication must be shared with the attorney of the member of the community of interest' as '[s]haring the communication directly with a member of the community may destroy the privilege.'" (alteration in original)); *In re Bevill, Bresler & Schulman Asset Mgmnt. Corp.*, 805 F.2d 120, 126 (3rd Cir. 1986) (joint defense privilege must include an attorney for another party for it to apply). Because Yankton cannot establish all of the necessary elements for the existence of a joint defense privilege, this Court should grant Plaintiffs' motion in its entirety.

**III.    Yankton's Arguments Regarding Waiver are a Red-Herring.**

On March 20, 2025, NCIC produced two documents it previously had withheld under a claim of joint defense/common interest privilege.[2] Doc. 75, ¶25, Ex. Q. Those documents appear on Yankton's privilege log as part of <u>each of</u> the 20 documents being withheld. *See id.*, ¶21, Ex. R. The email threads voluntarily produced by NCIC constitute a waiver of any privilege, if any ever existed.

---

[2] Document 46 on NCIC's amended privilege log is the is the same as document 7. Doc. 75, ¶25.

7

Yankton first argues that Plaintiffs' motion should be denied in its entirety because it did not discuss NCIC's voluntary decision to produce them as part of a meet and confer. But Yankton's argument places form over substance. Yankton's opposition to Plaintiffs' motion makes clear that it does not concede that NCIC's voluntary production of the documents constitutes a waiver. No conference with Yankton's counsel will change that fact. Indeed, Yankton previously told Plaintiffs' counsel that they did not believe a meet and confer would resolve the disagreement over the withheld communications. *See* Doc. 80-2 (Feb. 19, 2024 email sent 8:54am from Yankton's counsel to Plaintiffs' counsel). Any meet and confer, particularly in light of the considerable efforts admittedly made previously to resolve this discovery dispute, would be futile.[3]

Moreover, the voluntarily-produced emails were never privileged. The email thread last was sent on February 9, 2024 at 8:43pm CST (NCIC-011785-789) included Karin L. Sandahl, who was employed by a non-party entity called TS Phones. The email thread last sent on February 9, 2024 at 8:29pm CST (NCIC-012178-181) also included Ms. Sandahl. *See* Doc. 75, Ex. Q. Sending these email threads to a third party destroyed any privilege that may have existed. NCIC conceded this fact and therefore voluntarily produced the documents.

Additionally, as stated previously these two email threads did not involve the rendering of legal advice. *See supra* pp. 5-6. Finally, these emails pre-date the alleged May 14, 2024, oral joint defense agreement. Doc. 75, Ex. V.

Yankton presents no *evidence*, as opposed to attorney argument, that it never agreed to production of the two emails. Its counsel does not state in her declaration that she never agreed to

---

[3] At best the alleged meet and confer failure would only relate to Plaintiffs' waiver argument, not to the motion in its entirety.

their production. *See generally* Doc. 80. More significantly, despite knowing of NCIC's voluntary production for over two months, Yankton has <u>never asked for them back</u>. Yankton has never attempted to follow the procedures set forth in Fed. R. Evid. 502(b) and Fed. R. Civ. P. 26(b)(5)(B) to claw back the allegedly privileged documents. Yankton's actions – or inactions – are inconsistent with its argument that it never agreed to production of the documents. If true, it surely would have asked for them back long ago, consistent with the applicable Federal Rules. Its failure to make any timely attempt to claw back the documents NCIC voluntarily produced renders Yankton's claim that it never agreed to their production baseless.

NCIC's production of documents withheld as privileged by Yankton destroys the basis for Yankton's arguments. Production of documents otherwise privileged constitutes a <u>subject matter</u> wavier. *See Pucket*, 239 F.R.D. at 580. All of Yankton's withheld documents relate to the same subject matter. All 20 documents withheld are on the same subject matter and so must be produced. The voluntary production of these documents also reveals that Yankton's repetitive, identical description of the basis for privilege for all 20 documents is misleading. This Court should ignore Yankton's red herring arguments concerning waiver and should grant Plaintiffs' motion in its entirety.

## CONCLUSION

For the foregoing reasons, as well as the reasons stated in their initial Memorandum (Doc. 70), Plaintiffs Reliance Telephone of Grand Forks Incorporated and Reliance Systems Inc. respectfully request that the Court grant their Motion to Compel in its entirety and order Defendant Yankton County, South Dakota to promptly produce the 20 documents it has withheld from production based on a claim of joint defense privilege.

Dated: May 9, 2025.

_____
Patrick L. Sealey AT0007085
HEIDMAN LAW FIRM, P.L.L.C.
1128 Historic Fourth Street
P.O. Box 3086
Sioux City, IA 51102
Tel: (712) 255-8838
Fax: (712) 258-6714
Email: Patrick.Sealey@heidmanlaw.com

and

Alan M. Anderson (MN Bar #149500)
(admitted *pro hac vice*)
L. Reagan Florence (MN Bar #0396468)
(admitted *pro hac vice*)
ALAN ANDERSON LAW FIRM LLC
11100 Wayzata Blvd., Suite 545
Minneapolis, MN 55305
Tel: 612-756-7010
Fax: 612-756-7050
Email: aanderson@anderson-lawfirm.com
        rflorence@anderson-lawfirm.com

*Attorneys for Plaintiff Reliance Telephone of
Grand Forks Incorporated and Reliance
Systems Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing pleading was served upon all parties to the above action by depositing the same in the U.S. Mail, postage pre-paid, to their respective mailing addresses disclosed on the pleadings, or, in the event the party is represented by counsel, to their counsel; or notice of the filing of this pleading was sent by email, via CM/ECF, to all parties on the service list who have registered to receive service by email over CM/ECF, on May 9, 2025.