UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| RELIANCE TELEPHONE OF GRAND FORKS INCORPORATED, A NORTH DAKOTA CORPORATION; AND RELIANCE SYSTEMS, INC., A NEVADA CORPORATION;<br><br>Plaintiffs,<br><br>vs.<br><br>YANKTON COUNTY, SOUTH DAKOTA, NETWORK COMMUNICATIONS INTERNATIONAL CORP., A TEXAS CORPORATION;<br><br>Defendants. | 4:24-CV-04098-ECS<br><br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPELL |

Reliance Telephone of Grand Forks Inc. and Reliance Systems, Inc. (collectively, "Reliance") seek to compel disclosure of withheld communications made between Yankton County and Network Communications International Corp. (NCIC). The County and NCIC both resist, maintaining that the communications are privileged. Having read the parties' arguments and reviewed the contested discovery in camera, the Court grants in part and denies in part Reliance's motion to compel.

1

## FACTS

Reliance alleges that it contracted with Yankton County to provide phone, text message, and video services to the county jail from 2020 to 2025.[1] But in 2023, the County prematurely ended the contracts.[2] So Reliance brought this diversity action in November 2023, in the District of North Dakota, only suing the County.[3]

As the case developed in North Dakota, NCIC—the corporation succeeding Reliance as the jail's systems provider—intermittently communicated with Yankton County and its counsel about the case's progress. But NCIC would not be sidelined for long; on March 20, 2024, Reliance amended its complaint to add NCIC into the fold.[4] Broadly speaking, Reliance accused NCIC of having tortiously meddled in Reliance's relationship with the County.[5] Two months after that, on May 14, 2024, the parties consented to the case being transferred to the District of South Dakota.[6] At which point Yankton County and NCIC agreed to undertake a joint defense.[7]

As discovery has advanced, certain materials have taken the spotlight. Yankton County and NCIC have withheld a group of emails between themselves, claiming they

---

[1] Docket No. 1, at 3–4.
[2] *Id.* at 8–9.
[3] *See generally id.*
[4] Docket No. 28.
[5] *Id.* at 15–16.
[6] Docket No. 39.
[7] *See* Docket No. 75-22, at 9 (Yankton County interrogatory answer); Docket No. 75-23, at 10 (NCIC interrogatory answer).

contain privileged communications.[8] Reliance, however, disagrees with the pair's characterization and has moved to compel the emails.[9] The disputed emails have been submitted to the Court for in camera review.[10]

## ANALYSIS

Federal courts apply state privilege law in diversity cases.[11] So this Court must follow South Dakota on issues the state has already dealt with and predict how its supreme court would rule on unaddressed ones.[12] Under South Dakota law, the party asserting a privilege has the burden of proving its applicability.[13] And privileges "are to be strictly construed to avoid suppressing otherwise competent evidence."[14]

To invoke attorney-client privilege under South Dakota law, there must be "(1) a client; (2) a confidential communication; (3) the communication was made for the purpose of facilitating the rendition of professional legal services to the client; and (4) the communication was made in one of . . . five relationships enumerated in [S.D. Codified Laws § 19-19-502(b)]."[15] The parties agree that § 19-19-502(b)(3) is the operative relationship category—known as the common-interest privilege. It reads:

---

[8] *See generally* Docket Nos. 76-19, 77-18.
[9] Docket Nos. 69–70.
[10] Docket No. 82.
[11] Fed. R. Evid. 501; *Union Cnty. v. Piper Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008).
[12] *Bradshaw Fam. Tr. Inc. v. Twin City Fire Ins.*, 105 F.4th 1089, 1093 (8th Cir. 2024).
[13] *State v. Catch the Bear*, 352 N.W.2d 640, 645 (S.D. 1984).
[14] *Bertelsen v. Allstate Ins.*, 796 N.W.2d 685, 700 (S.D. 2011) (quoting *Dakota, Minn. & E. R.R. Corp. v. Acuity*, 771 N.W.2d 623, 639 (S.D. 2009)).
[15] *Vorhees Cattle Co. v. Dakota Feeding Co.*, 868 N.W.2d 399, 405 (S.D. 2015) (quoting *State v. Rickabaugh*, 361 N.W.2d 623, 624–25 (S.D. 1985)).

3

> (b) A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:
>
> . . . .
>
> (3) By him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein.

Admittedly, the South Dakota Supreme Court has not had much occasion to develop bounds of this relationship category.

To be precise, Yankton County and NCIC say that attorney-client privilege and the common-interest and joint-defense doctrines protect the disputed communications from disclosure. For simplicity, the Court lumps the three into one: the common-interest doctrine. It does so since the common-interest doctrine is an offshoot of attorney-client privilege that extends the scope of permissible contacts for parties without waiving confidentiality.[16] And though there is some hedging on whether the common-interest and joint-defense doctrines are different,[17] if there is a distinction, it does not appear to have significance here.[18]

---

[16] *See* S.D. Codified Laws § 19-19-502(b)(3); *cf. In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997) (describing the common-interest doctrine as "expand[ing] the coverage of the attorney-client privilege in certain situations").

[17] *E.g.*, Docket No. 76, at 9 ("Whether 'common interest' and 'joint defense' are separate, distinct privileges is not certain.").

[18] *See* Docket No. 79, at 9 ("The 'common interest privilege' is also referred to as the joint defense privilege."); *United States v. Evans*, 113 F.3d 1457, 1467 (7th Cir. 1997) (seemingly equating the terms).

The Court predicts that the state supreme court would not consider many of these communications privileged. But before delving into Yankton County and NCIC's problems asserting the privilege, the Court first rejects Reliance's contention that a common interest does not exist. Reliance claims that the County and NCIC's interests are distinguishable and too meager to invoke the common-interest doctrine.[19] But Reliance fails to mention that it sought specific performance against the County from the beginning, hoping to resume its jail servicing until the natural end of the two's contract.[20] Necessarily, Reliance getting its way would have harmed NCIC's interest in carrying through its own contract with the jail, and sufficiently intertwines the County's and NCIC's interests.

Continuing now to the issues that Yankton County and NCIC face. To begin, privileged communications require the rendition of legal services.[21] Some emails involve neither.

Then there are also problems with fit. Section 19-19-502(b)(3)'s wording seemingly limits the privilege to communications made between a client or his lawyer to *another* lawyer representing *another party in a pending action*. From that, the communications must be to another lawyer—yet some emails do not include an attorney. And the lawyer must represent a co-party to the lawsuit—but many emails pre-date when NCIC was added to

---

[19] Docket No. 76, at 15–16.
[20] Docket No. 1, at 11–12.
[21] *Acuity*, 771 N.W.2d at 638.

5

the case on March 20, 2024. Despite some jurisdictions extending the common-interest doctrine beyond actual co-defendants,[22] the restrictive language in South Dakota's rule—and the admonishment to strictly construe privileges to avoid suppression—forecloses such an extension now. So every email that does not include an attorney or that pre-dates NCIC being added as a party to the case is not privileged.

Yankton County and NCIC also have a problem with their burden of proof. Whether based on confidentiality or the common-interest provision, both acknowledge in sworn statements that they agreed to jointly defend the case when it was transferred to South Dakota on May 14, 2024. But many emails circulated before then.

Granted, courts generally are not particular about the formality of an agreement,[23] and South Dakota does not explicitly require an agreement to attain the privilege. Still, the communication must be confidential. And though Yankton County and NCIC had a common interest, whether the communications could reasonably be understood as confidential seems a separate question unanswered by any common interest. One could see a joint-defense agreement that the County and NCIC entered into as prima facie evidence of confidentiality; but before that time, the only evidence suggesting the emails were confidential rests on the naked assertions of defense counsel. Such assertions, without more, are not enough to establish confidentiality and trigger the privilege. For

---

[22] *See Schachar v. Am. Acad. Of Ophthalmology, Inc.*, 106 F.R.D. 187, 191–92 (N.D. Ill. 1985) (collecting cases).
[23] *See* Restatement (Third) of the Law Governing Lawyers § 76 cmt. c (Am. L. Inst. 2000) ("Exchanging communications may be predicated on an express agreement, but formality is not required.").

that reason, the Court predicts that the South Dakota Supreme Court would not extend the common interest doctrine to communications that preceded the averred joint-defense agreement. So those inter-party emails, before May 14, 2024, are not privileged because the Court cannot be sure they were confidential.

The Court is not inclined to award attorney's fees and costs based on its ruling. Though a court must order the payment of expenses in the general course, there are reasons for not doing so here.[24] Yankton County's and NCIC's resistance was substantially justified given how undeveloped South Dakota's common-interest doctrine is. This situation called on the Court to predict how the state supreme court would rule and, as the briefs reflect, state and federal circuits have construed the doctrine differently. In that sense, circumstances would make apportioning an expenses award unjust.

## CONCLUSION

Yankton County and NCIC have failed to meet their burden of showing that many emails they withheld are privileged under the common-interest doctrine or otherwise. Though the two had a common interest throughout their contacts, some communications did not involve the rendition of legal services, and many lacked confidentiality or the fit under § 19-19-502(b)(3)'s prescriptions. Those emails are not privileged and must be disclosed.

---

[24] *See* Fed. R. Civ. P. 37(a)(5)(A)(ii)–(iii) (expenses are not mandatory when nondisclosure was substantially justified or when circumstances would make such an award unjust); *id.* 37(a)(5)(C) (affording courts discretion in deciding whether to apportion expenses when motion is granted in part).

## ORDER

It is hereby

ORDERED that the emails not listed in the appendix to this order be produced to Reliance as part of discovery.

## NOTICE

A party may seek reconsideration of this order before a district judge upon a showing that the order is "clearly erroneous or contrary to the law."[25] The parties have 14 days after service of the order to file written objections unless an extension of time for good cause is obtained.[26] Failure to file timely objections will result in the waiver of a party's right to appeal questions of fact.[27] Objections must be specific to trigger review.[28]

DATED this 20th day of May, 2025.

BY THE COURT:

*[signature]*

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

---

[25] 28 U.S.C. § 636(b)(1)(A).
[26] *See* Fed. R. Crim. P. 59(a).
[27] *Id.*
[28] *See Thompson v. Nix*, 897 F.2d 356, 357–58 (8th Cir. 1990) (per curiam); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986).

## APPENDIX

The following emails are privileged and need not be disclosed.

| YANKTON COUNTY | NCIC |
|---|---|
| Privilege Log #28 – Email at 8:13 a.m. on February 17, 2024, from Crissey to Harrie. | NCIC-011057[*] – Email at 2:50 p.m. on December 21, 2023, from Harrie to Kerr, Klimisch, and Crissey. |
| Privilege Log # 28 – Email at 2:32 p.m. on February 16, 2024, from Harrie to Crissey. | NCIC-011058[**] – Email at 11:15 a.m. on December 21, 2023, from Kerr to Klimisch, Crissey, and Harrie. |
| Privilege Log # 28 – Email at 2:30 p.m. on February 15, 2024, from Crissey to Harrie. | NCIC-011059 – Email at 3:20 p.m. on April 11, 2024, from Pope to Miller. |
| Privilege Log # 28 – Email at 10:56 a.m. on February 14, 2024, from Harrie to Crissey. | NCIC-011059 & 011060 – Email at 9:38 a.m. on April 4, 2024, from Pope to Harrie, Crissey, and Henry. |
| Privilege Log # 39 – Email at 2:30 p.m. on February 15, 2024, from Crissey to Harrie. | NCIC-011222 & NCIC-011223[***] – Email at 4:25 p.m. on July 15, 2024, from Miller to Pope.<br><br>Email at 2:08 p.m. on July 15, 2024, from Anderson to Miller. |
| Privilege Log # 39 – Email at 10:56 a.m. on February 14, 2024, from Harrie to Crissey. | NCIC-011688 – Email at 9:00 a.m. on June 10, 2024, from Miller to Storer. |
|  | NCIC-011821 – Email at 2:23 p.m. on August 23, 2024, from Pope to Miller and Storer. |

---

[*] Also found at NCIC-011089, NCIC-011810, NCIC-011845, NCIC-011847.
[**] Also found at NCIC-011090, NCIC-011811, NCIC-011846, NCIC-011848.
[***] Also found at NCIC-011452, NCIC-011554.

| | |
|---|---|
| | NCIC-011849 – |
| | Email at 5:53 p.m. on October 7, 2024, |
| | from Storer to Pope, Miller, and Baniecke. |
| | |
| | Email at 5:52 on October 7, 2024, from |
| | Pope to Miller, Baniecke, and Storer. |
| | |
| | Email at 5:39 on October 7, 2024, from |
| | Miller to Pope. |
| | NCIC-011882 – |
| | Email at 1:58 p.m. on October 17, 2024, |
| | from Storer to Miller. |
| | |
| | Email at 1:44 p.m. on October 17, 2024, |
| | from Miller to Pope. |
| | |
| | Email at 3:12 p.m. on October 14, 2024, |
| | from Pope to Peel, Miller, and Lagrone. |
| | NCIC-011883 – |
| | Email at 2:41 p.m. on October 14, 2024, |
| | from Peel to Miller, LaGrone, and Pope. |
| | |
| | Email at 2:41 p.m. on October 11, 2024, |
| | from Miller to LaGrone, Peel, and Pope. |
| | NCIC-011883 & 011884 – |
| | Email at 5:45 p.m. on October 9, 2024, |
| | from LaGrone to Miller, Peel, and Pope. |
| | NCIC-011888 – |
| | Email at 9:02 a.m. on June 10, 2024, from |
| | Storer to Miller. |
| | NCIC-011891 – |
| | Email at 8:51 a.m. on June 10, 2024, from |
| | Miller to Storer. |

| | |
|---|---|
| | NCIC-012201 – |
| | Email at 4:25 p.m. on March 3, 2024, from Petro to Pope, Storer, and Richards. |
| | Email at 10:35 a.m. on January 31, 2024, from Pope to Petro and Storer. |
| | NCIC-012202 – |
| | Email at 9:29 a.m. on January 31, 2024, from Petro to Pope and Storer. |
| | Email at 10:21 a.m. on January 31, 2024, from Pope to Petro and Storer. |
| | Email at 9:19 a.m. on January 31, 2024, from Petro to Pope and Storer. |
| | NCIC-012203 – |
| | Email at 10:15 a.m. on January 31, 2024, from Pope to Petro and Storer. |
| | Email at 9:12 a.m. on January 31, 2024, from Petro to Pope and Storer. |
| | Email at 10:02 a.m. on January 31, 2024, from Pope to Petro and Storer. |
| | NCIC-012204 – |
| | Email at 8:01 a.m. on January 31, 2024, from Petro to Pope and Storer. |
| | Email at 4:13 p.m. on January 30, 2024, from Pope to Petro and Storer. |
| | NCIC-012233 – |
| | Email at 10:54 a.m. on Marcy 21, 2024, from Petro to Pope and Richards. |

| | NCIC-012271 – Email at 11:15 a.m. on December 21, 2023, from Kerr to Klimisch, Crissey, and Harrie. |
|---|---|