## IN THE UNITED STATES DISTRICT COURT
## FOR SOUTH DAKOTA

|  |  |
|---|---|
| RELIANCE TELEPHONE OF GRAND FORKS INCORPORATED, a North Dakota corporation, | ) ) ) ) |
|  | Civil No. 4:24-cv-04098-ECS |
| and | ) ) |
| RELIANCE SYSTEMS INC., a Nevada corporation, | ) ) ) |
| Plaintiffs, | ) ) |
|  | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT YANKTON COUNTY'S MOTION *IN LIMINE*, OR IN THE ALTERNATIVE, MOTION TO COMPEL** |
| v. | ) ) ) |
| YANKTON COUNTY, SOUTH DAKOTA, | ) ) |
| and | ) ) |
| NETWORK COMMUNICATIONS INTERNATIONAL CORP., a Texas corporation, | ) ) ) ) |
| Defendants. | ) ) |

This Memorandum is submitted on behalf of Plaintiffs Reliance Telephone of Grand Forks Incorporated ("Reliance Telephone") and Reliance Systems Inc. ("Reliance Systems") (collectively, "Plaintiffs") in opposition to Defendant Yankton County's ("Yankton") Motion *in Limine,* or, in the Alternative, Motion to Compel ("Motion"). *See* Docs. 96, 97. Yankton's motion is contrary to well-established caselaw, and, at its core, a desperate attempt to avoid Plaintiffs' well-founded, and properly-disclosed, claims for damages against Yankton.[1]

---

[1] Defendant Network Communications International Corp. ("NCIC") has not served <u>any</u> written discovery requests in this action. *See* Doc. 105, ¶43. Therefore, it has not brought its own motion to compel or joined in Yankton's Motion. NCIC lacks standing for any such motion. Therefore, the Court's decision on Yankton's Motion cannot have any effect on Plaintiffs' damages claims against NCIC. Plaintiffs' properly and timely disclosed lost profits and other damages sought against NCIC are not affected by Yankton's present motion.

Yankton's motion is predicated on the erroneous belief that Federal Rule of Civil Procedure 26(a)(1) *requires* a party to present its entire and complete damages calculation upon service of the required initial disclosures. *See* Fed. R. Civ. P. 26(a)(1). But that rule requires initial disclosures only "based on the information then reasonably available to it." The Rule does not require a party to prematurely prepare and serve a complete damages analysis or expert report within mere weeks of the parties Rule 26(f) scheduling conference or issuance of a scheduling order. Indeed, Fed. R. Civ. P. 26(e) recognizes that parties shall supplement discovery responses "in a timely manner…." Fed. R. Civ. P. 26(e)(1)(A). *See also* Fed. R. Civ. P. 26(2)(e)(E) (supplementation of expert disclosures). Rule 26 has been consistently construed and applied to permit a party to supplement its disclosures, including its damages analysis, as the case progresses, provided the ultimate disclosures are not untimely or unduly prejudicial.

Consistent with their obligations under the Rules, Plaintiffs have supplemented and amended their initial disclosures, interrogatory answers and document request responses multiple times during this action. *Two months prior* to the discovery cut-off date, and consistent with the deadline set in the Scheduling Order, Plaintiffs provided Yankton with an expert report and detailed analysis and calculation of damages. Thus, Yankton had more than sufficient time to analyze Plaintiffs' damages claims, ask questions at depositions, and prepare a response. Instead, Yankton has employed a strategy of demanding more and more documents, while failing to provide any indication of their relevance to Plaintiffs' damages claims despite repeated requests and without engaging in good faith efforts to resolve any purported disputes. This is particularly true regarding the documents Yankton raises in its motion. Yankton appears to be intent on creating a discovery dispute where none really exists, particularly given it has demanded production of documents Plaintiffs do not have.

Moreover, any purported prejudice Yankton now claims will be fully alleviated by amending the already twice-amended Scheduling Order – alternative relief that Yankton requests in its present motion. *All parties agree* the Scheduling Order should be amended. Rather than negotiate in good faith on the one sticking point – the due dates for Yankton and NCIC's expert reports – Yankton (and later NCIC) filed a motion to amend the scheduling order seeking unnecessarily lengthy extensions far beyond any previously discussed or suggested by any of the parties. *See generally* Docs. 105, 106. When this Court amends the Scheduling Order, regardless of the time periods involved, Yankton will have more than sufficient time to respond to Plaintiffs' damages claims.

Finally, Yankton is not entitled to any sanctions pursuant to Fed. R. Civ. P. 37. It has failed to properly meet and confer in good faith regarding its motion to compel. *See* Doc. 104, ¶s 19-34; Declaration of Alan M. Anderson, dated July 7, 2025 ("Anderson Decl."), ¶8. It has not properly met and conferred regarding any remaining issues. Yankton has never responded to proper requests that it explain the relevance of categories of documents it specifically identifies in its motion. Yankton refuses to recognize or accept that Plaintiffs have produced all responsive documents that they regularly maintain. Although Yankton asserts the dispute regarding the adequacy and timeliness of Plaintiffs' damages-related disclosures has existed since August 2024 and January 2025 at the latest (*see* Doc. 97 at 2-5, 7-10), it has violated at least the spirit of this Court's Scheduling Order, which provides that any motions "to compel discovery should be filed within 14 days after the subject matter of the motion arises…." Doc. 64, ¶6. Plaintiffs' positions are supported by well-established caselaw. Any claimed prejudice is completely resolved by extending discovery, *as agreed by the parties and as this Court advised it will do at the status conference on June 25*. No basis exists for excluding Plaintiffs' expert report, which was timely

served. Accordingly, this Court should deny Yankton's motion, but should issue an amended scheduling order extending the remaining deadlines, as requested by all parties.

## STATEMENT OF RELEVANT FACTS

Plaintiffs previously have submitted a summary description of their claims against Yankton and NCIC in connection with its previously-filed successful motions to compel. *See generally* Doc. 76 at 2-7; Doc. 77 at 2-77; Doc. 85 at 2-3. *See also* Doc. 28 (Amended Complaint). Plaintiffs will not repeat that summary.

On August 23, 2024, this Court issued a Scheduling Order. *See* Doc. 64. That order provided, *inter alia*:

- All fact discovery to be completed by March 31, 2025.

- Plaintiffs' initial expert disclosures due on April 30, 2025.

- Defendants' expert disclosures two months later on June 30, 2025.

- All expert discovery to be completed by July 9, 2025.

- Plaintiffs' rebuttal expert reports by July 14, 2025.

*Id.*, ¶s 5, 8. Notably, only 10 days were allocated for expert depositions after Yankton and NCIC submitted any expert reports, and expert discovery had to be completed before Plaintiffs' rebuttal expert reports were due.

As required by the Scheduling Order, Plaintiffs served their Rule 26(a)(1) Initial Disclosures on August 30, 2024. In their disclosures, Plaintiffs accurately stated that they "have not yet completed their damages claims in this action…. The Plaintiffs will seasonably supplement its [*sic*] response to this item when they have determined their damages claims with reasonable certainty." Doc. 96-1.

On November 24, 2024, Plaintiffs made their first production of documents. This production included numerous documents requested by Yankton relating to damages, including the underlying contracts in issue; emails with Yankton relating to the contracts and their wrongful termination; Plaintiffs' work orders and service support notes under the contracts; Plaintiffs' calculations and reports for cost and yearly revenue recovery under the contracts; 383 pages of invoices detailing billing statements issued to Yankton, including amounts and balances; and monthly cost billing summaries from January 1, 2019 to January 1, 2024. Doc. 105, ¶3. *See* Doc. 96-8. On the same date, Plaintiffs served their initial interrogatory answers on Yankton. Interrogatory Nos. 12 and 13 were contention interrogatories, asking Plaintiffs to describe "all damages … [Plaintiffs] claim[] to have suffered as a result of Yankton County's alleged breach of contract, including the amount of each category of damages and the method by which you calculated each amount." Plaintiffs accurately stated that they had "not yet calculated with a reasonable degree of certainty" the damages they would seek in this action. They stated they would seek "lost revenues and/or lost profits." Plaintiffs also provided details regarding damages relating to their inability to recoup and recover expenses from equipment installed at Yankton. Doc. 96-4 at 18-20.

On January 6, 2025, the parties jointly moved to amend the Scheduling Order deadline for amending the pleadings by 30 days due to the on-going nature of discovery. *See* Doc. 65. This Court granted the stipulation. *See* Doc. 66.

In a letter dated January 16, 2025, Yankton raised for the first time an alleged issue regarding the sufficiency of Plaintiffs' Initial Disclosures and interrogatory answers and document request responses served months earlier. *See* Doc. 96-23. Plaintiffs responded on January 27. Plaintiffs stated that, "It is well-settled that a party's damages calculation need not be

detailed early in the case. A party cannot be forced to provide a premature damages calculation that subsequently is modified, and thereby allow itself to be whip-sawed by the differing calculations." Plaintiffs also pointed out that they had provided a general outline and classification of their damages claims and would "continue to timely supplement their damages calculations and will certainly ensure that Yankton County has those calculations in more than sufficient time to conduct any desired discovery regarding the damages sought." At this point in the action, Plaintiffs had already produced documents relevant to damages and stated that amended and supplemental document productions would be forthcoming. Doc. 96-24. In response, Yankton indicated its thanks for the January 27 letter and stated it "would be in touch if we need to further discuss the points addressed…." Doc. 105-1.

On January 31, Plaintiffs provided supplemental answers, *inter alia*, to Plaintiffs' Interrogatory Nos. 12 and 13. Those answers identified, as permitted by Fed. R. Civ. P. 33(d), specific documents by Bates number relevant to those interrogatory answers. *See* Doc. 96-5. Plaintiffs also made a supplemental production of documents on the same date. The supplemental production identified documents produced responsive to each request by Bates number. This production included more documents relevant to damages, including emails relevant to Plaintiffs' efforts to mitigate damages and performance of the contracts; Plaintiffs' notes regarding technical support and services provided to Yankton; Plaintiffs' Inmate Communications Summary for services provided to Yankton from January 1, 2023 through July 2023; and year-to-date text message totals for Yankton, dated July 27, 2023. Doc. 105, ¶5. *See* Doc. 96-9.

Weeks later, Yankton again claimed that Plaintiffs' discovery responses relating to damages were deficient. *See* Doc. 96-25. On March 4, Plaintiffs responded, again pointing out

6

the sufficiency of their discovery responses to that point in time. Plaintiffs also noted that

"despite repeated requests, Yankton County still has not supplemented its response to Plaintiffs'

Document Request No. 16, which sought documents from Yankton "relevant to the calculation of

Plaintiffs' damages claims. Your failure to produce clearly relevant documents … only delays

and impedes the Plaintiffs' ability to calculate and formulate their damages." Doc. 96-26.

On March 3, the parties stipulated to amend the Scheduling Order to extend the deadline

for fact and expert discovery to July 1, 2025 – again showing their ability to work cooperatively.

No other deadlines were changed. *See* Doc. 67. This Court again granted the stipulated motion.

*See* Doc. 68. This is the Amended Scheduling Order presently in effect.

On March 3, Plaintiffs also responded to Yankton's second set of document requests,

again identifying responsive documents specifically by Bates number. *See* Doc. 96-13. On March

20, Plaintiffs made their third production of documents to Yankton. This production included

additional documents relevant to their damages claims, including over 66 pages of information

relating to the features, proprietary programs, technical services, support and equipment provided

to Yankton under the contracts from December 2001 through December 2022; 5 pages of

Plaintiffs' customer lists and facilities serviced by original installation date; Plaintiffs' Yearly

Calculation of Yankton Revenue from December 2020 through October 2023; Plaintiffs' Yearly

Revenue Total Calculations for Yankton between December 2010 and 2023; and over 125 pages

of documents regarding Plaintiffs' billing practices and compliance with federal laws. Doc. 105,

¶6. On March 26, Plaintiffs served second supplemental responses to Yankton's first set of

documents requests (Doc. 96-10); first supplemental responses to Yankton's second set of

document requests (Doc. 96-14); and second supplemental answers to Yankton's first set of

interrogatories (Doc. 96-6). Each of these supplemental responses identified by Bates number

documents relevant to Plaintiffs' damages claims. *See* Doc. 96-6 at 18-21; Doc. 96-10 at 6-8; Doc. 96-14 at 5-11.

On April 15, *six weeks after* Plaintiffs responded to Yankton's prior alleged concerns, Yankton sent another letter complaining about the sufficiency of Plaintiffs' disclosures relating to damages. *See* Doc. 96-27.[2] On April 21, Plaintiffs responded that their counsel had been out of the country on other matters and that it was their counsels' first full day in the office, but stating, "[Y]ou will have full damages information no later than April 30, which is the deadline … to submit expert reports and supplemental Rule 26(a)(2) disclosures." Doc. 96-28.

On April 30, as required by the deadline in the Amended Scheduling Order, Plaintiffs produced the Expert Report of Dave Hangsleben, First Supplemental Rule 26(a)(1) Initial Disclosures, Rule 26(a)(2) Disclosures, Second Supplemental Responses to Yankton's Second Set of Document Requests, Third Supplemental Responses to Yankton's First Set of Document Requests, and Third Supplemental Answers to Yankton's First Set of Interrogatories. *See* Docs. 96-2, 96-7, 96-11, 96-15, 96-18, 96-19, 96-20. As of April 30, over two months remained to take fact and expert discovery under the Amended Scheduling Order. Under the Amended Scheduling Order, Yankton could still take fact discovery, whereas under the Court's original Scheduling Order that would have been prohibited. Yankton received Plaintiffs' Expert Report with the same amount of time to submit an expert report as under the original Scheduling Order. *Compare* Doc. 64 *with* Doc. 68. On May 5, Plaintiffs advised Yankton that "with our service last Wednesday [April 30], [we have] fully addressed all the issues raised in your April 15 letter, but I wanted to

---

[2] Yankton referenced *Wilbur-Ellis Co. LLC v. Jens*, 2025 U.S. Dist. LEXIS 8970, at *20 (D.S.D. Jan. 14, 2025), in its April 15 letter for the non-controversial point that a party must make initial disclosures relating to damages based on the information then reasonably available. The court in that case overruled the plaintiff's objections to providing <u>any information relating to damages over a year after commencement of the action</u>. *See id.*, at *21-23. Here, in contrast, Plaintiffs have timely and repeatedly served disclosures, documents and interrogatory answers pertinent to their damages claims and supplemented and amended them repeatedly since late August 2024.

check to ensure you don't think there is anything remaining." Doc. 105-2. Yankton responded that it was "still evaluating the Expert Report of Dave Hangsleben and awaiting [Plaintiffs'] responses to the recent requests for production of documents." *Id*. During a conference call held that day, primarily to discuss deposition scheduling and logistics and further amending the Scheduling Order, Plaintiffs asked Yankton to indicate the possible relevance of certain previously-requested documents, including tax returns and balance sheets. Yankton did not provide any explanation. Anderson Decl., ¶3.

On May 8, 2025, Plaintiffs made their fourth production of documents to Yankton. This production included Plaintiffs' direct cost calculations and communication totals and breakdowns, and their cost-recovery fees for services provided to Yankton from January 2022 through December 2022. Doc. 105, ¶9. On May 15, Plaintiffs responded to Yankton's Third Set of Requests for Production. *See* Doc. 96-17.

On May 23, over three weeks *after* Plaintiffs served their expert report and other documents on April 30, Yankton sent another letter complaining about Plaintiffs' document-related discovery responses. Doc. 96-29. Yankton specifically raised issues regarding Plaintiffs' responses to Document Request Nos. 9, 26, 29 and 30. No other document request responses were specifically identified. *See id.* Plaintiffs promptly responded on June 4, pointing out that they had already produced responsive documents regarding Document Request Nos. 9 and 16, but for responses that required a "Confidential – Attorneys' Eyes Only" classification added to the Protective Order. Doc. 96-30. Although the parties had filed a stipulation to amend the Protective Order on May 29 (*see* Doc. 88), the Court had not yet approved it. Nevertheless, in the spirit of cooperation, Plaintiffs stated that if Yankton would agree to abide by the new

classification via email, they would "produce responsive document without continuing to wait for the Court to act." *Id.*

Regarding Request Nos. 29 and 30, which purported to relate to efforts to mitigate damages, Plaintiffs said they would

> produce any proposals or offers made by [Plaintiffs] to potential new or existing clients or customers for the period from January 1, 2023 to the present, which is a longer period than requested. … [T]he documents … will provide more than sufficient information for you to explore this alleged line of defense, simply by asking whether any contract was actually entered into in response to the offer or proposal. If so, you can easily ask for the terms.

*Id*. As a result of Yankton's agreement, Plaintiffs made their fifth and sixth document productions on June 5 and June 10, consisting of 33 pages of profit and loss statements from January 2022 through December 2023, which is the last year for which annual profit and loss statements are presently available, and 55 pages of documents relating to solicitations to third-parties and offers to potential customers. Doc. 105-2, ¶s 14, 16.

Three weeks later, on June 10, Yankton sent another letter, this time complaining only about Plaintiffs' responses to Document Request Nos. 26, 27, 28, 29 and 30. Doc. 96-31. Plaintiffs therefore believed that all previously-raised discovery issues had been resolved and only these five document requests remained in issue. Anderson Decl., ¶8. Plaintiffs responded by email on June 12. Doc. 96-32. In the email, Plaintiffs stated their response to Document Request No. 26:

> should have clearly indicated that the Plaintiffs do not have 'expense reports, gross revenue reports or net revenue reports.' Also, no financial statements or tax returns have been prepared for 2024 as yet, and neither have such documents been prepared for 2025. Neither income tax returns nor balance sheets were used or considered in preparing the Plaintiffs' damages calculations. You have the profit & loss statements for 2020 through 2023, which were considered.

*Id*. Plaintiffs also again asked for "any reason for allegedly wanting income tax returns or balance sheets. … What do you believe you are lacking that either income tax returns or

balance sheets could provide? ... If you can identify something that justifies the need for such documents, we will consider it." *Id*.

Plaintiffs pointed out they had served responses to Request Nos. 27 and 28 on May 15, 2025, listing responsive documents by Bates number. Plaintiffs stated they would further supplement their responses to these requests and that, "This should resolve this issue." Plaintiffs pointed out Yankton had the proposals or offers made to potential new clients or customers for a period longer than requested in response to Request No. 29. They therefore "believe that topic has been addressed." Finally, regarding Request No. 30, Plaintiffs pointed out Yankton had documents "far more pertinent to reasonable efforts to mitigate (if applicable). Whether or not such efforts were successful is not the test" [for reasonable mitigation]; it is the efforts that matter." Plaintiffs reiterated that Yankton would be able to ask pertinent questions based on Plaintiffs' documents during the scheduled depositions. Plaintiffs concluded by stating clearly and succinctly that they were "happy to discuss all of the above further to hopefully reach a resolution." Doc. 96-32.

<u>Yankton never offered or requested to discuss any of the issues addressed in Plaintiffs' June 12 email after that date.</u> Anderson Decl., ¶s 4, 8. On June 13, as promised and consistent with their statements in their June 12 email, Plaintiffs served their First Amended Responses to Yankton's Third Set of Requests for Production of Documents Nos. 26-30. *See* Doc. 96-33. On June 23, Plaintiffs timely responded to Yankton's Fourth Set of Document Requests, identifying specifically by Bates number all the documents Mr. Hangsleben "reviewed, referenced, and/or relied upon in forming the expert opinions set forth" in his expert report. Anderson Decl., ¶5, Ex. A. Yankton thus has a

comprehensive list. On the same date, Plaintiffs timely and fully answered Yankton's Third Set of Interrogatories. *Id.*, Ex. B.

From late March until June 16, 2025, the parties had engaged in good faith discussions to schedule depositions and to further amend the Scheduling Order. *See generally* Doc. 106, Doc. 105 & Exs. All good faith discussions, however, whether regarding alleged discovery deficiencies or amending the Scheduling Order, ended suddenly with Yankton's motions filed on June 16, despite Plaintiffs' offers to continue discussions to reach a resolution regarding both. *See* Doc. 96-32; Doc. 105, ¶33; Anderson Decl., ¶8.

Mr. Hangsleben deposition in his personal capacity was taken and concluded on June 24. The Rule 30(b)(6) deposition of Plaintiff Reliance Systems was taken and concluded on June 25. Although Yankton had every opportunity and clear incentive to ask questions about the documents produced relating to offers and solicitations to potential new clients, no such questions were asked; NCIC also did not ask any such questions. Anderson Decl., ¶6.

## ARGUMENT

### I.    Plaintiffs Have Complied with Their Discovery Obligations Under the Federal Rules.

Yankton argues that Plaintiffs had an obligation to completely disclose and describe their damages calculations and methodology on August 30, 2024, when they served their initial Rule 26(a)(1) disclosures. Yankton apparently contends Plaintiffs had this obligation because 8 months later, they decided to disclose Mr. Hangsleben, their president, as their damages expert. But what if Plaintiffs had decided to use someone else as their expert, someone other than Mr. Hangsleben? Yankton's argument is based not on the sufficiency of Plaintiffs' disclosures or their

timing, but on the identification of the expert selected. However, Plaintiffs did not decide who to use as an expert witness in this action until months and months after August 30, 2024. It was not until they served their expert disclosures on April 30, 2024 – the deadline imposed by the Amended Scheduling Order – that the decision was finally made. Anderson Decl., ¶7.

The Federal Rules do not impose the absolute Rule 26(a)(1) disclosure obligation as Yankton argues. The Federal Rules not only anticipate, but courts have recognized, that continuing supplementation of initial disclosures and discovery responses is permitted as the case progresses. *See* Fed. R. Civ. P. 26(e). Compliance with Rule 26(a)(1) does not vary based on the eventual decision months later on who may be identified as an expert witness.

In *Caruana v. Marcum*, 2016 U.S. Dist. LEXIS 99585 (M.D. Tenn. July 28, 2016), the issue was whether the plaintiff had satisfied his disclosure obligations under Rule 26(a)(1) when he later supplemented those initial disclosures. *See id.* at *2, 9. The court first denied the defendant's motion to strike pursuant to Fed. R. Civ. P. 37(c)(1). The court found the plaintiff had properly, and adequately, supplemented his initial disclosures later in discovery consistent with Fed. R. Civ. P. 26(e). *Id.* at *9-12. It distinguished the cases on which the defendant relied, pointing out that "In those cases, a party often fails to present a coherent theory of damage, then later attempts to add new theories through Rule 26(e) supplementation." *Id.* at *12.

The court next denied the defendant's motion to dismiss, which was again predicated on the plaintiff's alleged failure to disclose his damages theory. The court stated that the plaintiff satisfied both requirements of Rule 26(a)(1): a computation of the damages sought and disclosure of the materials underlying the computation. *Id*. at *15. First, the plaintiff "provided his damages calculation in his Supplemental Response. …

This meets Rule 26(a)'s calculation requirement, *since a party is free to satisfy Rule 26(a)'s requirements through supplemental disclosures filed later.*" *Id*. (Emphasis added.) *See, e.g., Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (Rule 26(a) contemplates that parties file supplemental disclosures with ever-greater level of detail as discovery progresses); *City & Cty. of S.F. v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 220, 222 (N.D. Cal. 2003) ("Rule 26 does not elaborate on the level of specificity required in the initial disclosure. … So long as Plaintiffs <u>timely</u> fulfill their disclosure obligations, they will not be prejudiced for making initial disclosures that are revised." (emphasis added)).

Second, the court found the plaintiff had shown he had disclosed evidence for each category of damages in his document productions. "[C]ourts have found that a party can satisfy Rule 26(a)'s disclosure requirements by pointing to materials or testimony that bears on a category of damages sought." *Id*. at *16. *See, e.g., Frontline Med. Assocs., Inc. v. Coventry Health Care*, 263 F.R.D. 567, 569-70 (C.D. Cal. 2009) (party can satisfy Rule 26(a) by disclosing supporting documents for damages calculations); *Reyes v. City of Glendale*, 2009 U.S. Dist. LEXIS 80318, at *18 (C.D. Cal. Aug. 19, 2009) (plaintiff "sufficiently demonstrated" compliance by pointing to deposition testimony and interrogatory answers); *Pine Ridge Recycling, Inc. v. Butts Cty., Ga.*, 889 F. Supp. 1526, 1527 (M.D. Ga. 1995) (Rule 26(a)'s damages calculation disclosure requirements satisfied by identification of categories of damages and production of documents relating to damages).

In *Pine Ridge Recycling*, the defendants moved pursuant to Fed. R. Civ. P. 37(c) to exclude the plaintiff's claimed damages for failure to comply with Rule 26(a)(1). The

issue essentially was the sufficiency of the plaintiff's initial disclosures. The court

rejected the defendants' motion, stating:

> At this point, disputing the amount of damages actually claimed is analogous to
> arguing over the birth weight of a baby 3 months into the pregnancy. Arguments
> over the method of computation are similarly premature since the method will
> necessitate expert testimony, which is not due until later this year. Defendants'
> motion is DENIED.

*Id. See Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, 2009 U.S. Dist. LEXIS 104020, at *17

(E.D.N.Y. Nov. 9, 2009) ("Damages calculations are often updated as further information is

developed during discovery. … It is understood that such calculations may be seasonably

amended, particularly if Plaintiff will be presenting expert testimony on the issue of damages and

will be producing an expert report.").

In *In re Convergent Technologies Sec. Litigation*, 108 F.R.D. 328 (N.D. Cal. 1985), the

issue presented to the court was *when* contention interrogatories should be answered. *Id*. at 330.

Here, Yankton's interrogatory Nos. 12 and 13 clearly were contention interrogatories. *See id.* at

332-333. The court stated that such contention interrogatories are best presented and fully

answered "late in the pretrial period." *Id*. at 333 (referencing Fed. R. Civ. P. 26(b)(3) Advisory

Cmte. Note). The court went on to state:

> Counsel drafting responses to these kinds of interrogatories early in the pretrial
> period may fear being boxed into a position that later embarrasses them, or that
> might be used to try to limit the subject areas of their subsequent discovery.
> Lawyers generally attempt to maximize and preserve their options while
> providing as little tactical help to their opponents as possible. … The "substance"
> of their responses to such questions might reduce to phrases like "research and
> investigation continuing."

*Id*. at 338. The court also noted the inconsistency of pressing for early answers to such

questions with the notice pleading requirements of the Federal Rules of Civil Procedure.

*Id*.

These cases make clear that Rule 26(a)(1) does not impose the absolute disclosure obligation Yankton seeks to create. Yankton ignores Plaintiffs' identification of types of damages it intends to recover in their answers to Yankton's contention interrogatories, which they have supplemented multiple times. Yankton ignores the fact Plaintiffs have produced hundreds of pages of documents bearing directly on their damages claims and have specifically identified them by Bates number. Plaintiffs have supplemented and produced additional damages-related documents on at least <u>six</u> occasions. Despite Yankton's repeated attempts to concoct a discovery dispute, Plaintiffs have always responded to Yankton's repeated and repetitive demands for more information by timely producing damages-related documents. Plaintiffs' efforts to satisfy Yankton's insatiable demands culminated in their timely disclosures and supplementation served on April 30, the deadline established by the Amended Scheduling Order. Plaintiffs believe Yankton now has all the documents available relating to their damages claims and the calculations shown in their expert report. Rather than accept this fact, Yankton presses for production of documents that do not presently exist.

Further, the cases Yankton cites and on which it relies are all inapposite. Yankton cites many cases for platitudes or noncontroversial general statements regarding disclosure obligations. None of the cases it cites or relies on involve facts similar to this action. The cases Yankton appears to cite to support its argument that Plaintiffs failed to comply with Rule 26(a)(1) (*see* Doc. 97 at 22), involved complete failures to disclose or egregious conduct far different than here. *See Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698,  699, 701, 703-04(8th Cir. 2018) (plaintiff *never* made any timely expert witness disclosures and never provided a summary of expected expert testimony); *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1222-25 (10th Cir. 2015) (failure to disclose insurance policy for 18 months; appeal involved district

court's authority to sanction attorneys under Rule 37(c)(1)); *Remington v. Mathson*, 575 Fed. Appx. 808, 809 (9th Cir. 2014) (affirming discovery sanction against *pro se* plaintiff for complete failure to comply with expert witness disclosures); *Manigaulte v. C.W. Post of Long Island Univ.*, 533 Fed. Appx. 4, (2nd Cir. 2013) (affirming dismissal of *pro se* plaintiff's claims for failure to submit to oral deposition). *See also Tutor-Saliba*, 218 F.R.D. at 220 (defendants' cases "involve extreme situations in which the defendant was either prejudiced by plaintiff's conduct or entitled to summary judgment because of lack of any supporting evidence.").

Yankton's arguments make a mockery of the right to supplement and amend discovery as a case progresses enshrined in the Federal Rules of Civil Procedure. Yankton's claim that Plaintiffs, because they later decided to designate their CEO as an expert witness, therefore should have presented a complete damages disclosure on August 30, 2024, is baseless (and factually wrong). No court has ever enunciated such a requirement based on the later-determined identity of an expert witness. Courts have consistently held that Rule 26(a)(1)'s disclosure requirements may be satisfied with subsequent disclosures, whether via document production, interrogatory answers or deposition testimony. Plaintiffs have repeatedly supplemented their discovery responses and have provided full disclosure of their damages calculations and methodology as required by this Court's Amended Scheduling Order. Plaintiffs have fully and timely complied with their disclosure and discovery obligations under the Federal Rules.

## II.    Entry of an Amended Scheduling Order Obviates Any Possible Prejudice to Yankton.

Yankton has moved to amend the Scheduling Order. *See* Doc. 95. In this Motion, it alternatively asks this Court to extend the deadlines in the Scheduling Order. Doc. 97 at 22. As Plaintiffs' separately and repeatedly have stated, all parties have long agreed that the Scheduling Order should be amended to extend the deadlines. *See* Docs. 105, 106. Despite Plaintiffs' efforts

to negotiate agreeable extensions to the Scheduling Order, Yankton rushed to file its Motion to Extend and this Motion. *See* Doc. 105, ¶s 19-34. Contrary to Yankton's claims, Plaintiffs have never opposed extending the discovery deadlines. Indeed, since early May, Plaintiffs have agreed that the scheduling order needed to be amended. Plaintiffs did decline Yankton's sudden change of position when it demanded substantially longer extensions than previously mentioned. But when Plaintiffs asked to negotiate further on the issue, Yankton instead filed this motion and a motion to amend the scheduling order. *See* Doc. 106 at 2, 6-9; Doc. 105, ¶s 33-34; Doc. 105-11.

Yankton now apparently claims it has been so unfairly prejudiced by Plaintiffs' compliance with the expert report disclosure deadline in the twice-amended Scheduling Order that Plaintiffs' entire damages claims should be excluded. Yankton ignores, however, the fact that Plaintiffs' expert disclosures were in full compliance with this Court's then-applicable Scheduling Order. Yankton fails to recognize that under the original Scheduling Order, fact discovery would have concluded and it would have had Plaintiffs' expert report only 60 days before its expert report was due. *See* Doc. 64, ¶8. It would have had no opportunity to take any further fact discovery. Moreover, it would have had to take Plaintiffs' expert deposition before receiving Plaintiffs' rebuttal expert report. *See id.*, ¶s 5, 8. Rather than prejudicing Yankton, Plaintiffs' full compliance with the April 30, 2025, deadline for providing its expert report left Yankton in a better position than under the original Scheduling Order.

Amendment of the Scheduling Order, as this Court already had indicated it will do, obviates any possible prejudice to Yankton. Yankton implicitly admits this fact via its motion to amend (Doc. 95) and its alternative request in this Motion. Doc. 97 at 24. Indeed, extension of deadlines is the proper course of action, rather than exclusion under Rule 37(c)(1) as demanded by Yankton. *See, e.g., Doe v. Young*, 664 F.3d 727, 735-36 (8th Cir. 2011) (reversing exclusion of

evidence as sanction; "if any unfair surprise existed, the proper course here was not exclusion but instead something less drastic, such as a continuance"); *Janvrin v. Cont'l Res., Inc.*, 2016 U.S. Dist. LEXIS 118093, at *6-7 (D.S.D. Sept. 1, 2016) (finding failure to timely disclose damages computation harmless where trial would not be delayed and defendant would have adequate time to prepare cross-examination). *See also* Fed. R. Evid. 403, Advisory Cmte. Notes ("the granting of a continuance is a more appropriate remedy than exclusion of the evidence."). This Court should therefore should amend the Scheduling as requested by the parties.[3]

### III.  Yankton is Not Entitled to An Order Compelling Discovery or Excluding Plaintiffs' Damages Calculations or Awarding Attorneys' Fees and Costs.

Yankton makes two quite different requests for sanctions in its Motion. First, it asks for an order compelling Plaintiffs "to produce complete supplemental responses to Requests for Production Nos. 8, 9, 18, 26 and 30." Doc. 97 at 24. Second, it asks the Court to exclude Plaintiffs' damages calculations. *Id.* The Court should not grant either request.

Yankton's motion to compel fails in multiple respects. First, it has failed to sufficiently comply with the meet and confer requirement established by this Court or the Federal Rules. Plaintiffs responded to Yankton's last letter asserting discovery deficiencies by concluding, "I'm happy to discuss all of the above further to hopefully reach a resolution." Doc. 96-32; Anderson Decl., ¶8. Rather than accept that offer, Yankton filed this Motion. *See, e.g., Buergofol v. Omega Liner Co., Inc.*, 2025 U.S. Dist. LEXIS 63566, at *10-13 (D.S.D. Mar. 28, 2025) (meet and

---

[3] Plaintiffs proposed an amended Scheduling Order in its response to Yankton's motion to extent. *See* Doc. 106 at 8-9. As the Court should recall, Plaintiffs' primary objection to the schedule proposed by Yankton was that it would have the benefit of full discovery prior to submitting its expert report, unlike Plaintiffs. Plaintiffs respectfully suggest the Court could address that issue by setting a date soon after the new fact discovery cut-off date by which Plaintiffs could submit a supplemental or substitute expert report. Setting such a date would be consistent with the timing set forth in the original Scheduling Order.

confer requires actual meeting or conference in which they engage in two-way communication to discuss each contested discovery dispute in a genuine effort to avoid judicial intervention).

Second, Yankton's Motion now seeks to compel responses to Document Requests 8, 9 and 18, <u>which were not mentioned or raised in its June 10 letter</u>. *See* Doc. 96-31 Yankton has <u>never</u> raised an issue with Plaintiffs' response to Request No. 18. Anderson Decl., ¶8. It therefore has failed to make <u>any</u> attempt to discuss that request. Further, Plaintiffs could not reasonably understand any dispute remained concerning its responses to those requests given Yankton's failure to raise them in its final letter or in any meet and confer before filing its Motion. *Id.*[4]

Regarding Request No. 26, Plaintiffs told Yankton on June 12 that they "do not have expense reports, gross revenue reports or net revenue reports. Also, no financial statements or tax returns have been prepared for 2024 as yet, and neither have such documents been prepared for 2025. Neither income tax returns nor balance sheets were used or considered in preparing Plaintiffs' damages calculations." Doc. 96-32. Plaintiffs confirmed these statements in their First Amended Responses to Yankton's Third Set of Requests for Production of Documents Nos. 26-30. *See* Doc. 96-33 at 3-4. Yankton has not thereafter raised an issue regarding Request No. 26 with Plaintiffs. Plaintiffs cannot produce that which they do not have.

Regarding Request No. 30, Plaintiffs have produced "proposals or offers made by [either of the Plaintiffs] made to potential new clients or customers for the period from January 1, 2023 to present" and then identified all such documents by Bates numbers. *See* Doc. 96-17 at 8; Doc. 96-33 at 6-7. Plaintiffs questioned the relevance of the additional documents sought by Request

---

[4] Document Request No. 8 was last raised in Yankton's letter of February 19, 2025. *See* Doc. 96-25. Plaintiffs responded on March 4. *See* Doc. 96-26. Yankton never raised an issue with Request No. 8 thereafter. Document Request No. 9 was last raised in Yankton's letter dated May 23. *See* Doc. 96-29. Plaintiffs responded on June 4. *See* Doc. 96-30. Yankton did not raise Request No. 9 in its last letter dated June 10. *See* Doc. 96-31. Document Request No. 18 has <u>never</u> been specifically raised by Yankton. Not even a semblance of meet and confer has occurred regarding that request. *See* Anderson Decl., ¶8.

No. 30, given that it is impossible to replace Yankton County, South Dakota as a client, given that there is only one such county. Plaintiffs pointed out that the documents produced provide "more than sufficient information for [Yankton] to explore this alleged line of defense, simply by asking whether any contract was actually entered into in response to the offer or proposal. If so, [Yankton] can easily ask for the terms." Doc. 96-30. Plaintiffs pointed out that whether efforts to mitigate were successful or not "is not the test …; it is the efforts that matter." Doc. 96-32. Yankton never responded to this point prior to filing this Motion. Surprisingly, Yankton never bothered to pursue this line of questioning in either of the depositions taken and concluded on June 24 and 25. Anderson Decl., ¶6. Yankton has not complied with its obligations to meet and confer. *See id.*, ¶8.

Yankton further bears the burden of making a threshold showing of relevance before production of information is required. *See, e.g., Buergofol GmbH v. Omega Liner Co., Inc.*, 2023 U.S. Dist. LEXIS 122414, at *8-9 (D.S.D. July 13, 2023); *Spring Commc'ns Co. L.P. v. Crow Creek Sioux Tribal Ct.*, 316 F.R.D. 254, 263-64 (D.S.D. 2016). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *Id.* at 264. Here, Yankton makes no such attempt regarding the additional documents apparently now requested.

Third, Yankton has violated at least the spirit of this Court's Scheduling Order by not filing a motion to compel "within 14 days after the subject matter of the motion" arising. Doc. 64, ¶6. Yankton apparently knew of the alleged deficiencies in Plaintiffs' initial disclosures and discovery responses in January 2025. *See* Doc. 96-23. Rather than file a motion to compel within 14 days of Plaintiffs' response on January 27 (*see* Doc. 94-24), Yankton needlessly delayed six

months, until June 16, to file its motion. It offers no explanation for its failure to promptly raise this alleged discovery dispute. *See Dziadek v. Charter Oak Fire Ins. Co.*, 2014 U.S. Dist. LEXIS 26703, at \*12 (D.S.D. Mar. 3, 2014) (failure to file motion to compel within 14 days of dispute is a "violation of the spirit of the Scheduling Order").

Yankton effectively has engaged in a game of "whack-a-mole." Every good faith attempt by Plaintiffs to address Yankton's alleged concerns has been met with an ever-changing, and often delayed, response. Given Yankton's failure to show that: (a) a dispute <u>ever</u> existed regarding Request No. 18; (b) a dispute <u>still</u> existed regarding Request Nos. 8 and 9 after June 4; (c) Plaintiffs are improperly withholding documents responsive to Request No. 26; or (d) any argument why the documents Plaintiffs have produced in response to Request No. 30 are insufficient, this Court should deny Yankton's motion to compel in its entirety.

This leaves Yankton's request that this Court should "enter an order excluding Plaintiffs [*sic*] damages and lost profits evidence based on Plaintiffs' unjustified failure to comply with the Initial Disclosure requirements of Rule 26(a)(1)(A)(iii), and award Yankton County additional discovery requests." Yankton also asks for an award of its fees and costs incurred in bringing this Motion. Doc. 97 at 24. These requests should also be denied.

The Court's discretion to impose a sanction under Rule 37 is not absolute. *Doe*, 664 F.3d at 734. Its discretion "narrows as the severity of the sanction or remedy it elects increases." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). "Exclusion of evidence is a harsh penalty, and should be used sparingly." *ELCA Enters. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190 (8th Cir. 1995). *See Bonds v. Dist. of Columbia*, 93 F.3d 801, 809 (D.C. Cir. 1996). In determining a sanction, "the district court should consider, *inter alia*, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the

information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527 F.3d at 692. *See Nasuti v. Walmart, Inc.*, 2021 U.S. Dist. LEXIS 145920, at *9 (D.S.D. Aug. 4, 2021). Each of these factors counsels against Yankton's requested exclusion order.

Here, Plaintiffs have already shown that their Initial Disclosures were not deficient, particularly in light of their numerous document productions and discovery response supplementations. Plaintiffs' actions were consistent with established Federal court precedents and therefore substantially justified. *See supra* pp. 5-17. Plaintiffs' expert witness disclosures, timely made on April 30 as required by the Scheduling Order, provide a full computation and description of methodology used. Yankton makes no argument those disclosures are deficient in any way. Its argument that it is somehow prejudiced by the timely disclosures 60 days before the end of discovery and 60 days before its expert report was due, ignores the fact that this Court's original Scheduling Order, as well as the amended Scheduling Order, provided no longer period of time to Yankton. Yankton has suffered no prejudice, particularly given the fact this Court will extend the Scheduling Order deadlines, as requested by all parties. There will be no disruption to the trial, as any trial is months away. Finally, Plaintiffs' damages evidence is critical to its claims against Yankton. Moreover, because the same evidence will be used against NCIC, who has no standing to bring a motion such as Yankton's, Plaintiffs' damages evidence will be presented to the jury in any case.

Finally, Yankton is not entitled to any award of attorneys' fees. It did not meet and confer on all issues in good faith prior to filing this Motion. Anderson Decl., ¶8. *See supra*, n. 4. Yankton violated the spirit of the Court's Scheduling Order by failing to file a motion to compel months ago. *See Dziadek*, 2014 U.S. Dist. LEXIS 26703, at *55 (failure to bring motion within

14 days referenced as ground for denying award of attorneys' fees). Plaintiffs' discovery responses and positions are substantially justified. *See* Fed. R. Civ. P. 37(a)(5)(ii)-(iii) (expenses not mandatory when nondisclosure was substantially justified or when circumstances would make such an award unjust). *See also* Doc. 85 at 7 (denying award of attorneys' fees and costs based on Yankton's position being substantially justified). Yankton should not prevail on its motion in its entirety, if at all. *See id.*, R. 37(a)(5)(c) (courts have discretion in deciding whether to apportion expenses when motion is granted in part). Entry of an amended Scheduling Order can hardly be characterized as a "win" given that all parties have long been in agreement on that need. Based on all the facts and circumstances, this Court should not award Yankton any fees or costs associated with this Motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs Reliance Telephone of Grand Forks Incorporated and Reliance Systems Inc. respectfully request that the Court deny Defendant Yankton County, South Dakota's Motion *in Limine*, or in the Alternative, Motion to Compel. The Court should, however, extend the deadlines in the Amended Scheduling Order.


Dated: July 7, 2025.                                  /s/ Patrick L. Sealey
                                                      Patrick L. Sealey AT0007085
                                                      HEIDMAN LAW FIRM, P.L.L.C.
                                                      1128 Historic Fourth Street
                                                      P.O. Box 3086
                                                      Sioux City, IA 51102
                                                      Tel: (712) 255-8838
                                                      Fax: (712) 258-6714
                                                      Email: Patrick.Sealey@heidmanlaw.com

                                                      and

                                                      Alan M. Anderson (MN Bar #149500)
                                                      (admitted *pro hac vice*)

L. Reagan Florence (MN Bar #0396468)
(admitted *pro hac vice*)
ALAN ANDERSON LAW FIRM LLC
11100 Wayzata Blvd., Suite 545
Minneapolis, MN 55305
Tel: 612-756-7010
Fax: 612-756-7050
Email: aanderson@anderson-lawfirm.com
      rflorence@anderson-lawfirm.com

*Attorneys for Plaintiff Reliance Telephone of Grand Forks Incorporated and Reliance Systems Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served on all parties to the above-entitled cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on July 7, 2025.

Nicholas G. Moser
Dylan M. Miller
Email: nick@mwhlawyers.com
dylan@mwhlawyers.com
ATTORNEYS FOR DEFENDANT
NETWORK COMMUNICATIONS
INTERNATIONAL CORP.

Melissa R. Jelen
Claire E. Wilka
Email: mjelen@cadlaw.com
cwilka@cadlaw.com
ATTORNEYS FOR DEFENDANT
YANKTON COUNTY, SOUTH DAKOTA

      /s/ Patrick L. Sealey