## IN THE UNITED STATES DISTRICT COURT
## FOR SOUTH DAKOTA

|  |  |  |
|---|---|---|
| RELIANCE TELEPHONE OF GRAND FORKS INCORPORATED, a North Dakota corporation, | ) ) ) ) | Civil No. 4:24-cv-04098-ECS |
| and | ) ) | |
| RELIANCE SYSTEMS INC., a Nevada corporation, | ) ) ) | |
| Plaintiffs, | ) ) | **PLAINTIFFS' REPLY MEMORANDUM IN SUPORT OF ITS OBJECTIONS TO REPORT AND RECOMMENDATIONS IN RESPONSE TO DEFENDANT YANKTON COUNTY, SOUTH DAKOTA'S RESPONSE MEMORANDUM** |
| v. | ) ) ) | |
| YANKTON COUNTY, SOUTH DAKOTA, | ) ) | |
| and | ) ) | |
| NETWORK COMMUNICATIONS INTERNATIONAL CORP., a Texas corporation, | ) ) ) ) | |
| Defendants. | ) ) | |

This Reply Memorandum is submitted on behalf of Plaintiffs Reliance Telephone of Grand Forks Incorporated ("Reliance Telephone") and Reliance Systems Inc. ("Reliance Systems") (collectively, "Reliance" or "Plaintiffs") in response to Defendant Yankton County, South Dakota's Memorandum in Opposition to Plaintiffs' Objections to Report and Recommendations (DOC 124) ("Opposition"). *See* Doc. 141. Rather than present objective arguments in response to Plaintiffs' Objections (*see* Doc. 131), Yankton resorts to hyperbole and name-calling. It presents arguments that are not supported by the record. It relies on cases that are readily distinguishable and not on point. It repeatedly fails to address significant factual differences in cases on which it relies compared to the facts in this case.

No cases similar to the facts in this action and the recommendations of the R&R have been cited or identified. The R&R is contrary to binding Eighth Circuit cases and prior decisions of this Court and other Federal courts. The R&R is contrary to the facts presented and so is also clearly erroneous. This Court must review the R&R's recommendations *de novo*. *See* 28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *Ally v. Reyes*, 2025 U.S. Dist. LEXIS 46359, at *2 (D.S.D. Mar. 10, 2025). Based on a *de novo* review and Reliance's objections, this Court should reject the R&R's recommendations. Nothing in Yankton's Objections changes or alters the proper analysis this Court should conduct. Proper application of the law and consideration of the facts in <u>this</u> case, shows that the R&R's arbitrary recommendation to eviscerate Plaintiffs' damages claims by excluding over 90% of their damages should be rejected.

## ARGUMENT

### I.     Yankton Does Not Oppose Plaintiffs' Objections to the R&R's Recommendations Relating to NCIC's "Joinder".

Plaintiffs objected to the R&R's recommendations to permit NCIC's "Joinder" and to exclude Plaintiffs' opposition to NCIC's "Joinder." Neither the Federal Rules nor the Local Rules permit such a "Joinder" as filed by NCIC. *See* Doc. 131 at 16-21. Yankton does not oppose Plaintiffs' Objections to that portion of the R&R. Yankton does not oppose Plaintiffs' Objections to the R&R's recommendation to strike Plaintiffs' Opposition to NCIC's "Joinder." *See generally* Doc. 141. This Court therefore should not adopt the R&R's recommendations insofar as they relate to NCIC's improper "Joinder" or Yankton's motion to strike Plaintiffs' opposition to NCIC's improper "Joinder." To be clear, NCIC, which never complained about Plaintiffs' damages disclosures and never filed a proper motion, should not be permitted to impermissibly ride on Yankton's coat tails. Plaintiffs' complete damages analysis and claims asserted against NCIC should be allowed in their entirety.

II.    **Plaintiffs' Have Not Waived Any of the Arguments Presented in Their Objections**.

Yankton argues that Plaintiffs waived "new arguments and case law" submitted in their Objections. Doc. 141 at 3-4. This argument is without basis.

Plaintiffs presented each of the arguments made in their Objections in their Opposition to Yankton's Alternative Motion *In Limine*. *See generally* Doc. 109. Plaintiffs clearly and concisely outlined their arguments at the onset. *See id.* at 2-4. Plaintiffs argued that they had properly complied with their discovery obligations under the Federal Rules, including in their initial Rule 26(a)(1) disclosures. *See id.* at 12-17. Plaintiffs argued that this Court's amended scheduling order obviates any possible prejudice to Yankton. *See id.* at 17-19. Plaintiffs established that Yankton was not entitled to any order compelling discovery or excluding any of their damages calculations. *See id.* at 19-24. Plaintiffs explicitly argued that under the Eighth Circuit's four-part analysis required before excluding evidence under Rule 37(c)(1), each "of these factors counsels against Yankton's requested exclusion order." *Id.* at 23. Thus, each of the issues presented in Plaintiffs' Objections were squarely before the Magistrate Judge prior to issuing the R&R.

The fact the R&R made erroneous recommendations in the face of Plaintiffs' arguments does not somehow freeze the cases which this Court may consider in reviewing Plaintiffs' Objections. Yankton's novel argument that Plaintiffs may rely only on the cases cited in their original Opposition is wrong and contrary to the very concept of de novo review that this Court must employ. *See Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) ("[w]hen de novo review is compelled, no form of appellate deference is acceptable."); *see also U.S. v. Raddatz*, 447 U.S. 667, 674-75 (1980) (explaining de novo review and legislative history of 28 U.S.C. § 636(b)(1)). Plaintiffs cannot and could not foresee the erroneous analyses presented in the R&R. As long as an issue was fairly raised and presented below (as here), Plaintiffs may cite to different cases from those cited in their original Opposition to support their previously-made arguments. *Cf.*

Fed. R. App. P. 28(j) (submission of subsequently identified new authorities after filing of brief). Yankton cites no case addressing this specific issue that holds to the contrary.[1]

The cases Yankton cites to support its waiver argument do not suggest otherwise. Yankton fails to distinguish between cases in which a party completely failed to object to a non-dispositive report and recommendation or cases in which a party raises an entirely new argument, never-before presented in any manner, on appeal. *See, e.g., Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 210 (D.N.Y. 1997) (party's failure to object to a magistrate's ruling waives the party's objection).[2]

Waiver only applies to never-before-presented arguments or issues. In *Barham v. Reliance Std. Life Ins. Co.*, 441 F.3d 581, 584-585 (8th Cir. 2006), for example, the Eighth Circuit held that arguments that supplement previously raised arguments are reviewable. Even if an argument is raised for the first time in a reply brief, such an argument may be considered in the discretion of the reviewing court. Waiver is not an absolute. In *Kahle v. Leonard*, 2010 U.S. Dist. LEXIS 13752, at *4 (D.S.D. Feb. 17, 2010), this Court stated that a "party responding to an argument raised by the other party has a right to raise its defense in a responsive brief."

This Court must conduct a *de novo* review of all parts of a report and recommendation to which objection is made. It may "accept, reject, modify, in whole or in part, the findings or recommendations made…." 28 U.S.C. §636(b)(1)(C). *Accord* Fed. R. Civ. P. 72(b)(3). "[A]s part of its obligation to determine *de novo* any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised

---

[1] Yankton implicitly recognizes the lack of merit in its "no new cases" argument. It now cites cases it never previously cited in support of its Alternative Motion *In Limine*. *See, e.g.,* Doc. 141 at 5.

[2] Yankton cites *Moore v. Ford Motor Co.*, 755 F.3d 802, 808 (5th Cir. 2014), in support of its waiver argument. *See* Doc. 141 at 3. The case concerns an issue of waiver of the protection of previously-issued protective orders. *See* 755 F.3d at 803, 807-808. Nothing on the page cited by Yankton says anything about waiver of arguments or issues.

before the magistrate." *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992). Here, Plaintiffs squarely raised the issues and arguments presented in their Objections in their Opposition to Yankton's Alternative Motion *In Limine*. They are allowed to respond and present their arguments why the R&R is clearly erroneous and contrary to law given this Court reviews the R&R *de novo*, including citing to additional relevant and controlling caselaw.

### III.  Plaintiffs Properly and Timely Disclosed Their Damages Computations.

Yankton contends that Plaintiffs failed to properly and timely disclose their damages calculations and that the R&R's conclusion that Plaintiffs violated their initial disclosure obligations was correct. *See* Doc. 141 at 4-10. Both contentions are wrong.

Yankton first mischaracterizes Plaintiffs' arguments relating to their proper and timely disclosure of their damages calculations. Yankton wrongly describes Plaintiffs as taking "the erroneous position that Plaintiffs were not required to provide any computation of their damages until they disclosed their expert report." Doc. 141 at 4. But that is not Plaintiffs' position. As Plaintiffs have repeatedly argued, they acted in good faith and consistent with numerous Federal Court cases regarding their disclosure obligations under Fed. R. Civ. P. 26(a)(1) and their right and ability to supplement those disclosures as the case progressed. *See* Doc. 131 at 7-12; Doc. 110, ¶7; Doc. 109 at 1-17; Doc. 105, ¶s 5-6.

The Federal Rules not only anticipate, but courts have long recognized, that continuing supplementation of initial disclosures and discovery responses is permitted as a case progresses. *See* Fed. R. Civ. P. 26(e). Compliance with Rule 26(a)(1) does not vary based on a decision months later on who a party may identify as an expert witness. *See, e.g., Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006); *Caruana v. Marcum*, 2016 U.S. Dist. LEXIS 99585, at *15 (M.D. Tenn. July 28, 2016); *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, 2009 U.S. Dist. LEXIS

104020, at *17 (E.D.N.Y. Nov. 9, 2009); *City & Cty. of S.F. v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 220, 222 (N.D. Cal. 2003). Plaintiffs' actions were not without basis.

Unlike the cases cited in the R&R or relied on by Yankton, Plaintiffs continually produced documents underlying their damages calculations. Plaintiffs continually supplemented their discovery responses and interrogatory answers to provide information relating to damages. *See* Doc. 131 at 7-12. Plaintiffs have not committed a mortal sin by developing their case over the course of discovery and keeping Yankton apprised of those developments.  Plaintiffs' actions belie Yankton's rhetorical accusations of sandbagging or willful or intentional disregard their obligations under Rule 26(a)(1).

Plaintiffs' actions distinguish this case from the cases cited in the R&R or relied on by Yankton. Those cases all involved far different facts than here. In those cases, the offending party completely failed to disclose any meaningful information regarding its damages claim or did so only after applicable disclosure deadlines had passed or the case was on the eve of trial. Yankton fails to recognize that the facts of each case matter. *See, e.g., Aware Prods. LLC v. Epicure Med. LLC*, 2025 U.S. Dist. LEXIS 60937, at *17 (E.D. Mo. Mar. 31, 2025) (denying Rule 37(c)(1) motion where plaintiff made no substantive damages disclosure; court instead required plaintiff to provide updated damages disclosures within seven days); *Park City Realty, LLC v. Archos Capital, LLC*, 2021 U.S. Dist. LEXIS 208428, at *21-30 (D. Utah Oct. 27, 2021) (plaintiffs did not provide any documentation regarding damages until the final day of discovery, trial would be disrupted and delayed if untimely evidence allowed; evidence plaintiffs' failures to disclose were willful); *Middleton v. Hempstead County*, 2020 U.S. Dist. LEXIS 151803, at *2-3, 9-10 (W.D. Ark. Aug. 21, 2020) (plaintiff did not disclose any damages information until after the close of discovery; court refused to exclude evidence and instead re-opened discovery to permit discovery on

damages); *Cates v. Trs. of Columbia Univ. in N.Y.*, 330 F.R.D. 369, (S.D.N.Y. 2019) (court refused to preclude plaintiffs' damages disclosures even though disclosures were less than forthcoming); *N. Am. Communs., Inc. v. Sessa*, 2015 U.S. Dist. LEXIS 131549, at * (W.D. Pa. Sept. 29, 2015) (court denied Rule 37 motion despite plaintiff's failure to provide specific damages information in initial disclosures because plaintiff did not act willfully or in bad faith).

Fundamentally, Yankton's argument is premised on the fact that Plaintiffs later decided to use their president as their damages expert witness. Yankton – and the R&R – therefore seek to impose a disclosure obligation based on later expert selection and the view that a party must therefore have completely known its damages calculations and methodology months before any expert report was due. In Yankton and the R&R's world, it is immaterial that a party acts in good faith in continually producing relevant documents and supplementing discovery responses, timely serves its expert witness report and complete damages analysis, and perfectly complies with the applicable scheduling order. That same party will have its damages analysis eviscerated despite the fact that one defendant (Yankton) failed to object to discovery disclosures for four months (October 2024 to January 2025), delayed six weeks after receiving a good faith response to its initial purported concerns, and then two weeks later received a fulsome and timely disclosure.[3] *See* Doc. 131 at 7-8.

Plaintiffs scrupulously complied with the deadlines set forth in this Court's applicable scheduling order. Plaintiffs believed in good faith, based on numerous federal court cases, that their continual supplementation of discovery responses and production of relevant documents

---

[3] The other defendant, NCIC, never made any objections to Plaintiffs' damages disclosures. NCIC therefore was satisfied with the disclosures.

satisfied their obligations under the Rules. Plaintiffs' properly and timely disclosed their damages calculations.

Yankton next argues the R&R correctly concluded that Plaintiffs violated their initial disclosure obligations. It relies on basic, non-controversial statements in cases regarding the purposes behind Rule 26(a)(1). As usual, however, Yankton never considers the vast differences between the cases on which it relies and the facts in this action. It then concocts arguments based on non-existent deadlines that ignore not only its own conduct, but the substantial efforts of Plaintiffs to provide relevant information to Yankton.

In *Wilbur-Ellis Co. LLC v. Jens*, 2025 U.S. Dist. LEXIS 8670 (D.S.D. Jan. 14, 2025), the plaintiff did not dispute that it had failed to comply with Rule 26(a)(1)(E). *See id.* at *21. This Court then ordered the plaintiff to immediately comply with its initial disclosure requirements. It did not exclude or preclude any of the plaintiff's damages claim. Similarly, it rejected the plaintiff's argument that it needed expert testimony before it could provide any information in its discovery responses. *See id*. at *22-23. But that is not the case here. Plaintiffs repeatedly produced relevant damages-related documents to Yankton. Plaintiffs repeatedly supplemented and amended their damages-related discovery responses.

*Caruna*, 2016 U.S. Dist. LEXIS 99585, also does not support Yankton's argument or the R&R. In that case, the court pointed out that in cases in which a court imposes Rule 37 sanctions, "a party often fails to present a coherent theory of damages, then later attempts to add new theories through Rule 26(d) supplementation." *Id*. at *12. *See id.* at *14-16. The court recognized, unlike the R&R, that a party satisfies its Rule 26(a) disclosure obligation "by pointing to materials or testimony that bears on a category of damages sought." *Id.* at *16 (citing cases). Just as in *Caruna*, Plaintiffs offered their theory of damages (incremental lost profits, including lost future profits)

8

and then filled that theory in through supplemental discovery responses, document production and the timely damages expert report which, as the R&R holds, fulfills their disclosure obligations under the Rules. *See* Doc. 124 at 7.

*Carmody v. Kan. City Bd. of Police Comm'rs*, 2012 U.S. Dist. LEXIS 194818 (W.D. Mo. Aug. 27, 2012), also provides no support for the R&R or Yankton. In that case, not only did the plaintiffs not provide any information regarding their damages claims until in response to a motion for summary judgment filed after the close of discovery, they affirmatively claimed they had no ability to determine their damages when their depositions were taken. *See id*. at *3-6. Not surprisingly, the court granted the defendant's motion to exclude the plaintiffs' sudden damages declarations. *See id*. at *8-10. Before doing so, however, unlike the R&R and Yankton, the court carefully reviewed and considered each of the four factors the Eighth Circuit requires prior to reaching that decision. *See id.* at *7-15.

Yankton now twists the facts to suit its argument. It suddenly claims that the commencement of this action in another judicial district in November 2023 somehow is relevant to Plaintiffs' damages disclosures. *See* Doc. 141 at 7. Yankton then ignores the fact that after Plaintiffs timely made their initial disclosures in August 2024, it failed to raise any objection or express any concern regarding the adequacy of those disclosures until January 16, 2025, over four months later. *See* Doc. 96-23. Plaintiffs responded to Yankton's alleged concerns on January 27. *See* Doc. 96-24. After thanking Plaintiffs for their response, Yankton said it would respond further if necessary. *See* Doc. 105-1. Yankton received numerous document relevant to damages, that Plaintiffs voluntarily identified specifically. *See* Doc. 96-5; Doc. 96-9; Doc. 105, ¶5. Yankton did not make any further objection until March 4, 2025, over a month later. By the end of March, Plaintiffs had served three supplemental interrogatory answers and document request responses,

again, each of which voluntarily identified specifically documents relevant to Plaintiffs' damages claims. *See* Doc. 96-6 at 18-21; Doc. 96-10 at 6-8; Doc. 96-14 at 5-11.

Yankton then waited six weeks before responding further. *See* Doc. 96-27. Two weeks later, Plaintiffs fully, comprehensively and timely served their damages calculations. *See* Doc. 96-2; Doc. 96-7; Doc. 96-18; Doc. 96-19; Doc. 96-20.

The R&R, and Yankton, essentially ignore this timeline. The R&R, and Yankton, fail to consider Yankton's dilatory conduct. If Yankton believed it was being unduly prejudiced, its actions certainly do not support such a belief. Contrary to the R&R, Yankton was not left in the dark for eight months.  There was roughly ten months between Plaintiffs first initial disclosures and Yankton's *Motion in Limine*.  Yankton did not raise a red flag for more than six of those months.

Faced with these facts, Yankton resorts to rhetoric and baseless assertions. It claims "Plaintiffs intentionally sought to keep Yankton County in the dark … hoping to deprive Yankton County of the opportunity to conduct discovery or respond to its claim for damages with its own expert given the impending deadlines." Doc. 141 at 8-9. Such hyperbole is without merit. The amended discovery schedule, to which Yankton had stipulated on March 3, extended the deadline to complete fact discovery to July 1 and expert discovery to August 1. *See* Doc. 67. All other deadlines, including the deadline for Yankton to submit any responsive expert report, remained unchanged. *See* Doc. 67. If Plaintiffs were intentionally engaging in "gamesmanship to sandbag" Yankton (Doc. 141 at 8, n.1) or "intentionally" trying to keep Yankton in the dark (Doc. 141 at 8), then why would Plaintiffs agree to any extension of the discovery schedule? More importantly, if Yankton actually believed it was being prejudiced, why did it agree to the stipulation to amend the discovery schedule? Why did it unreasonably delay bringing its purported concerns to the attention

of the court until June 2025, on the even of when its expert report was due? Who is sandbagging whom?

Under the then-existing scheduling order, Yankton had two months, as it had agreed, to prepare an expert report following Plaintiffs' timely service of their report. Yankton had three months to conduct any additional fact discovery. After its motion to amend the scheduling order was granted in its entirety, Yankton had (and has) five full months to prepare a responsive expert report. It had (and has) seven full months to conduct fact discovery. If it was interested in settling this action, it surely has more than sufficient time to make an offer (it has not). Instead, Yankton is trying to turn an erroneous and contrary to law R&R to its advantage.

The R&R simply brushed aside Plaintiffs' multiple damages-related disclosures and document productions. It failed to address Yankton's substantial delays in claiming Plaintiffs' disclosures were insufficient or prejudicial. It failed to address the multiple cases on which Plaintiffs relied in support of their actions. The R&R's recommendations, and Yankton's arguments, to the contrary, should be rejected.

## IV.    **The R&R's Recommended Sanction is Excessive and Clearly Erroneous**.

Yankton argues the R&R's evisceration of Plaintiffs' expert damages report was an appropriate sanction. *See* Doc. 141 at 10-25. In doing so, Yankton engages in rhetorical flourishes, contending that Plaintiffs acted in "willful defiance," made a "blatantly false argument," and a made a decision that "was willful and flagrant [and] in bad faith" "with the obvious intention to sandbag and purposefully limit the Defendants' time and opportunity to conduct meaningful discovery with respect to Plaintiffs' damages claim, and to evaluate and respond to their damages claim with expert testimony." Yankton's hyperbole and name-calling only serve to establish more firmly that the R&R's recommended sanction is excessive, clearly erroneous and contrary to law.

The R&R made no finding that Plaintiffs acted in "willful defiance" or that Plaintiffs' actions were "willful and flagrant" or in bad faith or sandbagging. Plaintiffs' conduct was the quite the opposite. Plaintiffs consistently supplemented their damages disclosures and provided relevant documents and discovery responses. Yankton had possession of documents relevant to Plaintiffs' damages calculations. Yankton knew Plaintiffs intended to claim lost future profits for multiple years. Yankton's claim to complete surprise when it received Plaintiffs' timely-served expert damages report is nothing more than inflated lawyer argument, for which it has not submitted any declaration under oath claiming such surprise. Pure lawyer argument does not create facts, no matter how forcefully presented.

This Court must carefully consider the four factors established by the Eighth Circuit in determining whether to impose any sanction under Rule 37(c)(1). *See, e.g., Lauing v. Rapid City, Pierre & E. R.R.*, 610 F. Supp. 3d 1203, 1224 (D.S.D. 2022). *See* Doc. 131 at 3-16. The R&R failed to do so, as does Yankton in its Opposition. The R&R's recommended sanction is wholly inappropriate, clearly erroneous and contrary to law.

A. The Excluded Evidence is Critical to Plaintiffs' Damages Claims.

Yankton does not address this factor in its Opposition. The closest it comes to doing so is an irrelevant and wrong argument that Plaintiffs lost future profits claim is "pure speculation and conjecture." Doc. 141 at 17. Such an argument, regarding admissibility at trial, is not pertinent at this stage. Regardless, Plaintiffs' damages claim for lost future profits is fully supported by the evidence. Plaintiffs have along track record of renewals with Yankton and over 90% of the counties with which it does business stay with them for life. *See* Doc. 96-19, ¶s 51-54. Yankton ignores the fact that its county sheriff and long-time jail administrator testified that they were quite satisfied with Plaintiffs' services and would have continued to renew their contracts. Doc. 134-1 at 38-39,

40, 50; Doc. 134-2 at 30-31. It was reasonable to believe at the beginning of the contractual relationship that Plaintiffs and Yankton were engaging in another long, fortuitous venture. That belief transformed into an expectation. Given the pretextual nature of Yankton's admitted efforts to breach its contracts with Reliance, Plaintiffs' claim for lost future profits is well-founded and ultimately will be for the jury to decide. *See United States v. Morris, Inc*, 2017 WL 3426063 (D.S.D. 2017); *see also* Indep. Bus. Forms, Inc. v. A-M Graphics, Inc., 127 F.3d 698, 704 (8th Cir. 1997) (continuing, close business relationship meant the district court should have allowed pursuit of lost profits claim). The excluded evidence is critical to Plaintiffs claim, and this factor therefore favors Plaintiffs and augers against exclusion of any part of Plaintiffs' damages calculations.

B. Plaintiffs' Alleged "Failure" to Make Timely Disclosures was Made in Good Faith and Consistent with Applicable Caselaw and This Court's Scheduling Order.

Plaintiffs have established that their damages disclosures were timely made in good faith. *See supra* Section III; Doc. 131 at 7-12. Rather than objectively argue the facts and law, Yankton wildly claims all manner of nefarious conduct by Plaintiffs. It asserts intentional and willful actions that are belied by the facts. It disregards its own dilatory conduct. It ignores the fact that the R&R made no finding of willful or intentional wrongdoing by Plaintiffs.

Yankton now attempts to change the facts by asserting a never-previously made argument: that Plaintiffs intentionally withheld their damages calculations for "seventeen (17) months." Doc. 141 at 13. This is baseless hyperbole that only shows the lack of merit in its position. Yankton now claims that Plaintiffs somehow knew what their damages claims and calculations were from the moment they commenced this action in another judicial district on November 28, 2023. *See id.* This new argument ignores reality, the evidence, and the fact that the earliest initial disclosures – which Plaintiffs timely made – were not due until August 30, 2024. Yankton's attempt at revisionist

history should not be countenanced. Yankton cannot suddenly change its arguments to try to support its position or defend the R&R. It cannot ignore the undisputed good faith actions of Plaintiffs. *See* Doc. 110, ¶s 7-8.

Plaintiffs acted in good faith, supplemented their damages-related disclosures multiple times as permitted by the Rules and numerous cases, and timely served their complete damages disclosures. Accordingly, this factor favors Plaintiffs and countenances against adoption of the R&R.

C.  Yankton Will Suffer No Prejudice If Plaintiffs' Timely-Disclosed Damages Calculations are Allowed in Their Entirety.

Neither the R&R nor Yankton explains how exclusion of over 90% of Plaintiffs' damages calculations eliminates the prejudice Yankton claims to have suffered. Yankton's arguments – that it was denied the ability to prepare a responsive expert report or conduct additional discovery – does not establish how allowing Plaintiffs to present just over two years of lost future profits damages precludes those alleged harms. Given the extension of the discovery schedule and the timely disclosures under the scheduling order to which Yankton stipulated, no rationale exists for excluding over 90% of Plaintiffs' damages claims other than to purely punish Plaintiffs and substantially benefit Yankton.

Yankton now contends for the first time that a lesser sanction is not allowed because Plaintiffs never asked for any alternative lesser sanction. *See* Doc. 141 at 18-19. This argument ignores the fact that Plaintiffs clearly argued that Yankton was not entitled to <u>any</u> order excluding their damages calculations. *See* Doc. 109 at 19-24. That certainly is a "lesser sanction." Plaintiffs are not required to offer to submit to a punishment they honestly and in good faith believe they do not deserve.

Lastly, Yankton argues that the cases on which Plaintiffs rely do not support rejection of the R&R. *See* Doc. 141 at 19-25. As usual, Yankton fails to recognize or admit the factual differences in many of the cases. It fails to address those cases on which Plaintiffs principally rely in which the court refused to exclude evidence in circumstances far more egregious than here and instead allowed the offending party to belatedly make disclosures or granted a continuance or otherwise ameliorated prejudice to the other party. *See* Doc. 131 at 4-6, 10-16.

For example, *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698 (8th Cir. 2018), involved a complete failure to ever disclose two expert reports. *See id.* at 699-700, 703-704. That is not the factual scenario here. *ELCA Enters. v. Sisco Equip. Rental & Sales*, 53 F.3d 186 (8th Cir. 1995), involved an attempt by the plaintiff, after repeated denials of any intention to seeking a certain type of damages, and well after the trial court's deadline for submitting expert reports, to be allowed to submit a new expert report with entirely new damages theories. *See id.* at 189-190. That is not the facts here. In *Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2nd Cir. 2006), the Second Circuit discussed the exclusion of two never-before-disclosed witnesses, one of whom was an expert witness, relating to damages. *See id.* at 293. The Second Circuit's discussion indicates that in its view, the lower court erroneously imposed the exclusion sanction. *See id.* at 296-299. However, the appellate court ultimately determined it did not need to remand the case to the trial court, because the "evidence is insufficient to prove lost profits in this case and therefore the exclusion of that evidence cannot have prejudiced" the plaintiff. *Id.* at 299. The other cases Yankton references similarly are vastly different and readily distinguishable. None of the cases on which Yankton clings actually support the R&R and its arbitrary exclusion of over 90% of Plaintiffs' damages claims. Consideration of this factor favors Plaintiffs and does not support the R&R.

D.  <u>This Court's Order Extending the Discovery Schedule Eliminates any Possible Prejudice to Yankton.</u>

Tellingly, Yankton does not squarely address the impact of this Court's grant of its motion to extend discovery exactly as it requested. The R&R failed to do so as well. These omissions are inexcusable.  Plaintiffs further address the impact of the Court's Order below. *See infra* Section V. *See also* Doc. 131 at 13-16.

The Eighth Circuit, other courts, this Court, and the commentary to the Federal Rules all make clear that a continuation or amendment of the pretrial schedule is very much the preferred course of action in cases involving far more egregious facts than here. *See id.*  The then-existing pretrial schedule – to which Yankton had stipulated in March 2025 – provided a two-month period of time for preparation of responsive expert reports after Plaintiffs served their reports. *See* Doc. 64, ¶8. As amended in March by stipulation, the deadlines for fact and expert discovery were extended to July 1 and August 1, respectively. *See* Doc. 67. Plaintiffs timely served their expert report on April 30, 2025.

Yankton claims that it thereby was denied the ability to prepare a responsive expert report or conduct fact desired discovery or consider settlement. *See* Doc. 141 at 14-15. But this Court then, as requested by Yankton, extended the deadlines in the scheduling order. As demanded, Yankton has five full months in which to obtain a responsive expert report. It has seven full months in which to conduct additional fact discovery. *See* Doc. 110. If it actually is interested in settlement – which its silence suggests is not the case – it has more than enough time to explore that option, because trial is not set and will not occur until months after March 15, 2026. *See id.*, ¶3. Yankton's actions – or rather its inaction – suggests that it is more interested in needlessly delaying final resolution of this action rather than face the consequences of its breaches of contracts.

Neither Yankton nor the R&R present any cogent analysis or reasoning why this Court's order extending the discovery schedule does not eliminate any alleged prejudice to Yankton. It must once again be highlighted that it is doubtful that any prejudice existed in the first place since Plaintiffs timely complied with their stipulated expert disclosure deadline. Nonetheless, applicable caselaw makes clear that the extension is the preferred method of addressing any possible prejudice. Yankton obtained that relief. Granting sanctions when any potential prejudice has been resolved does not level the playing field – it creates imbalance. The fourth factor similarly favors Plaintiffs.

All four factors that this Court must consider under Eighth Circuit law all favor Plaintiffs and auger against any arbitrary exclusion of over 90% of Plaintiffs' damages claims.

## V.    This Court's Grant of Yankton's Motion to Extend Discovery Eliminated Any Possible Prejudice to Yankton.

Yankton argues that the R&R properly considered the effects of this Court's grant of its alternative motion to extend discovery. *See* Doc. 141 at 25-26. To do so, Yankton ignores the words in its *alternative* motion and the failure of the R&R to engage in any analysis of the impact of the five-month extension granted to prepare a responsive expert report and seven months in which to conduct fact discovery. The R&R recommends a severe sanction despite the fact that any alleged prejudice claimed – which is only lawyer argument – was removed by the discovery extension as requested by Yankton and as granted by this Court. Yankton now wants to have its cake and to eat it too.

Yankton first erroneously claims that Plaintiffs never raised their argument about the R&R's failure to consider the effects of this Court's order extending discovery. That argument is wrong. Plaintiffs' memorandum in opposition to Yankton's Motion *In Limine* explicitly argued that Yankton's claim of prejudice would be "fully alleviated" by amending the scheduling order. *See*

Doc. 109 at 3. Plaintiffs' opposition memorandum was filed <u>before</u> this Court entered its written order, but raised the issue based on the Court's oral statements at the June 25 hearing. *See id. See also* Doc. 111 (written order extending discovery filed four days <u>after</u> Plaintiffs' opposition). Thus, Plaintiffs squarely raised the issue. *See also* Doc. 117 at 3-4.

Yankton now attempts to disavow the fact that its Alternative Motion *In Limine* was an <u>alternative</u> to its motion to extend discovery. Yankton's supporting memorandum states that it seeks "to exclude the Plaintiffs [*sic*] evidence of damages and lost profits under Rule 37, <u>or alternatively</u>, to extend the scheduling order deadlines …." Doc. 97 at 7 (emphasis added). *See also id.* at 21, 22, 24; Doc. 94. Yankton cannot now change the nature of its alternative motion. It received entirely the extension it requested. It does not get to pick and choose its form of relief after-the-fact or get two bites of the apple.

Yankton claims the R&R "correctly considered Yankton County's alternative motion" because it did not recommend exclusion of all of Plaintiffs' timely-served damages expert report. Doc. 141 at 26. However, Yankton's claim of prejudice is based entirely on lawyer-argument. There is no declaration from counsel claiming prejudice. The R&R contains no explanation of how Yankton would still be prejudiced by having five months to prepare a response to Plaintiffs' damages claim or seven months in which to conduct fact discovery. The R&R effectively proceeds with the view that despite Yankton having entirely received what it wanted via its motion to extend discovery, some part of Plaintiffs' damages should be excluded, without any explanation why timely and properly-presented lost future damages should be limited to two years. There is no reasonable basis for such an arbitrary exclusion.

Yankton argues that despite timely receiving Plaintiffs' damages analysis under the then-applicable scheduling order, it somehow was "deprived … of its opportunity to have an expert

fairly evaluate and rebut Plaintiffs' claim for damages." Doc. 141 at 15. It claims it needed time to conduct discovery regarding Plaintiffs' damages claims. *See id*. But Yankton obtained that time when this Court granted entirely its motion to amend the discovery schedule. Yankton received exactly the additional time it desired via its motion. Never the less, Yankton now claims that it needed more. But it never made any such request in its motion to amend. Having received what was requested, it cannot now ask for more. Neither Yankton nor the R&R address this fact.

Finally, Yankton seeks refuge by arguing that Rule 37(c)(1) is self-executing. *See* Doc. 141 at 26. But as established in Plaintiffs' Objections, binding Eighth Circuit precedents establish that exclusion of evidence under Rule 37(c)(1) must be "used sparingly," and a careful analysis is required before any such sanction is imposed. *See, e.g., Doe v. Young*, 664 F.3d 727, 733-736 (8th Cir. 2011); *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008); *ELCA Enters.*, 53 F.3d at 190. *See generally* Doc. 131 at 4-16. Yankton's argument concerning the fact that its alternative motion to extend the discovery schedule, which was granted in full, completely ameliorated any alleged prejudice arising from Plaintiffs' timely-filed damages expert report, is without basis.

## VI.    The R&R Erred in Granting Yankton's Motion to Compel.

The R&R erred in granting Yankton's motion to compel production of non-existent and irrelevant documents. *See* Doc. 131 at 21-27. Yankton's Opposition does not alter that fact.

Yankton first argues about the relevance of financial documents to Plaintiffs' calculation of incremental lost profits damages. That argument not only misses the point of Plaintiffs' Objections to the R&R, but also reveals how Yankton strains and changes the scope of its document requests to seek documents that either are patently not relevant or simply nonexistent.[4]

---

[4] As stated in their Objections (*see* Doc. 131, n.8), Plaintiffs have produced their income tax returns and balance sheets for 2020 through 2023. (They previously produced profit and loss statements for those years.) Plaintiffs also produced their 2024 income tax return and financial statements for 2024, which became available in early September – prior to Yankton filing its Opposition. Yankton, however, makes no mention of these facts in its Opposition.

Document Request No. 9 as propounded was limited to "all documents relating to any damages Reliance Systems claims to have suffered as a result of Yankton County's breach of contract, including calculations, receipts, invoices, financial statements, and any other evidence of damages." Doc. 96-3. In its Alternative Motion *In Limine*, Yankton broadened that request, and claimed it:

> includes, but is not limited to, calculations of those damages, financial records and financial data such as receipts, sales data and records, revenue data and records, expense data and records, invoices, income statements, operating statements, financial statements, profit and loss statements, income tax returns, expense reports, balance sheets, operational costs, revenue reports, and any other evidence of or relating to their alleged damages.

Doc. 97 at 22-23. In its Opposition, Yankton goes even farther, now morphing the request into:

> (1) all of Plaintiffs' financial records on Quickbooks (which include financial records relating to and evidencing revenues and expenses, as well as expense reports and revenue reports that Mr. Hangsleben confirmed already exist in Plaintiffs' Quickbooks), (2) other bookkeeping and financial records on Plaintiffs' proprietary software system that evidence revenue and expenses, as well as expense reports and revenue reports that Mr. Hangsleben confirmed already exist in the Plaintiffs' proprietary software system, (3) Plaintiffs' credit card statements evidencing expenses, and (4) Plaintiffs' bank account statements evidencing expenses and revenues.

Doc. 141 at 28.

However, document requests are not a "nose of wax"[5] that may be twisted and shaped to suit a propounding party's later claimed desires. Document requests are not a moving target by which a party can claim a failure to produce by changing the scope of the request. Yankton's efforts to create a discovery dispute where none legitimately exists is particularly reflected in its new-found desire for credit card statements and bank account statements, which were never reviewed or used or considered in connection with the calculation of its damages. The R&R – and Yankton

---

[5] *See White v. Dunbar*, 119 U.S. 47, 51 (1886).

– ignores the fact that Plaintiffs repeatedly told it that they had produced all documents responsive to its requests seeking documents "relating to damages." *See* Doc. 96-30; Doc. 105, ¶s 3-5-6-9, 14; Doc. 131 at 25-26.

Yankton engages in similar revisionist history with Document Request No. 26. As Plaintiffs established in their Objections, Request No. 26 is not the overly broad request Yankton changed it to it its Alternative Motion *In Limine*. *See* Doc. 131 at 22-24. Plaintiffs do not have most of the documents requested in original Request No. 26.[6] *See id*. at 22; Doc. 96-33 at 3-4; Doc. 96-32. Instead, the R&R erroneously requires that Plaintiffs create bespoke documents just for Yankton.

Yankton does not address the numerous cases that establish that a court may not compel a party to create documents for production that are not normally created or prepared in the usual course of business. *See* Doc. 131 at 23-24. Yankton ignores established caselaw to demand that Plaintiffs be compelled to create documents specifically for its ever-expanding and changing document requests. The R&R, by ordering Plaintiffs to manufacture documents on demand, not only ignores the limitations of Rule 34, but also undisputed caselaw that prohibits such an order. Yankton cites no cases to support the R&R or its argument that a court may compel a party to create documents that not only were <u>not</u> used in calculating damages, but are not created or used in the ordinary course of business.

Yankton does not dispute that it never raised any objections to Plaintiffs' response to Request No. 8 after February 19, 2025. *See* Doc. 141 at 29. For over five months, Plaintiffs had no reason to believe that their response to Request No. 8 was in issue. Yankton's last communication regarding alleged discovery responses in issue was silent regarding Request No. 8. Request No. 8 relates to a separate and distinct entity – Reliance Telephone – than Request No. 9. Reliance

---

[6] To the extent the documents exist, they have been produced. *See supra* Note 4.

Telephone should not be required to guess or assume that a discovery response directed toward one party was still in issue while Yankton focused on a response from a separate and distinct party – Reliance Systems. Just as the R&R recommended against granting Yankton's motion to compel relating to Document Request No. 18 because Yankton failed to indicate it was in issue, the R&R erred in lumping Request No. 8 together with Request No. 9. Discovery disputes should be fairly and clearly framed and focused, not left to assumptions. *See* LR 37.1.

Finally, Yankton confuses Request No. 26 with Request No. 30. *See* Doc. 141 at 29. Request No. 30 indiscriminately sought production of "all leases, contracts and/or agreements … entered into with any other jail correctional facility, municipality, county, state, or other entity … from July 7, 2023 to the present." Doc. 96-33 at 6. Yankton does not address the R&R's statement that documents relevant to a failure to reasonably mitigate damages affirmative defense only are those that relate to *efforts*, not success. Doc. 124 at 12 ("True, the damages Reliance actually mitigated is not the test, it is the efforts that count."). Yankton states, "evidence relating to efforts to mitigate damages, whether unsuccessful or successful, are relevant to the affirmative defense…." Doc. 141 at 29. Plaintiffs do not disagree with that limited statement. That is why they long ago produced all documents relating to their efforts, whether successful or unsuccessful. Doc. 131 at 25. *See* Doc. 96-32; Doc. 96-33.

However, the R&R – and Yankton – go beyond applicable law. Document Request No. 30 indiscriminately requests all contracts entered into by Plaintiffs after July 7, 2023 to the present.[7] But actual contracts entered into, as stated in the R&R and now agreed by Yankton, are not relevant to any alleged failure to reasonably mitigate damages affirmative defense. Only the *efforts* count,

---

[7] Such actual contracts may have nothing to do with any mitigation efforts, as they may be simply periodic renewals of previously-existing contracts.

and Plaintiffs produced such documents long ago. The R&R's recommendation that Plaintiffs be compelled to produced documents responsive to Request No. 30 thus was clearly erroneous and contrary to law and should not be adopted.

## CONCLUSION

For the foregoing reasons, as well as the reasons stated in their original Objections to Report and Recommendation (Doc. 131), Plaintiffs Reliance Telephone of Grand Forks Incorporated and Reliance Systems Inc. respectfully request that the Court reject the Report and Recommendation (Doc. 124).

Dated: September 19, 2025.

Patrick L. Sealey AT0007085
HEIDMAN LAW FIRM, P.L.L.C.
1128 Historic Fourth Street
P.O. Box 3086
Sioux City, IA 51102
Tel: (712) 255-8838
Fax: (712) 258-6714
Email: Patrick.Sealey@heidmanlaw.com

and

Alan M. Anderson (MN Bar #149500)
(admitted *pro hac vice*)
L. Reagan Florence (MN Bar #0396468)
(admitted *pro hac vice*)
ALAN ANDERSON LAW FIRM LLC
11100 Wayzata Blvd., Suite 545
Minneapolis, MN 55305
Tel: 612-756-7010
Fax: 612-756-7050
Email: aanderson@anderson-lawfirm.com
         rflorence@anderson-lawfirm.com

*Attorneys for Plaintiff Reliance Telephone of Grand Forks Incorporated and Reliance Systems Inc.*