IN THE UNITED STATES DISTRICT COURT
FOR SOUTH DAKOTA

| | |
|---|---|
| RELIANCE TELEPHONE OF GRAND FORKS INCORPORATED, a North Dakota corporation, <br><br> and <br><br> RELIANCE SYSTEMS INC., a Nevada corporation, <br><br> Plaintiffs, <br><br> v. <br><br> YANKTON COUNTY, SOUTH DAKOTA, <br><br> and <br><br> NETWORK COMMUNICATIONS INTERNATIONAL CORP., a Texas corporation, <br><br> Defendants. | Civil No. 4:24-cv-04098-ECS <br><br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSTION TO DEFENDANT YANKTON COUNTY, SOUTH DAKOTA'S MOTION TO STRIKE PORTIONS OF THE DECLARATION OF DAVE HANGSLEBEN** |

This Memorandum is submitted on behalf of Plaintiffs Reliance Telephone of Grand Forks Incorporated ("Reliance Telephone") and Reliance Systems Inc. ("Reliance Systems") (collectively, "Plaintiffs") in Opposition to Defendant Yankton County, South Dakota's ("Yankton") Motion to Strike Portions of the Declaration of Dave Hangsleben. *See* Doc. 147. The essential contextual and foundational statements provide the bases for Mr. Hangsleben's statements and makes them admissible under Fed. R. Civ. P. 56(c)(4) and Fed. R. Evid. 701. These statements, which are based on his personal knowledge, provide the necessary foundation for the sentences in Mr. Hangsleben's declaration to which Yankton objects. Yankton's motion should be denied in its entirety.

## STATEMENT OF FACTS

Yankton moves to strike only certain sentences of the Declaration of Dave Hangsleben, dated September 3, 2025. Doc. 137. *See* Doc, 148 at 2. Mr. Hangsleben's declaration was filed in support of the Plaintiffs' opposition to Yankton's motion for summary judgment. *See generally* Docs. 133-139. The <u>limited</u> portions – only eight (8) sentences – of Mr. Hangsleben's declaration that Yankton specifically moves to strike are *italicized* below. Plaintiffs also provide the surrounding context and foundational statements for the portions that Yankton moves to strike.

      1.     I am the president of each of Plaintiffs Reliance Telephone of Grand Forks Incorporated ("Reliance Telephone") and Reliance Systems Inc. ("Reliance Systems") and am familiar with the business operations of each of them. This declaration is based on personal knowledge unless otherwise indicated.

      ...

      3.     Reliance Telephone first installed a telephone system for inmates at the Yankton County Jail in 2010. In return for providing these services, Reliance Telephone paid Defendant Yankton County, South Dakota ("Yankton"), a percentage of the revenues Reliance Telephone received from inmates. There was no minimum or guaranteed amount to be paid by Reliance Telephone to Yankton for these services. These services were provided to Yankton pursuant to an oral agreement with the then-sheriff of Yankton. Reliance Telephone did not "lease" or rent any property or space or any identifiable area from Yankton or the Yankton County Jail pursuant to the 2010 oral agreement. This oral agreement continued until August 2020, when it was replaced by a written contract.

      4.     At no time during the approximately ten (10) years from the 2010 oral agreement with Yankton until Reliance Telephone signed a written contract with Yankton in 2020, did any sheriff, representative, or other person associated with Yankton, the Yankton County Commission or any other employee of Yankton ever tell or suggest to me that the sheriff was not authorized to enter into the 2010 oral agreement, or that any public hearing, public notice, resolution or authorization of any kind was necessary by Yankton or the Yankton County Commission with regard to the 2010 oral contract.

      5.     During the existence of the 2010 oral agreement, Reliance Telephone paid commissions to Yankton on a monthly basis to the extent it had revenues from the services provided. *I believe Yankton and the Yankton County Commission and its members knew that it was receiving payments from Reliance Telephone during the existence of the 2010 oral agreement.*

6. *If I had had any belief or understanding that any prior authorization, public notice, public hearing or resolution was necessary from the Yankton County Commission or any other person, Reliance Telephone would not have continued to provide services and payments to Yankton.* It also would not have continued to invest money in the provision of its services to Yankton.

7. Reliance Systems signed a contract with Yankton dated August 1, 2016 ("2016 Systems Contract"). I titled the 2016 Systems Contract, "Inmate Text and Video Call Location Agreement." Although I used the terms "Lessor" and "Lessee" in the text of the 2016 Systems Contract, I did not believe or understand that Yankton actually was a "lessor" as a legal designation. I did not believe or understand that Reliance Systems actually was a "lessee" as a legal designation. I had no knowledge or understanding of the legal meaning or definition of those terms.

8. I understood and intended the 2016 Systems Contract was an agreement by which Reliance Systems would provide services to Yankton, specifically installation and operation of text message and video call services for inmates at the Yankton County Jail for a five-year term. In return for the exclusive right to do so for five years, Reliance Systems agreed to pay to Yankton a 25% cost recovery fee calculated from the gross revenues Reliance Systems received from the operation of its text messaging and video calling services.

9. Reliance Systems never "leased" or rented any property or space or any identifiable area from Yankton or the Yankton County Jail pursuant to the 2016 Systems Contract. The 2016 Systems Contract was an agreement pursuant to which Reliance Systems provided services and paid a percentage of its revenues received from those services to Yankton. Reliance Systems never paid any "rent" to Yankton for any part of any property owned or operated by Yankton.

10. The 2016 Systems Contract contains no minimum or guaranteed amount of cost recovery fees or payments of any type that Reliance Systems would make to Yankton. There was no fixed amount that Reliance Systems agreed to pay to Yankton. Under the 2016 Systems Contract, Reliance Systems might not pay any amounts to Yankton for any particular month or year during the term of the agreement.

11. The 2016 Systems Contract was the first written contract between Reliance Systems and Yankton. The contract required the installation and operation of new technology that I had developed and patented. Its success or usefulness was uncertain.

12. During the existence of the 2016 Systems Contract, Reliance Systems paid commissions to Yankton on a monthly basis to the extent it had revenues from the services provided. *I believe Yankton and the Yankton County Commission and its members knew that it was receiving payments from Reliance Systems during the existence of the 2016 Systems Contract.*

3

13. At no time during the 2016 Systems Contract with Yankton, did any sheriff, representative, or other person associated with Yankton, the Yankton County Commission or any other employee of Yankton ever tell or suggest to me that the sheriff was not authorized to enter into the 2016 Systems Contract, or that any public hearing, public notice, resolution or authorization of any kind was necessary by Yankton or the Yankton County Commission with regard to the 2016 Systems Contract.

14. *If I had had any belief or understanding that any prior authorization, public notice, public hearing or resolution was necessary from the Yankton County Commission or any other person with respect to the 2016 Systems Contract, Reliance Systems would not have continued to provide services and payments to Yankton.* It also would not have continued to invest money in the provision of its services to Yankton.

...

18. Reliance Telephone never "leased" or rented any property or space or any identifiable area from Yankton or the Yankton County Jail pursuant to the 2020 Telephone Contract. The 2020 Telephone Contract was an agreement pursuant to which Reliance Telephone provided services and paid a percentage of its revenues received from those services to Yankton. Reliance Telephone never paid any "rent" to Yankton for any part of any property owned or operated by Yankton.

19. The 2020 Telephone Contract contains no minimum or guaranteed amount of percentage payments or payments of any type that Reliance Telephone would make to Yankton. There was no fixed amount that Reliance Telephone agreed to pay to Yankton. Under the 2020 Telephone Contract, Reliance Telephone might not pay any amounts to Yankton for any particular month or year during the term of the agreement.

20. During the existence of the 2020 Telephone Contract, Reliance Telephone paid commissions to Yankton on a monthly basis to the extent it had revenues from the services provided. *I believe Yankton and the Yankton County Commission and its members knew that it was receiving payments from Reliance Telephone during the existence of the 2020 Telephone Contract.*

21. At no time during the 2020 Telephone Contract with Yankton, did any sheriff, representative, or other person associated with Yankton, the Yankton County Commission or any other employee of Yankton ever tell or suggest to me that the sheriff was not authorized to enter into the 2020 Telephone Contract, or that any public hearing, public notice, resolution or authorization of any kind was necessary by Yankton or the Yankton County Commission with regard to the 2020 Telephone Contract.

22. *If I had had any belief or understanding that any prior authorization, public notice, public hearing or resolution was necessary from the*

4

*Yankton County Commission or any other person with respect to the 2020 Telephone Contract, Reliance Telephone would not have continued to provide services and payments to Yankton.* It also would not have continued to invest money in the provision of its services to Yankton.

...

25. I understood and intended the 2020 System Contract was an agreement by which Reliance Systems would provide services to Yankton, specifically installation and operation of text message and video call devices to provide text message and video call services for inmates at the Yankton County Jail for a five-year term. In return for the exclusive right to do so for five years, Reliance Systems agreed to pay to Yankton a cost recovery fee based on a certain percentage of gross revenues Reliance Systems received from the operation of its text messaging and video calling services.

26. Reliance Systems never "leased" or rented any property or space or any identifiable area from Yankton or the Yankton County Jail pursuant to the 2020 Systems Contract. The 2020 Systems Contract was an agreement pursuant to which Reliance Systems provided services and paid a percentage of its revenues received from those services to Yankton. Reliance Systems never paid any "rent" to Yankton for any part of any property owned or operated by Yankton.

27. The 2020 Systems Contract contains no minimum or guaranteed amount of cost recovery fees or payments of any type that Reliance Systems would make to Yankton. There was no fixed amount that Reliance Systems agreed to pay to Yankton. Under the 2020 Systems Contract, Reliance Systems might not pay any amounts to Yankton for any particular month or year during the term of the agreement.

28. During the existence of the 2020 Systems Contract, Reliance Systems paid commissions to Yankton on a monthly basis to the extent it had revenues from the services provided. *I believe Yankton and the Yankton County Commission and its members knew that it was receiving payments from Reliance Systems during the existence of the 2020 Systems Contract.*

29. At no time during the 2020 Systems Contract with Yankton, did any sheriff, representative, or other person associated with Yankton, the Yankton County Commission or any other employee of Yankton ever tell or suggest to me that the sheriff was not authorized to enter into the 2020 Systems Contract, or that any public hearing, public notice, resolution or authorization of any kind was necessary by Yankton or the Yankton County Commission with regard to the 2020 Systems Contract.

30. *If I had had any belief or understanding that any prior authorization, public notice, public hearing or resolution was necessary from the Yankton County Commission or any other person with respect to the 2020 Systems*

5

> *Contract, Reliance Systems would not have continued to provide services and payments to Yankton.* It also would not have continued to invest money in the provision of its services to Yankton.

Doc. 137, ¶s 1, 3-14, 18-22, 25-30. Yankton moves to strike only eight (8) sentences from the 33 paragraphs in Mr. Hangsleben's declaration

## ARGUMENT

I. **The Statements in Mr. Hangsleben's Declaration are Admissible Under Fed. R. Civ. P. 56(c)(4) and Fed. R. Evid. 701.**

A declaration filed in opposition to a motion for summary judgment must be based on personal knowledge, state admissible facts, and show that the declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). Declarations "must include enough factual support to show that the affiant possesses that knowledge." *El Deeb v. University of Minnesota*, 60 F.3d 423, 428 (8th Cir. 1995). A witness may provide testimony in the form of an opinion if it is rationally based on their perception; helpful in understanding the witness's testimony or to determining a fact in issue; and not based on scientific, technical or specialized knowledge. Fed. R. Evid. 701. Lay opinion testimony is admissible if it is based on the witness's personal knowledge or perceptions based on industry experience. *See, e.g., Allied Sys. v. Teamsters Auto. Transp. Chauffeurs, Demonstrators & Helpers, Local 604*, 304 F.3d 785, 792 (8th Cir. 2002). *Accord Jain v. CVS Pharm., Inc.*, 779 F.3d 753, 758 (8th Cir. 2015).

As Yankton admits, the use of the word "believe" or a declarant's statement of "belief as to certain facts," when based on the witness's personal knowledge, is admissible. "[A] statement does not become inadmissible simply because the affiant uses the word feel or believe." *Weitlauf v. Parkway Sch. Dist.*, 2008 U.S. Dist. LEXIS 63703, at *11 (E.D. Mo. Aug. 20, 2008). *See* Doc. 148 at 4.

In its motion, Yankton fails to reference or acknowledge the foundational statements and personal knowledge contained in Mr. Hangsleben's declaration that establish the admissibility of the eight (8) sentences it now moves to strike. *See generally* Doc. 148. Rather, it considers the eight (8) sentences as if they were standing alone. That is an erroneous analysis. *See Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111-1112 (8th Cir. 2005) ("courts will infer personal knowledge from the content or context of a statement in an affidavit").

The eight (8) sentences Yankton moves to strike may be considered in two groups. The first group is Mr. Hangsleben's sentences in paragraphs 5, 12, 20 and 28 of his declaration. The second group is his sentences in paragraphs 6, 14, 22 and 30.

Preliminarily, Mr. Hangsleben declaration is based on his personal knowledge and on the fact that he is the president of each of the Plaintiffs and familiar with the business operations of each. Doc. 137, ¶1. Foundational to each of his sentences in paragraphs 5, 12, 20 and 28 is his personal knowledge of the facts that at no time between 2010 and 2020 did "any sheriff, representative, or other person associated with Yankton, the Yankton County Commission or any other employee of Yankton ever tell or suggest to me that the sheriff was not authorized to enter into [the contracts referenced], or that any public hearing, public notice, resolution or authorization of any kind was necessary by Yankton or the Yankton County Commission" with regard to any contract. *Id.*, ¶s 4, 13, 21, 29.

Further, the prefatory sentences immediately preceding the sentences Yankton moves to strike in paragraphs 5, 12, 20 and 28 each contain additional foundational statements based on Mr. Hangsleben's personal knowledge. Each of those preliminary sentences states that during the term of the referenced contracts, the Plaintiffs "paid commissions to Yankton on a monthly basis to the extent it had revenues from the services provided." *Id.*, ¶s 5, 12, 20, 28.

These omitted foundational facts and his knowledge gained as president of each Plaintiff establish that Mr. Hangsleben's conclusions, that "Yankton and the Yankton County Commission and its members knew that it was receiving payments" from each of the Plaintiffs during the existence of the referenced contracts, establish that his statements were rationally based on his personal knowledge or perceptions and industry experience.

Mr. Hangsleben's statements regarding Yankton and its Commission's knowledge of the contracts, gained from over ten years of personal knowledge and observations, are relevant to the Plaintiffs' opposition to Yankton's motion for summary judgment. As argued in the Plaintiffs' opposition, Yankton and its Commission were fully aware of the contracts in issue, accepted the benefits under those contracts, and therefore are estopped to now contend the 2020 contracts are void or may be rescinded. *See* Doc. 135 at 16-18. The statements therefore are admissible under Fed. R. Evid. 701.

The four (4) sentences in the first group thus are all admissible under Fed. R. Civ. P. 56(c)(4) and Fed. R. Evid. 701. They are all based on Mr. Hangsleben's personal knowledge and perceptions and knowledge of the Plaintiffs' business operations. *See, e.g., Allied Sys.*, 304 F.3d at 792 (affirming refusal to strike testimony based on personal knowledge gained from witness's work as a bookkeeper, document review and field audit); *Snider v. City of Cape Girardeau*, 2011 U.S. Dist. LEXIS 145397, at *3-4 (E.D. Mo. Dec. 19, 2011) (refusing to strike declarant's "beliefs" regarding the government, the flag, and its meaning). This Court should not strike any of the sentences in the first group. *See, e.g., Beito v. Westwood Place, Inc.*, 2014 U.S. Dist. LEXIS 92326, at *5-6, n.3 (D. Minn. July 8, 2014) (witness may provide opinion as to reliability of computer system based on first-hand knowledge of system); *Weitlauf*, 2008 U.S. Dist. LEXIS 63703, at *14

(affidavits containing witnesses mental state and personal opinions based on knowledge held admissible).

The second group of sentences is also clearly admissible. Again, Yankton fails to address or consider the foundational and contextual bases for the four (4) sentences in paragraphs 6, 14, 22 and 30 that it moves to strike. Mr. Hangsleben has personal knowledge of the failure of anyone to tell him – ever – that some "prior authorization, public notice, public hearing or resolution was necessary from the Yankton County Commission or any other person" with respect to any of the referenced contracts. *See* Doc. 137, ¶s 4, 13, 21, 29. His statements of fact – that if he had ever known of any such requirement, neither of the Plaintiffs would have continued to provide services and payments to Yankton – is a valid and admissible statement. As president of each of the Plaintiffs, and a person with knowledge of their business operations over decades, Mr. Hangsleben certainly has foundation and a basis to state what each of the Plaintiffs would have done – or not done – if Yankton's new-found position regarding the validity of the 2020 contracts had any basis in fact.[1] *See, e.g., Fjelstad v. State Farm Ins. Co.*, 845 F. Supp. 2d 981, 987, n.6 (D. Minn. 2012) (witness may proffer via affidavit "what *she* intended to do") (italics in original).

Again, these four sentences are relevant to the Plaintiffs' equitable estoppel response to Yankton's summary judgment motion. Paragraphs 6, 14, 22 and 30 establish the detriment caused by Yankton's conduct. *See* Doc. 135 at 18. Yankton cannot contend that no reasonable fact-finder could ever conclude that it is not estopped to deny the validity and existence of the two 2020 contracts based on the entirety of the evidence and giving the Plaintiffs the benefit of all reasonable

---

[1] Conspicuously, Yankton does not move to strike the last sentence in paragraphs 6, 14, 22 and 30, that each of the Plaintiffs "also would not have continued to invest money in the provision of its services to Yankton." *See* Doc. 148 at 1-5. This failure is telling. The last sentence of each of those paragraphs similarly is a statement of fact based on Hangsleben's personal knowledge and experience as president of each Plaintiff. Yankton admits this fact and the admissibility of those statements.

inferences, as this Court is required to do in ruling on Yankton's summary judgment motion. *See El Deeb*, 60 F.3d at 428 (district court erred granting summary judgment when it made credibility judgment or factual finding from conflicting evidence). Finally, motions to strike are usually granted only where the contested evidence causes prejudice to the moving party. *Snider*, 2011 U.S. Dist. LEXIS 145397, at *5. Yankton makes no such argument in its motion. *See generally* Doc. 148.

## CONCLUSION

For the foregoing reasons, Plaintiffs Reliance Telephone of Grand Forks Incorporated and Reliance Systems Inc. respectfully request that the Court deny Yankton's Motion to Strike Portions of the Declaration of Dave Hangsleben in its entirety.

Dated: October 8, 2025.

Patrick L. Sealey AT0007085
HEIDMAN LAW FIRM, P.L.L.C.
1128 Historic Fourth Street
P.O. Box 3086
Sioux City, IA 51102
Tel: (712) 255-8838
Fax: (712) 258-6714
Email: Patrick.Sealey@heidmanlaw.com

and

Alan M. Anderson (MN Bar #149500)
(admitted *pro hac vice*)
L. Reagan Florence (MN Bar #0396468)
(admitted *pro hac vice*)
ALAN ANDERSON LAW FIRM LLC
11100 Wayzata Blvd., Suite 545
Minneapolis, MN 55305
Tel: 612-756-7010
Fax: 612-756-7050
Email: aanderson@anderson-lawfirm.com
  rflorence@anderson-lawfirm.com

*Attorneys for Plaintiff Reliance Telephone of Grand Forks Incorporated and Reliance Systems Inc.*

11