UNITED STATES DISTRICT COURT
District of South Dakota
225 S Pierre St., Room 413
Pierre, South Dakota 57501

ERIC C. SCHULTE  
District Judge

Phone 605-945-4610  
eric_schulte@sdd.uscourts.gov

February 18, 2026

Claire E. Wilka  
Cadwell Sanford Deibert & Garry, LLP  
200 E 10th Street, Suite 200  
Sioux Falls, SD 57104

Melissa R. Jelen  
Cadwell Sanford Deibert & Garry, LLP  
200 E 10th Street, Suite 200  
Sioux Falls, SD 57104

Alan M. Anderson  
Alan Anderson Law Firm LLC  
11100 Wayzata Blvd., Suite 545  
Minneapolis, MN 55305

L. Reagan Florence  
Alan Anderson Law Firm LLC  
1100 Wayzata Blvd., Suite 545  
Minneapolis, MN 55305

Patrick L. Sealey  
Heidman Law Firm, P.L.L.C.  
1128 Historic 4th Street  
PO Box 3086  
Sioux City, IA 51102

Nicholas G. Moser  
Marlow, Woodward & Huff, Prof. LLC  
PO Box 667  
200 West Third Street  
Yankton, SD 57078

Dear Counsel,

    This case has given rise to various discovery disputes. Following a status conference, the Court invited counsel to directly contact the Court's chambers when any additional discovery disputes arose. The goal was to try and hash things out informally so the burdensome process of filing discovery motions could be avoided. The Court held such an informal discovery conference with the parties' counsel on October 29, 2025. During this conference, the parties cited multiple legal authorities and gave multiple arguments on multiple issues. The Court then instructed the parties to write brief letters to the Court explaining their respective positions. The letters were not to include any attachments. Instead, the goal was to get to the point of the various discovery disputes so the Court could review what was necessary and let the parties know how it was inclined to rule on the discovery dispute. The Court appreciated receiving the parties' letters and has directed the clerk of courts to file them on ECF so they become part of the record.

The Court has now read the parties multiple letters (five in total, with the last arriving on November 19, 2025) along with the authorities cited therein. The Court now sets forth in writing its thoughts on the disputes at issue.

### Plaintiff's written discovery requests to NCIC; Interrogatory 19 and Request for Production 35

The Court believes the arguments made by NCIC are persuasive and will likely rule against Plaintiffs should they file a motion to compel. Interrogatory 19 seeks any NCIC communications to apparently anyone that "refers or relates" to Reliance's rates. Request for Production of Documents 35 (RFP 35) seeks any communications between NCIC and Davison County that "refers or relates" to its contract with Plaintiffs. In the Court's judgment, Interrogatory 19 is overbroad and not proportional to Plaintiffs' discovery needs. Further, the discovery sought by RFP 35 is not proportional to Plaintiffs' discovery needs in this case.

Notably, given the volume of communications at issue in this case, Plaintiffs and NCIC entered into an agreement on specific search terms to use in a computer search of data retained by NCIC to produce relevant information. It is the Court's understanding that pursuant to this agreement, NCIC conducted the agreed upon search and produced more than 11,000 pages of emails and other documents to Plaintiffs in discovery. The process of responding to this discovery apparently cost "tens of thousands of dollars" and produced substantial responsive documents. In the Court's view, this was a reasonable and proportional approach to conducting discovery in the spirit of Rule 26, but ordering additional discovery is not.

NCIC's counsel concedes that its representative, Mr. Scott Baniecke, met with clients and potential clients at a conference in Deadwood in 2023 to, as the Court understands it, solicit additional business. These discussions have been disclosed and have been presumably addressed during depositions. NCIC also concedes that it possibly mailed Davison County a draft termination letter urging it to break its lease with Reliance, even though no such letter was unearthed in the computer search. See FN 1, November 12, 2025, letter from NCIC counsel to the Court. These concessions support the Court's view that another costly round of discovery searching data is not needed in connection with Interrogatory 19 and RFP 35. The discovery to date has been proportional, balancing both the Plaintiff's legitimate discovery needs and this Court's need to protect parties from limitless discovery requests. Accordingly, based on what has been presented to date, the Court will not order NCIC to do anything further in responding to Interrogatory 19 and RFP 35. The Court saves for another day any comment on whether the communications at issue constitute "commercial advertisements" under the Lanham Act.

### Plaintiff's written discovery requests to Yankton County; Request for Production of Documents 34, Interrogatory 21, and Interrogatory 24

After reviewing the parties' submissions and cited authorities, the Court believes the arguments of Yankton County are largely persuasive, but not entirely so. The Court believes

modifications must be made to Yankton County's answers to Interrogatory 21, which will be explained below. In general, the Court now has a better understanding of the work performed by Yankton County in responding to Plaintiffs' discovery requests. The Court believes the work performed by Yankton County is substantial and largely complies with its discovery obligations under Rule 26.

### Request for Production 34

To paraphrase, Request for Production 34 (RFP 34) asks Yankton County to produce all documents related to Reliance from January 1, 2010 to the present that were provided by the Yankton County auditor or auditor's office to the Yankton County Commission or any member thereof. Plaintiffs subsequently narrowed the requested range to 2018 to the present. Yankton County noted in a response that any such documents would take the form of a final agenda and an electronic package of information with respect to each agenda item sent prior to each County Commission meeting. On September 29, 2025, Yankton County responded with multiple objections but advised that "all County Commission meetings, all agendas and agenda packets, and all meeting minutes are publicly and electronically available." Yankton County further advised where the documents could be found online. The Court understands, however, that commission agenda packets were not put online until August, 2022.

During the October 29, 2025, informal phone conference with counsel, the Court expressed reservations about Yankton County simply saying these materials were publicly available. But since then, the Court was advised in Yankton County's November 12, 2025, letter that a detailed process was undertaken by Yankton County to supplement its answer and produce certain documents and address at least some of Plaintiffs' concerns. This process is described as follows:

> The Yankton County Auditor's Office thereafter located individual electronic links to every County Commission meeting agenda packet from January 2020 through August 2022, which required an employee to access its County Administration page, locate all individual uploads, and find the links that correlated to each Commission meeting. The Commission meets at least twice per month. Yankton downloaded the agenda packets from each link for 2020-2021, then combined all meeting minutes and agenda packets by year, utilized the Adobe OCR tool to make the PDFs searchable, and keyword searched every PDF for "Reliance." Yankton has supplemented to produce every responsive document. There were no responsive meeting minutes and agendas from 2018 to present, and all responsive agenda packets from 2020 to present have now been produced.
>
> There were 4,427 pages in the Commission meeting agenda packets for 2020 alone.

November 12, 2025, letter from Yankton County counsel to the Court.

The Court believes these efforts comply with Yankton County's discovery obligations, and that this approach is proportional to Plaintiffs' legitimate discovery needs. This is not simply a document dump or a simple reference by Yankton County stating "these documents are publicly available." Yankton County has undertaken substantial efforts to respond to Plaintiffs' discovery requests. Moreover, based on Yankton County's discovery response, County Commission meeting minutes and agendas from 2018 forward have been available to Plaintiffs to review since at least September 29, 2025, when Yankton County identified them as being publicly available. Yankton County went a step further, however, and searched the meeting minutes and agendas for the term "Reliance" and "no responsive meeting minutes and agendas from 2018 to present, and all responsive agenda packets from 2020 to present have now been produced." See November 12, 2025, letter from counsel.

Further, because the 2020 Reliance Lease Agreements at issue in this case were executed in 2020, and because they superseded all prior agreements, the Court believes it is likely not proportional to Plaintiffs' legitimate discovery needs to order Yankton County to produce additional agenda packets from 2018 to 2020. The Court's conclusion on this issue is buttressed by Yankton County conducting the computer search noted above of meeting minutes and agendas from 2018 to the present using the word "Reliance" and finding "no responsive meeting minutes and agendas from 2018 to the present..." See November 12, 2025, letter from counsel. The Court believes these efforts are sufficient.

**Interrogatory 21**

To paraphrase, Interrogatory 21 asks Yankton County to identify each and every meeting or session of the Yankton County Commission since January 1, 2018, to the present when anyone from Yankton County Jail said anything about Plaintiffs at a meeting or session of the Yankton County Commission. In response, Yankton County objected to the discovery request being overbroad, vague, unduly burdensome, and not proportional to Plaintiff's legitimate discovery needs. Without waiving these objections, Yankton County answered by referring Plaintiffs to the publicly available video recordings of commission meetings since 2018, and the publicly available minutes and agenda packets. Yankton County further states each County Commission meeting is more than 3 hours long and the meetings take place 2 times per month. Thus, according to Yankton County, it would take 540 hours for Sheriff Crissey to watch all County Commission meetings from 2018 to the present to determine if anyone ever said anything about Reliance and provide a complete answer.

After giving this careful consideration, the Court is not going to effectively order Sheriff Crissey or another representative of Yankton County to watch all 540 hours of video from 2018 to the present to deduce if anyone from Yankton County ever said anything about Plaintiffs. The Court is sympathetic with Yankton County's argument on this issue. If the videos truly are 540 hours in length, this would mean a person watching videos for 8 hours a day would need to

spend nearly 70 days watching them to determine if any mention was made of Plaintiffs. The Court believes this is excessive.

Regardless, the Court does not think the current answer to Interrogatory 21, as stated in the September 29, 2025, response given to the Court, can stand. Yankton County's answer at present refers Plaintiffs to the publicly available agendas, agenda packets, and video recordings of public meetings. This is fine, but Yankton County must also identify in its answer any statements made during commission meetings by representatives of the Yankton County Jail about Plaintiffs of which it is aware to the best of its knowledge. For example, Plaintiffs' November 19, 2025, letter to the Court advises there has been deposition testimony from former Sheriff Vlahakis about statements he made to the Yankton County Commission about Plaintiffs. Accordingly, Yankton County, and all of the parties in this case, are aware of some comments made to the Yankton County Commission by Yankton County Jail representatives about Plaintiffs. The Court believes Yankton County must supplement its answer to Interrogatory 21 to identify any statements made by Yankton County Jail representatives to the Commission (1) of which it is aware and (2) to the best of its knowledge.

### Interrogatory 24

To paraphrase, Interrogatory 24 requests Yankton County state whether a public notice was issued and a public hearing was held prior to every lease agreement being entered into by the county or jail from 2018 to the present. This interrogatory seeks information that goes beyond the interactions of the parties in this case, and by its terms seeks discovery of Yankton County's conduct on other contracts with other parties since 2018.

Plaintiffs seek this evidence to demonstrate Yankton County should be estopped from allegedly illegally breaking its agreements with Plaintiffs in this case. Yankton County responds and says such evidence is not probative, because its prior practices on other contracts cannot be considered for estoppel purposes pursuant to McLaen v. White Township, 974 N.W.2d 714, 725-26 (S.D. 2022). Yankton County also contends the Eighth Circuit's reference to prior historical practices by a county was merely dicta in County of Harding v. Frithiof, 483 F.3d 541, 549-51 n.7 (8th Cir. 2007). Yankton County also objects to the request being overbroad.

In McLaen, the South Dakota Supreme Court made it clear that it applies "estoppel against public entities [only] in exceptional circumstances to prevent manifest injustice." McLaen, 714 N.W.2d at 726 (citation omitted). Further, the South Dakota Supreme Court made it clear the focus of any estoppel analysis should be on the conduct of the parties at issue in the pending case, and the effect of the conduct on the party seeking to estop the public entity:

> In cases involving municipalities, we have held that in order for estoppel to apply, more than municipal acquiescence should be required; a municipal officer must have taken some affirmative action influencing another which renders it inequitable for the municipality to assert a different set of facts. In addition, the conduct must

have induced the other party to alter his position or do that which he would not otherwise have done to his prejudice.

Id. (internal citations and quotations omitted). Using this framework, the South Dakota Supreme Court ruled that "because the undisputed facts do not support the McLeans had a reasonable basis to believe they had signed approval from the Township, their estoppel claim is without merit." Id.

This Court notes that when analyzing whether a public entity should be estopped, the South Dakota Supreme Court also focused exclusively on the interactions between the parties in Even v. City of Parker, 597 N.W.2d 670 (S.D. 1999) (holding that a municipality was equitably estopped from revoking a previously approved building permit to a resident when the resident had expended considerable money in reliance on the initially approved permit).

Here, the Court believes the evidence sought by Interrogatory 24 is not probative as it will not uncover relevant information necessary to decide whether estoppel should be invoked against Yankton County in this case. Likewise, the Court believes the discovery request, although modified, is overbroad and unduly burdensome. Therefore, based on the record before it, the Court will not order the supplementation of Yankton County's response to Interrogatory 24.

The Court hereby directs the clerk to file this letter along with the five letters sent by counsel to the Court addressing the multiple discovery issues addressed herein.

Sincerely,

Eric C. Schulte
U.S. District Court Judge