# EXHIBIT A

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR SOUTH DAKOTA


RELIANCE TELEPHONE OF GRAND
FORKS INCORPORATED,
a North Dakota corporation,

and

RELIANCE SYSTEMS, INC.,
a Nevada corporation,

    Plaintiffs

vs.                              Civil No. 4:24-CV-04098-ECS

YANKTON COUNTY, SOUTH DAKOTA,

and

NETWORK COMMUNICATIONS
INTERNATIONAL CORP.,

    Defendants
   *   *   *   *   *   *   *   *   *
ZOOM DEPOSITION OF LEE G. PETRO

DEFENDANT EXPERT WITNESS

Wednesday, March 18, 2026




Reported by: Laurie Baker

*   *   *
Magna Legal Services
866-624-6221



Page 38

those are all documents that I reviewed, you know, numerous times in this proceeding, since I've been involved in it for a long time.

With respect to the Reliance Telephone of Grand Forks responses, what made me look at those or why did I look at those, because the central question that has been presented to me was whether Reliance Telephone of Grand Forks was -- had provided information to the public that they were charging rates greater than $0.21 per minute.

So these reports referenced here were prepared by your client or your expert, or whatever you're going to call him, and were filed with the FCC that listed their rates that they were representing to the FCC as being accurate.

Q    Let me make sure I understand something. You said in your answer that the central question that you were presented with was whether Reliance Telephone had provided information to the public that it was charging greater than $0.21 per minute. Did I --

Page 39

A    Yes.

Q    And when you say that was the central question that you were presented with, is that -- was that provided to you by Mr. Moser?

A    I was asked to opine on that and provide an expert report on the question of whether the publicly available information, as I state at the beginning of my expert report under -- on page three at the top, I've been asked to provide my expert opinion on one issue. I have been asked to analyze and determine whether the alleged statements by certain NCIC -- statements regarding the practice of charging more than $0.21 per minute accurately reflected the FCC's rules.

So to determine whether or not the publicly available information that would be available to NCIC at the time of making the statements, it would seem relevant to me that I would look at the reports that were filed with the FCC to determine what was -- what was reported by your expert client prior to those statements being

Page 40

made.

Q    What was your understanding of what the alleged, quote, statements by NCIC employees were?

A    What was my understanding?

Q    Yes. Or do you have an understanding? If you don't have an understanding, you can say that.

A    Well, I mean, my understanding of this case is that Reliance is arguing that NCIC's statement -- or employees of NCIC made statements that Reliance was charging more than what was permitted under the FCC's rules.

Q    Did you make any determination or reach any conclusion as to whether or not Reliance Telephone was, in fact, charging rates in excess of those permitted under FCC regulations?

A    I have no basis for determining that. I have not analyzed the detailed caller reports or confidential information that Reliance would have to either substantiate or to be undermined by whether they were charging more than $0.21 per minute.

I have looked at, as shown in my

Page 41

appendix, the screenshot from roughly the same time the statements were allegedly made, and in my mind, there is a reasonable basis for being confused as to what rate Reliance was being charged -- or was charging.

Q    I'm sorry. I didn't mean to interrupt. Are you finished?

A    That's okay.

Q    I'm going to stop sharing this, your report, for a minute. I want to show you a couple of other items, if I can. I'm showing you a document that has been marked previously in this matter, Deposition Exhibit 38. It is a draft letter dated July 17th of 2023. And I can scroll down slowly so you have a chance to read it, sir. If you want me to do that, I'll do it. Then my question for you is simply, have you seen this document previously?

A    Is this one of the documents that was referenced in your expert client's report?

Q    I don't know. I'm not certain that it is.


MAGNA
LEGAL SERVICES

Page 42

My question is whether you've seen Exhibit 38, which for the record has Bates numbers NCIC 005848 to 5849. And I'll scroll down slowly.

A   I don't believe I've seen this version, no.

Q   Okay. Fair enough. I am now going to show you a document that's been marked previously in this matter as Deposition Exhibit 44.

This, as I said, has been marked previously as Deposition Exhibit 44 for the record. It has Bates numbers 2025 Reliance-PLTFS-000563 to 564. I'll scroll down slowly, sir, and ask if you recall having seen this document prior to the preparation of your expert report?

A   No. No, I haven't.

Q   I'm now going to show you another document marked previously in this matter as Deposition Exhibit 39. This has production numbers YC 002276 to 77. Again, I'll scroll down slowly and ask whether you recall having seen this document prior to the production of your expert report, sir.

Page 43

A   No. No.

Q   I'm sorry?

A   I don't believe so, no.

Q   I am now sharing what's been marked previously as Exhibit Number 45. This is a response from Reliance Telephone to Yankton County dated July 30th, 2023. It has production numbers, which I can't read because of the plaque at the bottom. But it does have production numbers, but it's been marked as an exhibit.

Again, sir, do you recall having seen this document prior to the preparation of your expert report in this matter?

A   No, sir.

Q   Okay. Last one. Showing you what's been marked previously as Exhibit 47. This is a letter dated August 8th, 2023. It has production numbers NCIC 007406 to 78. Do you recall having seen this letter prior to the preparation of your expert report?

A   No.

Page 44

Q   Are you aware, sir -- were you aware prior to the preparation of your expert report that representatives of NCIC drafted the termination letters that Yankton sent to Reliance?

A   I don't believe so.

Q   I'm sorry?

A   I don't believe so.

Q   By the way, you are aware that there are two plaintiffs in this matter, Reliance Telephone of Grand Forks and Reliance Systems, correct?

A   Yes.

Q   Do you have any understanding as to whether Reliance Systems is subject to any FCC regulations?

A   I don't know what services they are currently providing.

Q   Do you know what services they were providing in 2023?

A   My understanding is that Systems was providing the pure texting capability, and texting is what was not regulated at that point in time. I

Page 45

also -- I'm sorry?

Q   No, apologies for interrupting.

A   So, I mean, I understand there -- based on the description that I had attached as Appendix II to my statement, there is this inmate wallet texting service that I assume is the Systems-provided service. And then there's the phone card and prepaid calling that's listed below that's provided by Reliance Telephone.

The confusion, at least in my mind and probably to the public would be that the inmate wallet texting category also includes phone calls.

So it's not clear to me or still not clear to me as to whether Reliance Systems is providing phone calls or not. That's why I was saying I don't believe so.

Q   So am I -- do you understand that in 2023 Reliance Systems was not subject to FCC regulations?

A   I do not understand that because I don't know what services they were offering. Based on this, it would seem like they were providing phone

**MAGNA**
LEGAL SERVICES

Page 46

calls, and if they were providing phone call service, then they would have been subject to FCC jurisdiction.

Q   So it would fair to say that prior to the preparation of your expert report, any opinions in this matter, you did not know with certainty what services Reliance Systems were providing, at least as of 2023, versus Reliance Telephone of Grand Forks?

A   I think that's probably fair, yeah.

Q   And as you sit here today, do you have any understanding of what services Reliance Telephone is providing versus Reliance Systems?

A   No.  Because the current version of the website makes it even more confusing.

Q   So you just don't know?

A   Correct.  Not with certainty, no.

Q   I'm going to go back to your expert report.  Do you see this, sir, on the screen?

A   Yes, sir.

Q   I'm going to scroll down to Appendix II.

Page 47

Okay.  There we are.  This is a -- what is Appendix II, sir?

A   It's an excerpt from your -- from your client or your expert's website around July 2023 that provides a description of the various services being offered by Reliance Telephone as shown in the header.

Q   And where did you obtain this page?  Or how?

A   So we were preparing a filing with the FCC that was submitted as the FCC was considering revisions to its rule-making for adopting caps on rates, and we had provided snapshots of several different phone companies that were providing inmate services and the rates that they were currently being provided.  So I obtained this from Craig Storer.

Q   Did you have some communication with Mr. Storer to obtain this?

A   Yeah.

Q   When was that?

Page 48

A   Roughly around that time, because we were attaching -- you know, as I said, we were attaching examples of what the rates were that were made available to the public to attach to a filing with the FCC.

Q   Okay.  When you say we were preparing a filing to the FCC, do you mean your firm, which at that time I think would have been Pillsbury?

A   Right.  I was drafting a filing with the FCC -- or to be filed with the FCC that I work to get data from Craig, and this was one of the examples that we attached to an exhibit.

Q   The filing was on behalf of NCIC?

A   That's correct.

Q   And you were advocating a position before the FCC on behalf of NCIC, is that correct, sir?

A   Well, yeah.

Q   And the filing that you made on behalf of NCIC at that time, is it listed in your Appendix I of documents that you reviewed?

A   Let me see.  No, it's not.

Page 49

Q   Do you recall, as you sit here today, what the date or heading is of that filing that you made on behalf of NCIC?

A   No.  I don't recall the specific date, no.

Q   But it was sometime in 2023, is that correct, sir?

A   Yes, sir.

Q   Do you recall whether it's publicly available?

A   Oh, yeah.

Q   Do you know where Mr. Storer obtained this excerpt?

A   I think straight from your client's website.

Q   Well, I don't know --

A   I'm sorry.  Footnote 1 of my expert report provides the date and a link to it.  So you would have had a chance to review it.

Q   Okay.  There's the reply comments.  But my question is, do you know where Mr. -- or how Mr. Storer obtained it?

MAGNA
LEGAL SERVICES

Page 50

A    I think he just went to their website and took a snapshot of it.

Q    That's speculation on your part. Did Mr. Storer tell you this is how I got it, or are you speculating as to what you think he may have done?

A    I don't have an accurate description of the email message that he sent to me describing how he obtained the information. I went back and looked at the FCC's records what we filed of examples and referenced that in footnote 1.

Q    Do you see on Appendix II in the upper left-hand part of the page where it says Barnes County Jail, Valley City, North Dakota?

A    Yes.

Q    Do you know whether this page from -- allegedly from the Reliance Telephone website sometime in 2023 relates to Barnes County Jail, Valley City, North Dakota?

A    It would have been -- I mean, the way that you would obtain this data, because I've done this for 15 years to obtain data from other providers,

Page 51

you would have to provide facility information first, you know, what rates are being charged at a particular facility.

Q    My question is, do you know whether this page relates to Barnes County Jail, Valley City, North Dakota?

A    I said yes, and I explained why.

Q    You did not personally obtain this information for Barnes County Jail, Valley City, North Dakota, back in 2023, correct?

A    Correct.

Q    I'm going to show you just a couple of other exhibits just to see whether you've seen them or considered them in connection with the preparation of your expert report in this matter.

Showing you what has been marked previously in this matter as Exhibit 41. It has production numbers NCIC 011817 to 820. It is an email thread with various attachments.

My question, sir, is whether you recall having seen this document or this exhibit

Page 52

prior to the preparation of your expert report in this matter? And I'm scrolling through slowly. If you want me to start over, just let me know.

A    I did not review it, no.

Q    All right. All right. I'm now showing you a document that has been marked previously in this matter as Exhibit 101. It has production numbers NCIC 011285 to 297. It is an email thread with various attachments.

My question to you, again, sir, is whether you recall having seen this exhibit or document prior to the preparation of your expert report in this matter?

A    No, sir.

Q    Okay. Now, I'm going to show you what has been marked previously as Exhibit 115. It has production numbers NCIC 005329 to 5333. Again, it is an email thread with some attachments.

My question is, do you recall having seen this exhibit prior to the preparation of your expert report?

Page 53

A    No.

Q    So with regard to all of those previously marked exhibits that we've looked at here so far this morning, specifically Exhibit 38, 44, 39, 45, 41, 101, and 115, all of which you said you had not previously seen prior to the preparation of your expert report, it would be fair to say you did not consider any of the information in those documents in connection with the preparation of your opinions as set forth in your expert report?

A    That's correct.

Q    We've been going about an hour. Is this an all right time to take a break, Nick, Mr. Petro?

A    Sure.

        MR. MOSER: Sure.

        MR. ANDERSON: Shall we say 10 to 15 minutes, is that all right?

        (A recess was held.)

BY MR. ANDERSON:

Q    We're back on the record.

        Mr. Petro, during the break, did you

Page 66

determination as to whether or not Reliance was, in fact, charging rates in excess of those authorized by the FCC, correct?

A    I have not gone through and analyzed that because I didn't have access to the detailed reporting to USAC or the FCC as to what their interstate revenues were and how they were breaking out, correct. And also, I'm not a forensic accountant, so I think you would need one to determine that for sure.

Q    In the next paragraph on page three of your report, sir, you say that you may update your report to consider any additional information. Do you see that?

A    Yes.

Q    And as you sit here today, are you aware of any update to your report?

A    Am I aware of one? I didn't create one, no. I wasn't allowed to pursuant to the rules of the court, I guess.

Q    In the next section headed Discussion, you

Page 67

reference Mr. Hangsleben's report. Do you see that, sir?

A    I do.

Q    And just so we're clear, that is Mr. Hangsleben's expert report dated April 30th of 2026, correct?

A    I think I probably can find it at some point. Yeah, I guess it would have been filed on June 16th, first paragraph of the expert report references what I define as Hangsleben report.

Q    Let me -- I'm going to show you a document that is a pleading headed Expert Report of Dave Hangsleben. I will scroll down to the page, if I can. Do you see that it's dated April 30th and signed by Mr. Hangsleben April 30th of 2025?

A    Yes, sir.

Q    And just for the record, so we keep it clear, I'm going to mark this as Exhibit 151.

(Petro Deposition Exhibit No. 151 was marked for identification.)

Page 68

BY MR. ANDERSON:

Q    And if we go back up to page eight, there is a section heading that says Opinion/Conclusion One. Neither Reliance Telephone nor Reliance Systems charged Yankton or its inmates in excess of the rates allowed under FCC regulations. Do you see that, sir?

A    That's the heading, right? Yes.

Q    And this section which continues on to page 12 where there's been an Opinion/Conclusion 2, is that the section that you believe you are responding to in your expert report, sir?

A    Yeah. I think I include references to the specific paragraphs in my report.

Q    You're not responding in any way to Mr. Hangsleben's Opinion/Conclusion 2 relating to lost profits?

A    No. I went to law school because I can't do math. That's outside my realm of expertise.

Q    I would say that's true for many lawyers.

A    We lost the report, if that was your

Page 69

intention.

Q    Yeah, I know. I was looking for something else. Going to share with you, this is a document headed Plaintiffs' Amended and Supplemental Answers to Defendant NCIC's First Set of Interrogatories Numbers 2 and 12.

Did you review -- or first off, have you ever seen this pleading, sir?

A    If I look at my list --

Q    It's not on your list. I'll tell you that.

A    Just looking at the heading, I don't believe I did, no. No, I have not.

Q    So it's fair to say you have not considered or reviewed Plaintiffs' Amended and Supplemental Answers to Defendant NCIC's First Set of Interrogatories Numbers 2 and 12, which are dated January 16th of 2026, correct?

A    No. Correct. I think that was after my expert report anyway.

Q    And then, again, just to confirm this, I'm

MAGNA
LEGAL SERVICES