# EXHIBIT O

**IN THE UNITED STATES DISTRICT COURT
FOR SOUTH DAKOTA**

|  |  |
|---|---|
| RELIANCE TELEPHONE OF GRAND FORKS INCORPORATED, a North Dakota corporation,<br><br>and<br><br>RELIANCE SYSTEMS INC., a Nevada corporation,<br><br>      Plaintiffs,<br><br>      v.<br><br>YANKTON COUNTY, SOUTH DAKOTA,<br><br>and<br><br>NETWORK COMMUNICATIONS INTERNATIONAL CORP., a Texas corporation,<br><br>      Defendants. | Civil No. 4:24-cv-04098-ECS<br><br>**PLAINTIFFS AMENDED AND SUPPLEMENTAL ANSWERS TO DEFENDANT NCIC'S FIRST SET OF INTERROGATORIES, NOS. 2, 5, AND 12** |

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiffs Reliance Telephone of Grand Forks Incorporated ("Reliance Telephone") and Reliance Systems Inc. ("Reliance Systems") (collectively "Plaintiffs"), through their attorneys, hereby serve their Amended and Supplemental Answers to Defendant Network Communications International Corp. ("the Defendant" or "NCIC") First Set of Interrogatories, Nos. 2, 5, and 12, and state as follows:

**GENERAL OBJECTIONS**

1.      These general objections form a part of the answer to each interrogatory. The absence of a reference to a general objection should not be construed as a waiver of the general objections to a specific interrogatory, or its subparts, if any.

2.      Plaintiffs object to all interrogatories to the extent they call for the disclosure of the mental impressions of Plaintiffs' legal counsel or for information protected by the attorney-client privilege, the attorney work product doctrine, legal privileges recognized by applicable law, or other applicable privileges.

3.      Plaintiffs object to all interrogatories to the extent they are overly broad, unduly burdensome, unreasonably cumulative or duplicative; seek information already known to the Defendant or that are obtainable from another source that is more convenient, less burdensome or less expensive; are vague or ambiguous; seek discovery not relevant to any party's claims or defenses; are not reasonably calculated to led to the discovery of admissible evidence; or where the burden or expense of the proposed discovery outweighs its likely benefit. In particular, and without waiver of any other bases, all interrogatories that are vague, ambiguous and overly broad where the appropriate time period is not clearly defined.

4.      Plaintiffs object to any and all instructions, definitions, and any requests in the instructions, or within the interrogatories, beyond those provided by the Federal Rules of Civil Procedure.

5.      Plaintiffs object to any and all interrogatories to the extent they seek personally identifiable, confidential or proprietary personal or business information, the use of which outside the context of this litigation may cause undue harm or competition or other commercial disadvantage to Plaintiffs. To the extent applicable, Plaintiffs will answer and identify responsive information regarding personally identifiable, confidential or proprietary information in accordance with the terms of any protective order or stipulations entered in this action.

2

6.      Plaintiffs' answers to these interrogatories reflect their knowledge as of the date of these answers. Plaintiffs expressly reserve the right to submit additional or supplemental objections and answers to these interrogatories, because discovery and investigation are on-going.

**SPECIFIC OBJECTIONS AND AMENDED AND SUPPLEMENTAL ANSWERS TO NCIC's FIRST SET OF INTERROGATORIES, NOS. 2, 5, and 12**

**INTERROGATORY NO. 2.** Do you contend that Yankton County or NCIC have made any statements or admissions against their interest? If so, then for each statement or admission, please state the following:

(a)      What Yankton County or NCIC wrote or said;

(b)      The name, address, and phone number of each person who read or heard it or was present at its dissemination;

(c)      When it was written or said, including the date and time;

(d)      Where it was written or said;

(e)      Identify what documents or materials exist concerning that alleged admission against interest.

**ANSWER:** Plaintiffs object to this interrogatory on the ground that it is vague and ambiguous in that "statements or admissions against their interest" is not defined. What the "interest" of each defendant is not defined. Plaintiffs object to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or other applicable privileges. Plaintiffs object to this interrogatory the extent that it calls for a legal conclusion (e.g., characterization of "any statements or admissions against their interest," and "statements or admissions"). Without waiver of these objections and their General Objections, and based on investigation and discovery to date and their understanding of what may be "statements or admissions against their interest," Plaintiffs state that they contend that Yankton County and/or NCIC have each made statements and/or admissions against their interest. Plaintiffs identify those statements or admissions as follows:

3

Yankton County: Yankton County as made at least the following "statements or admissions against its interests" as those words are understood by Plaintiffs:

    a) Yankton has admitted or made statements against interest that it did not conduct any investigation as to the accuracy of NCIC's statements regarding the legality or propriety of the rates charged by Plaintiffs to inmates; that it relied on the accuracy of such statements; that the first time it informed Plaintiffs of an intention to terminate either of the 2020 Contracts was its letter dated July 17, 2023; that neither of the 2020 Contracts contain any provision or terms permitting early termination; that it provided copies of the two 2020 Contracts to NCIC; and that Yankton's decision to terminate the 2020 Contracts was based at least in part, if not entirely on statements and representations made by NCIC about the rates and legality of Plaintiffs' charges. Documentation supporting these admissions and statements against interest are contained in at least, but not necessarily limited to: (i) Yankton's Responses to Plaintiffs' First Set of Requests for Admission, Nos. 5, 6, 7, 10, 11 and 12; (ii) deposition testimony of Todd Brandt, Preston Crissey, Rule 30(b)(6) deposition testimony of Yankton County, by Tonna Poppe and Preston Crissey; and (iii) Deposition Exs. 1, 2, 3, 28, 29, 30, 31, 32, 34, 36, 37, 38, 39, 40, 41, 4, 46, 48, 52, 61, 63, 68, 69, 70, 71, 75, 76, 77, 98, 101, 103, 105, 109, 111, 112, and 113.

The identification of individuals involved, dates, and other specifics regarding these admissions and statements against interest are apparent from the discovery responses, deposition testimony and exhibits identified above.

    (b) Yankton County has admitted or made statements against interest concerning the terms of the two 2020 Contracts and what either Plaintiff was required to provide

4

under those contracts. More specifically, testimony by various employees and representatives of Yankton County show that the various alleged "reasons" presented for termination were manufactured and pretextual in nature, not accurate and that they knew or understood that they would have to breach or get out or prematurely terminate the contracts. Documentation supporting these admissions or statements against interest include, but is not necessarily limited to: (i) deposition testimony of Todd Brandt, Preston Crissey, Rule 30(b)(6) deposition testimony of Yankton County, by Tonna Poppe and Preston Crissey; and (ii) Deposition Exs. 1, 2, 3, 28, 29, 30, 31, 32, 34, 36, 37, 38, 39, 40, 41, 4, 46, 48, 52, 61, 63, 68, 69, 70, 71, 75, 76, 77, 98, 101, 103, 105, 109, 111, 112, and 113.

The identification of individuals involved, dates, and other specifics regarding these admissions and statements against interest are apparent from the deposition testimony and exhibits identified above.

(c) Yankton County has admitted or made statements against interest concerning the disclosure to the Yankton County Commissioners of the existence of the two 2020 Contracts and the authority of the Yankton County sheriff to sign such contracts on its behalf. Documentation supporting these admissions and statements against interest are contained in at least, but not necessarily limited to: (i) deposition testimony of Preston Crissey and Rule 30(b)(6) deposition testimony of Yankton County by Preston Crissey and Lanee Schindler; and (ii) Deposition Exs. 72, 75, 76, and 77.

The identification of individuals involved, dates, and other specifics regarding these admissions and statements against interest are apparent from the deposition testimony and exhibits identified above.

(d) Yankton County has admitted or made statements against interest that the two 2016 and 2020 Contracts were entered into by Yankton County and signed by then Sheriff James Vlahakis on behalf of Yankton County. Documentation supporting these admissions and statements against interest are contained in at least, but not necessarily limited to: (i) deposition testimony of Preston Crissey; and (ii) Deposition Ex. 72.

The identification of individuals involved, dates, and other specifics regarding these admissions and statements against interest are apparent from the deposition testimony and exhibits identified above.

(e) Yankton County has admitted or made statements against interest that Plaintiffs never leased or paid "rent" to Yankton for any part of any property owned or operated by Yankton. Documentation supporting these admissions and statements against interest are contained in at least, but not necessarily limited to: (i) deposition testimony of Todd Brandt; and (ii) Deposition Ex. 28.

The identification of individuals involved, dates, and other specifics regarding these admissions and statements against interest are apparent from the deposition testimony and exhibits identified above.

(f) Yankton County has admitted or made statements against interest that the 2020 Telephone Contract does not provide for any minimum or guaranteed amount to be paid by Reliance Telephone to Yankton for the services provided. Documentation

6

supporting these admissions and statements against interest are contained in at least, but not necessarily limited to: (i) deposition testimony of Todd Brandt; and (ii) Deposition Ex. 28.

The identification of individuals involved, dates, and other specifics regarding these admissions and statements against interest are apparent from the deposition testimony and exhibits identified above.

(g) Yankton County has admitted or made statements against interest as set forth in paragraphs 26, 28, 36, 37, 39, 41 47, 49, 50, 51, 53, 56, 57, 58, 59. *See* Doc. 139.

The identification of individuals involved, dates, documents, and other specifics regarding these admissions and statements against interest are apparent from the deposition citations and exhibits identified in Doc. 139.

NCIC: NCIC has made at least the following "statements or admissions against its interests" as those words are understood by Plaintiffs:

(a) NCIC has admitted or made statements against interest that it knew and understood it was intentionally interfering with the two 2020 Contracts between Plaintiffs and Yankton. Documentation supporting these admissions and statements against interest are contained in at least, but not necessarily limited to: (i) deposition testimony of Craig Storer, Scott Baniecke, William Pope, and Rule 30(b)(6) deposition testimony of NCIC by William Pope; and (ii) Deposition Exs. 36, 114.

The identification of individuals involved, dates, and other specifics regarding these admissions and statements against interest are apparent from the deposition testimony and exhibits identified above.

7

(b) NCIC has admitted or made statements against interest that it did not make any effort to determine the truthfulness or accuracy of its assertions regarding the legality or propriety of the rates charged by Plaintiffs to inmates at Yankton County other than looking at partial information contained on certain website pages of Plaintiffs, and that information on those pages was compliant with applicable FCC regulations. Documentation supporting these admissions and statements against interest are contained in at least, but not necessarily limited to: (i) deposition testimony of Craig Storer, Scott Baniecke, William Pope, and Rule 30(b)(6) deposition testimony of NCIC by William Pope; (ii) Deposition Exs. 53 and 57; Defendant NCIC's Objections and Responses to Plaintiffs' First Set of Requests for Admissions, No. 3. The identification of individuals involved, dates, and other specifics regarding these admissions and statements against interest are apparent from the discovery responses, deposition testimony, and exhibits identified above.

(c) NCIC has admitted or made statements against interest that it knew Yankton County would have to breach its contracts with Plaintiffs; that it was aware of those contracts and their terms; that it desired and intended for Plaintiffs to terminate those contracts; and that it held animus and/or a desire to harm the Plaintiffs, their business and/or their owner by causing Yankton County to terminate those contracts. Documentation supporting these admissions and statements against interest are contained in at least, but not necessarily limited to: (i) deposition testimony of Craig Storer, Scott Baniecke, William Pope, and Rule 30(b)(6) deposition testimony of NCIC by William Pope; and (ii) Deposition Exs. 28, 29, 36, 40, 68, 70, 97, 98, 99, 100, 102, 104, 105, 107, 111, 112, 114, 116, 118, and 119.

8

The identification of individuals involved, dates, and other specifics regarding these admissions and statements against interest are apparent from the deposition testimony and exhibits identified above.

> (d) NCIC has admitted or made statements against interest that it provided language and draft termination letters to Yankton County to aid Yankton's efforts to terminate the two 2020 Contracts with Plaintiffs, and for responding to Plaintiffs' responses disagreeing with the statements in the termination letters. Documentation supporting these admissions and statements against interest are contained in at least, but not necessarily limited to: (i) deposition testimony of Craig Storer, Scott Baniecke, William Pope, and Rule 30(b)(6) deposition testimony of NCIC by William Pope; and (ii) Deposition Exs. 29, 30, 31, 34, 36, 38, 39, 40, 41, 44, 45, 46, 47, 48, 61, 68, 71, 101, 109, 111, 112, and 117.

The identification of individuals involved, dates, and other specifics regarding these admissions and statements against interest are apparent from the deposition testimony and exhibits identified above.

> (e) NCIC has admitted or made statements against interest that it knew that certain of the purported reasons stated by Yankton County for terminating the two 2020 Contracts were not supported by the terms of those contracts. Documentation supporting these admissions and statements against interest are contained in at least, but not necessarily limited to: (i) deposition testimony of William Pope, and Rule 30(b)(6) deposition testimony of NCIC by William Pope; and (ii) Deposition Ex. 115.

9

The identification of individuals involved, dates, and other specifics regarding these admissions and statements against interest are apparent from the deposition testimony and exhibits identified above.

**AMENDED AND SUPPLEMENTAL ANSWER**: Subject to, and without waiver of their previously-stated objections, Plaintiffs amend and supplement the foregoing Answer by additionally stating that both Yankton and NCIC have made admissions or statements against interest. These admissions or statements against interest have been made in writing, in deposition testimony, and in pleadings filed in this action. Identification of the individuals present when such admissions or statements against interest were made is obvious from the documentation showing such admissions or statements. Plaintiffs do not have address or telephone contact information regarding such admissions or statements against interest other than as may be evident from the supporting documentation. NCIC is believed to have address or other contact information readily available to it to the extent such information is not apparent or readily available from the referenced evidence.

The following Table 1 identifies admissions or statements against interest made by Yankton and/or its employees, the approximate date such admission or statement was made (except for deposition testimony, in which case the date is the date the deposition was taken), and identifies documentation supporting such admission or statement against interest, which also identifies the speaker and recipients. The following Table 1 should be reviewed in connection with Plaintiffs' prior interrogatory answer above. Admissions or statements against interest referenced in Plaintiffs' prior interrogatory answer but not referenced again in the following Table 1 does not mean Plaintiffs are waiving or otherwise not intending to rely on such admissions or statements against interest.

**Table 1**

**Admissions or Statements Against Interest by Yankton County**

| Admission or Statement Against Interest | Approximate Date Made | Supporting Deposition Testimony and/or Documentation |
|---|---|---|
| Neither of the 2020 contracts with Plaintiffs contain any provision or term permitting early termination | January 13, 2025<br><br>July 8, 2025<br><br>July 9, 2025<br><br>See also dates of referenced deposition exhibits | Yankton's Response to Plaintiffs' Request for Admission No. 10<br><br>Brandt Depo. 62:20-25; 68:25-69:8; 82:5-10; 92:21-93:25; 157:10-16; 166:5-8<br><br>Crissey Depo. 56:7-57:15; 62:7-16; 125:5-126:1; 126:12-15; 154:12-16<br><br>Depo. Exs. 28, 32, 45 |
| Yankton did not conduct any investigation itself as to the accuracy of NCIC's statements to it regarding the legality or propriety of the rates charged by Reliance Telephone; it relied on NCIC for the accuracy or truthfulness of such statements | January 13, 2025<br><br>July 8, 2025<br><br>July 9, 2025 | Yankton's Response to Plaintiff's Request for Admission Nos. 6, 7, 12<br><br>Brandt Depo. 133:6-135:5; 136:8-137:11; 168:3-12; 171:7-10; 187:19-188:3; 200:10-22<br><br>Crissey Depo. 83:10-4; 86:9-17 |
| All termination letters or replies to Plaintiffs or its counsel relating to the termination of the 2020 contracts were prepared or drafted initially by NCIC | July 8, 2025<br><br>July 9, 2025<br><br>See also dates of referenced deposition exhibits | Brandt Depo. 81:16-21; 82:14-15; 104:6-8; 106:16-18; 126:10-127:2; 168:21-169:8; 200:10-22; 204:25-205:2<br><br>Crissey Depo. 49:12-15<br><br>Depo. Exs. 30, 31, 34, 38, 39, 41, 44, 46, 47, 48, 53, 61, 68, 102, 111, 112, 113 |
| Yankton provided copies of the two 2020 contracts to NCIC | July 8, 2025<br><br>See also dates of referenced deposition exhibits | Brandt Depo. 78:24-79:10<br><br>Depo. Exs. 29, 36, 115 |

11

| Admission or Statement Against Interest | Approximate Date Made | Supporting Deposition Testimony and/or Documentation |
|---|---|---|
| Yankton's decision to terminate was based on statements made by NCIC relating to the legality of the rates charged by Reliance Telephone | January 13, 2025<br><br>July 9, 2025<br><br>July 10, 2025<br><br>See also dates of referenced deposition exhibits | Yankton's Response to Plaintiffs' Request for Admission Nos. 6, 7, 12<br><br>Crissey Depo. 87:4-7<br><br>Yankton (Poppe designee) Depo. 34:8-35:23<br><br>Depo. Exs. 41, 46, 47, 69, 105 |
| Yankton is not aware of any documents to support the third asserted point of dissatisfaction contained in its letter to Plaintiffs dated July 17, 2023 | July 10, 2025 | Yankton (Poppe designee) Depo. 35:21-36:5 |
| Yankton is not aware of specific documents to support the fourth asserted point of dissatisfaction contained in its letter to Plaintiffs dated July 17, 2023 | July 10, 2025 | Yankton (Poppe designee) Depo. 41:4-22; 42:5-43:18 |
| Yankton knew or understood it would have to breach its contracts with Plaintiffs by terminating them early | July 8, 2025<br><br>July 9, 2025<br><br>August 5, 2025<br><br>See also dates of referenced deposition exhibits | Brandt Depo. 68:25-69:8; 82:5-10; 92:21-93:25; 166:5-8<br><br>Crissey Depo. 56:7-57:15; 125:5-126:1; 126:12-15<br><br>Baniecke Depo. Vol. I 77:4-8<br><br>Depo. Exs. 32, 36 |
| Yankton first informed Plaintiffs of its intention to terminate the contracts early by letter dated July 17, 2023 | January 13, 2025 | Yankton's Response to Plaintiffs' Request for Admission Nos. 4, 5 |
| The 2020 contracts do not explicitly require Plaintiffs to provide iPad-sized devices to inmates | July 8, 2025<br><br>July 9, 2025<br><br>July 10, 2025<br><br>See also dates of referenced deposition exhibits | Brandt Depo. 64:18-20; 65:8-14; 130:15-131:1<br><br>Crissey Depo. 61:20-25; 62:11-16<br><br>Yankton (Poppe designee) Depo. 26:3-7; 26:22-27:9<br><br>Depo. Exs. 28, 38 115 |

12

| Admission or Statement Against Interest | Approximate Date Made | Supporting Deposition Testimony and/or Documentation |
| --- | --- | --- |
| The Yankton County Commissioners were aware of the 2020 contracts with Plaintiffs | July 9, 2025<br><br>July 10, 2025<br><br>See also dates of referenced deposition exhibits | Crissey Depo. 118:12-119:13; 120:2-20; 121:8-22; 124:11-18; 136:18-137:8; 141:11-142:4<br><br>Yankton (Crissey designee) Depo. 92:14-93:6<br><br>Yankton (Schindler designee) Depo. 16:10-18:8<br><br>Brandt Depo. 85:7-10<br><br>Vlahakis Depo. 21:5-27:2; 27:24-36:9; 28:7-30:1; 32:13-33:23; 33:25-34:12; 34:19-22; 34:23-35:9; 38:24-43:19; 54:12-56:4<br><br>Depo. Exs. 57, 75, 76, 77 |
| The Yankton County Sheriff was authorized to sign the two 2020 contracts with Plaintiffs on behalf of Yankton County | March 1, 2024<br><br>July 9, 2025 | Crissey Declaration, dated March 1, 2024, ¶s 8-9 (Depo. Ex. 72)<br><br>Crissey Depo. 156:16-159:19<br><br>Vlahakis Depo. 28:7-17; 32:13-33:23; 33:25-34:12 |
| The Yankton County Sheriff was authorized to sign the two 2016 contracts with Plaintiffs on behalf of Yankton County | March 1, 2024<br><br>July 9, 2025 | Crissey Declaration, dated March 1, 2024, ¶ 3 (Depo. Ex. 72)<br><br>Vlahakis Depo. 21:14:27:2 |
| The Yankton County Sheriff was authorized to sign the 2023 contract with NCIC | July 9, 2025 | Crissey Depo. 111:8-16; 136:18-137:8 |
| Yankton did not know, or made no attempt to determine, whether and to what extent Plaintiffs could provide various programming or services to Yankton prior to sending the first termination letter | July 8, 2025<br><br>July 10, 2025 | Brandt Depo. 127:23-128:2; 131:22-133:5<br><br>Yankton (Poppe designee) Depo. 30:7-22; 32:13-33:14; 33:22-34:7 |

| Admission or Statement Against Interest | Approximate Date Made | Supporting Deposition Testimony and/or Documentation |
|---|---|---|
| Yankton cannot identify any documents to support the alleged grounds for termination stated in its letter to Plaintiffs dated July 17, 2023 other than the contracts, the letter itself and subsequent letters to Plaintiffs | July 10, 2025 | Yankton (Poppe designee) Depo. 34:3-7; 35:2-36:24; 42:5-43:18; 45:2-20; 65:20-66:5 |
| Plaintiffs were responsive to the alleged issues that Yankton advised them of | July 8, 2025<br><br>See also dates of referenced deposition exhibits | Brandt Depo. 125:4-13<br><br>Depo. Ex. 37 |

Plaintiffs also incorporate by reference their Responses to Defendant Yankton County, South Dakota's Statement of Undisputed Material Facts in Resistance to Yankton County, South Dakota's Motion for Summary Judgment (Doc. 133) and their Statement of Additional Undisputed Material Facts in Resistance to Yankton County, South Dakota's Motion for Summary Judgment (Doc. 139) as if fully set forth herein.

The following Table 2 identifies admissions or statements against interest made by NCIC and/or its employees, the approximate date such admission or statement was made (except for deposition testimony, in which case the date is the date the deposition was taken), and identifies documentation supporting such admission or statement against interest, which also identifies the speaker and recipients. The following Table 2 should be reviewed in connection with Plaintiffs' prior interrogatory answer above. Admissions or statements against interest referenced in Plaintiffs' prior interrogatory answer but not referenced again in the following Table 2 does not mean Plaintiffs are waiving or otherwise not intending to rely on such admissions or statements against interest.

**Table 2**

**Admissions or Statements Against Interest by NCIC**

| Admission or Statement Against Interest | Approximate Date Made | Supporting Deposition Testimony and/or Documentation |
|---|---|---|
| NCIC knew it would have to induce Yankton to terminate its contracts with Plaintiffs early | August 5, 2025<br><br>August 6, 2025<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. I 33:7-9; 54:9-12; 54:20-55:22; 56:15-21; 59:13-19; 62:24-63:8; 75:23-76:9; 77:4-8; 78:4-79:20 92:4-94:25; 95:10-23; 96:15-22; 98:5-9; 118:24-119:5<br><br>Storer Depo. 51:6-22; 133:3-10<br><br>Depo. Exs. 36, 97 98, 114 |
| NCIC knew Yankton was a customer of Plaintiffs and wanted Yankton to become a NCIC customer | August 5, 2025 | Baniecke Depo. Vol. I 46:2-8; 47:20-48:11; 85:1-4 |
| NCIC knew Plaintiffs' contracts with Yankton did not provide any provision for notice of intent to terminate or for early termination | August 5, 2025<br><br>August 7, 2025<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. I 72:10-20; 74:23-75:1<br><br>NCIC (Pope designee) Depo. 68:5-9<br><br>Depo. Ex. 28 |
| NCIC knew it was inducing or causing Yankton to terminate its two 2020 contracts with Plaintiffs early and that it could be sued for doing so | August 6, 2025<br><br>See also dates of referenced deposition exhibits | Storer Depo. 51:16-52:8; 173:14-174:11; 181:1-25<br><br>Depo. Exs. 36, 114 |
| NCIC knew Plaintiffs two 2020 contracts with Yankton did not require the provision of iPad-sized devices to inmates | August 5, 2025<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. I 111:24-112:3; 112:4-113:3<br><br>Depo. Exs. 28, 36, 115 |
| NCIC knew it would also have to cause Davison County, South Dakota to terminate its contracts with Plaintiff prematurely, in order to gain business from Davison County | August 5, 2025<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. I 92:4-95:23; 96:15-22<br><br>Depo. Ex. 36 |

15

| Admission or Statement Against Interest | Approximate Date Made | Supporting Deposition Testimony and/or Documentation |
|---|---|---|
| NCIC held animus toward Plaintiffs and/or desired to cause physical harm to Plaintiffs' owner, Plaintiffs' businesses, and their reputation and standing in the industry | August 5, 2025<br><br>August 6, 2025<br><br>See also dates of referenced deposition exhibits | Pope Depo. 219:2-23<br><br>Storer Depo. 190:14-191:22<br><br>Depo. Exs. 116, 119 |
| NCIC desired to cause other customers not to do business with Plaintiffs | See also dates of referenced deposition exhibits | Depo. Ex. 119 |
| NCIC desired to disrupt Plaintiffs' businesses by filing complaints with various agencies and entities accusing Plaintiffs of charging unlawful rates to inmates | See also dates of referenced deposition exhibits | Depo. Exs. 118, 119 |
| NCIC desired to make it difficult for Plaintiffs to sell their businesses | See also dates of referenced deposition exhibits | Depo. Exs. 118, 119 |
| The basis for NCIC's accusation that Plaintiffs were charging illegal or unlawful rates was its review of information on Plaintiffs' website or marketing materials | August 5, 2025<br><br>August 6, 2025<br><br>August 7, 2025<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. 1 26:5-7; 26:12-18; 114:9-17; 115:11-22<br><br>Storer Depo. 38:8-21; 107:10-108:6; 145:16-25<br><br>Pope Depo. 142:13-23; 193:10-13<br><br>NCIC (Pope designee) Depo. 61:2-13<br><br>Depo. Exs. 41, 115, 119 |

16

| Admission or Statement Against Interest | Approximate Date Made | Supporting Deposition Testimony and/or Documentation |
|---|---|---|
| The information contained on website pages reviewed by NCIC indicated Plaintiffs were compliant with FCC regulations | August 5, 2025<br><br>August 6, 2025<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. I 27:10-19<br><br>Storer Depo. 47:10-48:9; 99:13-100:15; 102:5-104:6; 106:17-24; 112:20-113:3; 117:8-22<br><br>Pope Depo. 148:10-149:5; 150:18-21; 151:17-21; 156:9-157:22; 158:17-159:1; 177:4-178:7<br><br>Depo. Exs. 41, 45, 57, 101, 115, 119 |
| NCIC did not conduct any investigation into the lawfulness or propriety of the rates Plaintiffs were charging inmates at Yankton County or elsewhere | August 5, 2025<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. 1 26:5-7; 26:12-18; 27:10-19<br><br>Depo. Exs. 41, 115, 119 |
| NCIC provided draft termination letters and other language for Yankton to use in communicating with Plaintiffs regarding termination of the 2020 contracts | January 13, 2025<br><br>July 8, 2025 | NCIC's Response to Plaintiffs' Requests for Admission, No. 10<br><br>Brandt Depo. 81:16-21; 82:14-15; 126:10-127:2; 168:21-169:8; 200:15-22<br><br>Depo. Exs. 30, 31, 34, 38, 39, 41, 44, 46, 47, 48, 53, 61, 68, 102, 111, 112, 113 |
| NCIC knew that at least some of the reasons stated for termination that it provided to Yankton were not supported by the terms of those contracts | August 5, 2025<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. I 99:12-15; 111:24-112:3<br><br>Depo. Ex. 115 |

| Admission or Statement Against Interest | Approximate Date Made | Supporting Deposition Testimony and/or Documentation |
|---|---|---|
| NCIC discussed offering to pay for Yankton's preferred commercial attorney to review Plaintiffs' contracts and to provide a notice to Plaintiffs asserting that they were operating illegally in regard to FCC rate caps | January 13, 2025<br><br>August 6, 2025<br><br>See also dates of referenced deposition exhibits | NCIC's Response to Plaintiffs' Request for Admission No. 7<br><br>Storer Depo. 173:10-174:11<br><br>Depo. Ex. 111 |
| NCIC admitted the litigation between Yankton and Plaintiffs then pending in US District Court for the District of North Dakota was not going well | August 6, 2025<br><br>See also dates of referenced deposition exhibits | Storer Depo. 188:14-189:5<br><br>Depo. Ex. 116 |

There may be other or additional admissions or statements against interest made by Yankton County and/or NCIC. Plaintiffs reserve their right to supplement or amend their answer to this interrogatory as investigation and discovery continues.

**SECOND AMENDED AND SUPPLEMENTAL ANSWER:** Subject to, and without waiver of their previously-stated objections, Plaintiffs amend and supplement the foregoing Answer by stating that the following "Table 2 – Supplement" supplements and amends the above Table 2 by providing additional admissions or statements against interest by NCIC, and by providing additional supporting documentation, where appropriate, based on investigation and discovery to date. The following "Table 2 – Supplement" should be viewed in connection with Plaintiffs' prior interrogatory answers above. Admissions or statements against interest referenced in Plaintiffs' prior interrogatory answers but not referenced in the following Table 2 – Supplement does not mean Plaintiffs are waiving or otherwise not intending to rely on such admissions or statements against interest. Moreover, there may be additional admissions or statements against

18

interest not listed because NCIC has not taken a position in this action contradicted or undermined by some prior statement or admission.

## Table 2 – Supplement

## Admissions or Statements Against Interest by NCIC

| Admission or Statement Against Interest | Approximate Date Made | Supporting Deposition Testimony and/or Documentation |
|---|---|---|
| NCIC knew it would have to induce Yankton to terminate its contracts with Plaintiffs early | August 5, 2025<br><br>August 6, 2025<br><br>April 20, 2026<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. I 33:7-9; 54:9-12; 54:20-55:22; 56:15-21; 59:13-19; 62:24-63:8; 75:23-76:9; 77:4-8; 78:4-79:20 92:4-94:25; 95:10-23; 96:15-22; 98:5-9; 118:24-119:5<br><br>Baniecke Depo. Vol. II 75:20-25; 76:12-19<br><br>Storer Depo. 51:6-22; 133:3-10<br><br>Depo. Exs. 36, 97, 98, 114 |
| NCIC knew Yankton was a customer of Plaintiffs with signed contracts, and wanted Yankton to become a NCIC customer | August 5, 2025<br><br>April 20, 2026<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. I 46:2-8; 47:20-48:11; 85:1-4<br><br>Baniecke Depo. Vol. II 13:9-13; 17:6-19; 79:8-25; 99:19-100:5<br><br>Depo. Exs. 34, 36, 39, 61, 97, 98, 102, 164, 165 |
| NCIC knew Plaintiffs' contracts with Yankton did not provide any provision for notice of intent to terminate or for early termination | August 5, 2025<br><br>August 7, 2025<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. I 72:10-20; 74:23-75:1<br><br>NCIC (Pope designee) Depo. 68:5-9<br><br>Depo. Ex. 28 |

19

| Admission or Statement Against Interest | Approximate Date Made | Supporting Deposition Testimony and/or Documentation |
|---|---|---|
| NCIC knew it was inducing or causing Yankton to prematurely and improperly terminate its two 2020 contracts with Plaintiffs, and knew that it could be sued for doing so | August 6, 2025<br><br>April 20, 2026<br><br>See also dates of referenced deposition exhibits | Storer Depo. 51:16-52:8; 173:14-174:11; 181:1-25<br><br>Baniecke Depo. Vol. II 74:23-75:6; 75:20-25; 76:12-19; 98-1-5<br><br>Depo. Exs. 36, 114, 164 |
| NCIC knew Plaintiffs two 2020 contracts with Yankton did not require the provision of iPad-sized devices to inmates | August 5, 2025<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. I 111:24-112:3; 112:4-113:3<br><br>Depo. Exs. 28, 36, 115 |
| NCIC knew it would also have to cause Davison County, South Dakota to terminate its contracts with Plaintiffs prematurely, in order to gain Davison County's business | August 5, 2025<br><br>April 20, 2026<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. I 12:1-14; 92:4-95:23; 96:15-22<br><br>Baniecke Depo. Vol. II 75:20-25; 76:12-19; 71:1-9; 74:18-75:6; 75:20-25; 79:8-25; 111:8-14; 114:2-12<br><br>Depo. Exs. 36, 114, 160, 162, 163, 164, 170 |
| NCIC held animus toward Plaintiffs and/or desired to cause physical harm to Plaintiffs' owner, Plaintiffs' businesses, and their professional reputation and standing in the industry | August 5, 2025<br><br>August 6, 2025<br><br>April 20, 2026<br><br>See also dates of referenced deposition exhibits | Pope Depo. 219:2-23<br><br>Storer Depo. 190:14-191:22<br><br>Baniecke Depo. Vol. II 95:7-14; 95:7-14<br><br>Depo. Exs. 53, 105, 116, 119, 160 |
| NCIC desired to cause other customers not to do business with Plaintiffs | April 20, 2026<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. II 12:1-14; 14:20-15:4; 16:16-22; 17:6-19; 19:11-20; 32:1-7; 53:18-54:20; 55:1-6; 56:8-17; 80:9-17; 81:10-15<br><br>Depo. Exs. 114, 119, 164, 166 |
| NCIC desired to disrupt Plaintiffs' businesses by filing complaints with various agencies and entities accusing Plaintiffs of charging unlawful rates to inmates | See also dates of referenced deposition exhibits | Depo. Exs. 118, 119 |

| Admission or Statement Against Interest | Approximate Date Made | Supporting Deposition Testimony and/or Documentation |
|---|---|---|
| NCIC desired to make it difficult for Plaintiffs to sell their businesses | See also dates of referenced deposition exhibits | Depo. Exs. 118, 119 |
| The basis for NCIC's accusations that Plaintiffs were charging illegal or unlawful rates was its review of information on Plaintiffs' website or marketing materials | August 5, 2025<br><br>August 6, 2025<br><br>August 7, 2025<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. I 26:5-7; 26:12-18; 114:9-17; 115:11-22<br><br>Storer Depo. 38:8-21; 107:10-108:6; 145:16-25<br><br>Pope Depo. 142:13-23; 193:10-13<br><br>NCIC (Pope designee) Depo. 61:2-13<br><br>Depo. Exs. 41, 115, 119 |
| The information contained on Plaintiffs' website pages reviewed by NCIC indicated Plaintiffs were compliant with FCC regulations | August 5, 2025<br><br>August 6, 2025<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. I 27:10-19<br><br>Storer Depo. 47:10-48:9; 99:13-100:15; 102:5-104:6; 106:17-24; 112:20-113:3; 117:8-22<br><br>Pope Depo. 148:10-149:5; 150:18-21; 151:17-21; 156:9-157:22; 158:17-159:1; 177:4-178:7<br><br>Depo. Exs. 41, 45, 57, 101, 115, 119 |
| NCIC did not conduct any investigation or research into the lawfulness or propriety of the rates Plaintiffs were charging inmates at Yankton County or elsewhere | August 5, 2025<br><br>April 20, 2026<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. I 26:5-7; 26:12-18; 27:10-19<br><br>Baniecke Depo. Vol. II 91:1-4; 91:25-92:4; 94:19-22; 100:6-101:12<br><br>Depo. Exs. 41, 115, 119, 165 |

21

| Admission or Statement Against Interest | Approximate Date Made | Supporting Deposition Testimony and/or Documentation |
|---|---|---|
| NCIC provided draft termination letters and other language to Yankton to use in communicating with Plaintiffs regarding improper termination of the 2020 contracts | January 13, 2025<br><br>July 8, 2025<br><br>April 20, 2026<br><br>See also dates of referenced deposition exhibits | NCIC's Response to Plaintiffs' Requests for Admission, No. 10<br><br>Brandt Depo. 81:16-21; 82:14-15; 126:10-127:2; 168:21-169:8; 200:15-22<br><br>Baniecke Depo. Vol. II 14:20-15:4<br><br>Depo. Exs. 30, 31, 34, 38, 39, 41, 44, 46, 47, 48, 53, 61, 68, 102, 111, 112, 113, 165 |
| NCIC knew that at least some of the reasons stated for termination that it provided to Yankton were not supported by the terms of those contracts or the facts | August 5, 2025<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. I 99:12-15; 111:24-112:3<br><br>Depo. Ex. 115 |
| NCIC discussed offering to pay for Yankton's preferred commercial attorney to review Plaintiffs' contracts, and to provide a notice to Plaintiffs asserting that they were operating illegally in regard to FCC rate caps | January 13, 2025<br><br>August 6, 2025<br><br>See also dates of referenced deposition exhibits | NCIC's Response to Plaintiffs' Request for Admission No. 7<br><br>Storer Depo. 173:10-174:11<br><br>Depo. Ex. 111 |
| NCIC admitted the litigation between Yankton and Plaintiffs then pending in US District Court for the District of North Dakota was not going well | August 6, 2025<br><br>See also dates of referenced deposition exhibits | Storer Depo. 188:14-189:5<br><br>Depo. Ex. 116 |
| NCIC tried to get Davison County to terminate its contracts with Plaintiffs prematurely, before their actual end dates | April 20, 2026<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. II 12:1-14; 14:20-15:4; 74:14-75:6; 75:20-25; 76:12-19; 77:12-23<br><br>Depo. Exs. 162, 163 |

22

| Admission or Statement Against Interest | Approximate Date Made | Supporting Deposition Testimony and/or Documentation |
|---|---|---|
| NCIC knew of Davison County's contracts with Plaintiffs and their end date in December 2025 or January 2026 | April 20, 2026<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. II 13:9-14:5; 67:8-12; 68:12-69:1; 71:1-17; 111:8-14; 121:16-19<br><br>Depo. Exs. 162, 168, 170, 172 |
| NCIC provided draft termination letters to Davison County | April 20, 2026<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. II 79:8-25<br><br>Depo. Exs. 36, 164 |
| NCIC's practice is to provide draft termination letters to potential clients when soliciting them to become NCIC customers | April 20, 2026<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. II 14:20-15:4; 17:6-19; 19:11-20; 79:8-25; 81:10-15<br><br>Depo. Exs. 34, 36, 39, 102, 164, 165 |
| NCIC told Davison County that Plaintiffs were charging rates in excess of those permitted by FCC regulations | April 20, 2026<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. II 49:5-13; 56:8-17; 60:21-61:21; 84:13-18<br><br>Depo. Exs. 39, 160, 161 |
| NCIC told Davison County that Plaintiffs were "padding" online funding fees | April 20, 2026<br><br>See also dates of referenced deposition exhibits | Baniecke Depo. Vol. II 54:13-26<br><br>Depo. Ex. 160 |
| NCIC expects its clients to have long-term relationships with it | August 5, 2025<br><br>April 20, 2026 | Pope Depo. 45:12-46:17; 46:21-48:1<br><br>Baniecke Depo. Vol. II 118:17-119:9 |

There may be other or additional admissions or statements against interest made by Yankton County and/or NCIC. Plaintiffs reserve their right to supplement or amend their answer to this interrogatory as investigation and discovery continues.

**INTERROGATORY NO. 5.** Describe, in detail and not summary fashion, the way you calculated any and all of the rates charged to incarcerated individuals under your contract with Yankton County and how any ancillary fees are apportioned to incarcerated individuals, and/or their friends and family, and paid to the Universal Service Administrative Company ("USAC").

23

**ANSWER:** Plaintiffs object to this interrogatory on the grounds it is vague and ambiguous. Plaintiffs further object to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or other applicable privileges. Without waiver of these objections and their General Objections, Reliance Systems' operations are not subject to FCC regulations and it does not pay fees to USAC. Reliance Telephone states that its fee structure is, and has always been, in compliance with applicable state and federal laws, including the federal regulations that cap interstate calls. Reliance Telephone actually charges inmates less than the maximum amount allowed, because its inmate charges include the applicable and required Universal Service Administrative Co. ("USAC") Contribution Factor and Interstate Telecommunications Relay Services ("TRS") Contribution Percentage fees.

USAC is an independent not-for-profit entity designated by the Federal Communications Commission ("FCC") that administers and runs the Federal Universal Service Fund ("FUSF"). The actual cost per minute that the inmate is paying, before factoring in this fee, depends on the FUSF percentage at that time. This results in the USAC collecting and delivering funding to selected programs focused on places where broadband and connectivity needs are critical, including in rural, underserved, and difficult-to-reach areas in the United States. Pursuant to state and federal law, telecommunications companies and service providers like Reliance Telephone are required to contribute money to the FUSF and participate in the FUSF and Congressional Response Programs. The FUSF is set by the FCC and fluctuates quarterly. The FCC requires that the final cost per minute charged, excluding fees that may be passed on to the inmate, must be equal to or less than $0.21 per minute, and that the business ensures its pricing complies within these limits. USAC contribution rate can fluctuate anywhere from 29%-33%.

Reliance Telephone's actual "per minute rate" varies based on the applicable FUSF set by the FCC. The FUSF fee has varied from 30% to 36% in the last few years, which has resulted in the actual cost per minute for the inmate varying. Reliance Telephone uses a flat charge for interstate calls of $0.25/minute, which includes the FUSF fee. The actual charge to the inmate is less than the maximum permitted rate of $0.21/minute. For example, to determine the actual cost of a call if the FUSF fee is 30%, with a flat charge for an intrastate local call of $0.25/minute, the calculation is $0.25/1.3, which results in $0.1923 per minute being charged to inmates, which is less than the maximum permitted rate of $0.21/minute, with the difference going towards the mandatory fees. As another example, if the FUSF fee is 36%, the calculation is $0.25/1.36, which results in $0.1838 per minute being charged to the inmate, again less than the maximum permitted rate of $0.21/minute, with the remainder going towards the mandatory fees. These amounts are within the FCC requirement that the rate charged for the call be equal to or less than $0.21/minute.

Because Reliance Telephone paid commissions to Yankton County based on the $0.25/minute rate, Reliance Telephone actually paid Yankton County commissions on the legally-required FUSF, USAC, and TRS charges. This resulted in Yankton County being paid a higher commission than if the commission was paid on the actual rate charged to the inmate, excluding the above-identified fees.

For direct bill accounts, which allow the customer to have a direct bill, Reliance Telephone charges the customer a flat charge of $0.21/minute plus the above described FUSF fees for interstate calls. For local and intrastate calls, Reliance Telephone charges a flat rate of $0.25/minute. Reliance Telephone's other fees and charges are all at rates recommended by the FCC. For example, Reliance Telephone charges $3.00 as an online service charge, plus any applicable third-party credit card

company, or bank card service charges. The FCC has never alleged that the Reliance Telephone's rates are improper or in excess of allowed rates.

Pursuant to Federal Rule of Civil Procedure 33(d), in lieu of further answer, Plaintiffs refer to the following documents produced in this action: RELIANCE-PLTFS-000162-000298; 000299-000356; 000357-000544; 000072-000072; 000083-000085; 000086-000086; 000087-000090; 000554-000556; 000557-000558; 000615-000615; 000616-000616; 000631-000631; 000645-000645; 000648-000707; 000944-000952; 000953-000954; 001446-1699; and 001759-1780.

**AMENDED AND SUPPLEMENTAL ANSWER:** Subject to, and without waiver of their previously-stated objections, Plaintiffs amend and supplement the foregoing Answer by additionally stating Reliance Systems' operations are not subject to FCC regulations and it does not pay fees to USAC. Reliance Telephone's fee structure is, and has always been, in compliance with applicable state and federal laws, including the federal regulations that cap interstate calls. Reliance Telephone actually charges inmates less than the maximum amount allowed, because its inmate charges include the applicable and required Universal Service Administrative Co. ("USAC") Contribution Factor and Interstate Telecommunications Relay Services ("TRS") Contribution Percentage fees.

USAC is an independent not-for-profit entity designated by the Federal Communications Commission ("FCC") that administers and runs the Federal Universal Service Fund ("FUSF"). The actual cost per minute that the inmate is paying, before factoring in this fee, depends on the FUSF percentage at that time. This results in USAC collecting and delivering funding to selected programs focused on places where broadband and connectivity needs are critical, including in rural, underserved, and difficult-to-reach areas in the United States. Pursuant to state and federal law,

26

telecommunications companies and service providers like Reliance Telephone are required to contribute money to the FUSF and participate in the FUSF and Congressional Response Programs. The FUSF is set by the FCC and fluctuates quarterly. The FCC requires that the final cost per minute charged, excluding fees that may be passed on to the inmate, must be equal to or less than $0.21 per minute, and that the business ensures its pricing complies within these limits. The USAC contribution rate can fluctuate anywhere from 29%-33%.

Reliance Telephone's actual "per minute rate" varies based on the applicable FUSF set by the FCC. The FUSF fee has varied from 30% to 36% in the last few years, which has resulted in the actual cost per minute for the inmate varying. Reliance Telephone uses a flat charge for interstate calls of $0.25/minute, which includes the FUSF fee. The actual charge to the inmate is less than the maximum permitted rate of $0.21/minute. For example, to determine the actual cost of a call, if the FUSF fee is 30%, with a flat charge for an intrastate local call of $0.25/minute, the calculation is $0.25/1.3, which results in $0.1923 per minute being charged to inmates, which is less than the maximum permitted rate of $0.21/minute, with the difference going towards the mandatory fees. As another example, if the FUSF fee is 36%, the calculation is $0.25/1.36, which results in $0.1838 per minute being charged to the inmate, again less than the maximum permitted rate of $0.21/minute, with the remainder going towards the mandatory fees. These amounts are within the FCC requirement that the rate charged for the call be equal to or less than $0.21/minute.

Because Reliance Telephone paid commissions to Yankton County based on the $0.25/minute rate, Reliance Telephone actually paid Yankton County commissions on the legally-required FUSF, USAC, and TRS charges. This resulted in Yankton County being paid a higher commission than if the commission was paid on the actual rate charged to the inmate, excluding the above-identified fees.

27

For direct bill accounts, which allow the customer to have a direct bill, Reliance Telephone charges the customer a flat charge of $0.21/minute plus the above-described FUSF fees for interstate calls. For local and intrastate calls, Reliance Telephone charges a flat rate of $0.25/minute. Reliance Telephone's other fees and charges are all at rates recommended by the FCC. For example, Reliance Telephone charges $3.00 as an online service charge, plus any applicable third-party credit card company, or bank card service charges. The FCC has never alleged that the Reliance Telephone's rates are improper or in excess of allowed rates.

Further, the FCC requires all inmate telephone service providers to contribute to the Federal Universal Service Fund (FUSF). Each provider is responsible for determining the appropriate methodology to calculate what portion of its calls are interstate, based on the physical location of the callers. Some providers make this determination on a per-call basis, while others use a system-wide allocation methodology. Each provider is required to file FCC Form 499-Q quarterly, reporting its best estimate of interstate revenues. Inmate telephone companies are permitted to pass these contribution costs on to customers.

Reliance Telephone uses a system-wide estimation approach. Reliance Telephone has been reluctant to use a strict per-call determination because it believes it would result in charging FUSF fees on some intrastate calls. This issue arises primarily due to number portability; many customers physically reside in South Dakota but retain cellphone numbers from other states rather than obtaining a 605-area code.

Given these limitations, Reliance Telephone uses a best-estimate methodology based on the physical addresses customers register within its payment system. Reliance Telephone analyzes revenue data and customer payment addresses to determine what portion of traffic is likely intrastate versus interstate.

There is no perfect method to determine whether a call is physically in-state or out-of-state due to number portability, mobile phones, and internet-based telephone numbers. The FCC recognizes this challenge and does not mandate a specific methodology. Instead, the FCC requires each inmate telephone provider to use a reasonable, good-faith approach to determine its best estimate.

At the end of each quarter, Reliance Telephone calculates the interstate percentage of traffic and submits total revenues along with the portion determined to be interstate on its FCC Form 499-Q filing. The FCC has never asserted that Reliance Telephone has done anything wrong.

Reliance Telephone uses a mixture of billing methods, depending on the payment type, in order to obtain the greatest possible accuracy:

1. Direct Bill

   o  Reliance Telephone uses the physical address on file.

   o  Interstate calls are charged $0.21 per minute, plus applicable FUSF and TRS fees.

2. Phone Cards (a very small portion of traffic)

   o  Calls to numbers without a 605-area code are charged $0.21 + $0.04.

   o  Calls to numbers with a 605-area code are charged $0.40.

3. Inmate Wallet

   o  All calls are charged $0.21 + $0.04, for a total of $0.25 per minute.

   o  The $0.04 serves as a contribution toward the FUSF obligation.

   o  This amount covers only a portion of the FUSF cost; Reliance Telephone absorbs the remaining difference depending on the quarterly FUSF contribution factor.

   o  Reliance Telephone never charges more than $0.21 per minute for an interstate call, in compliance with FCC rate caps.

The effective cost of a call charged at $0.25 per minute can be viewed in two ways:

29

1. FUSF-Inclusive Calculation

   If the FUSF contribution factor is known, the underlying cost can be calculated as:

   $0.25 ÷ (1 + FUSF%)

   Example:

   With a 30% FUSF rate:

   $0.25 ÷ 1.30 = $0.19 per minute

2. Blended Rate Perspective

   Alternatively, the cost can be viewed as:

   $0.21 per minute base rate, plus

   $0.04 contributed by the inmate toward the FUSF obligation

In both of these scenarios, Reliance Telephone ensures compliance with FCC regulations and absorbs any remaining FUSF cost not covered by the $0.04 contribution.

*See* Expert Report of Dave Hangsleben, dated April 30, 2025, pp. 7-12, and Reply Expert Report of Dave Hangsleben, dated February 16, 2026, pp. 2, 4-10, which are incorporated herein by reference as if fully set forth herein.

In addition to documents previously identified, pursuant to Federal Rule of Civil Procedure 33(d), in lieu of further answer, the Plaintiffs refer to the following documents produced in this action: RELIANCE-PLTFS-000078; 000547-000548; 001082; 001083-001084; 001364-001445; 001679-1699; 001446-1459; 001460-1464; 001465-1472; 001473-1478; 001479-1486; 001487-1492; 001493-1500; 001501-1509; 001510-1516; 001517-1524; 001525-1533; 001534-1539; 001540-1547; 001548-1553; 001554-1561; 001562-1567; 001568-1575; 001576-1584; 001585-1592; 001593-1601; 001602-1610; 001611-1617; 001618-1625; 001626-1632; 001633-1640; 001641-1649; 001650-1655; 001656-1663; 001664-1668; 001669-1676; 001677-1678; 001759-1766; 001767-1776; 001777-1780; 003090-003090; 001781-001783; 001784-001790; 001791-

30

001799; 001800-001802; 001803-001809; 001810-001818; 001819-001821; 001822-001828; 001829-001831; 001832-001838; 001839-001840; 001841-001859; 001860-001862; 001863-001869; 001870-001878; 001879-001891; 001892-001894; 001895-001901; 001902-001910; 001911-001912; 001913-002377; 002378-002393; 002394-002395; 002396-002423; 002424-002812; 002813; 003076; 003077-003084; 003085-003089; 003096-003138; 003139-003185; 003449-012167; 012978-012980; 012981-012982; 013062-013178; 013500-013503; 013504-013507; 013508-013510; 013511-013513; 013514-013516; 013517-013519; 013520-013523; and 013527-013530.

**INTERROGATORY NO. 12.** Identify all instances in which you have evidence that Defendant Network Communications International Corp. or any of its owners, agents, or employees, made any false or misleading statements regarding Reliance's business operations, qualities and products in connection with the sale of Defendnat [*sic*] Network Communications International Corp.'s good and services

**ANSWER:** Plaintiffs object to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or other applicable privileges. Plaintiffs object to this interrogatory on the grounds it is vague and ambiguous. Without waiver of these objections and their General Objections, based upon investigation and discovery to date, Plaintiffs state that NCIC made at least the following false and/or misleading statements regarding Plaintiffs, their business operations, and products in connection with the sale and marketing of NCIC's products and services:

- On multiple occasions, both verbally and in writing, NCIC and its officers and agents made false and misleading statements regarding the legality or propriety of the telephone calling rates charged by Plaintiffs to inmates. These false and misleading statements were made beginning at least by early April 2023, and continued at least until November 2023. These false and misleading statements were made by William Pope, NCIC's president; Craig

31

Storer, NCIC's director of marketing; and Scott Baniecke, NCIC's Midwest director of sales. The deposition testimony of each of these individuals, as well as the Rule 30(b)(6) deposition testimony of NCIC, contain evidence relating to these false and misleading statements. The false and misleading statements were made by the above-named individuals to at least Todd Brandt, then Yankton County's jail administrator, and Preston Crissey, Yankton County's sheriff. The deposition testimony of the above-referenced individuals, as well as the Rule 30(b)(6) testimony of Yankton County, contain evidence relating to the false and misleading statements. The false and misleading statements may have been made to other employees of Yankton County or the Yankton County Jail. These false and misleading statements were all made in connection with NCIC's efforts to obtain business from Yankton County by inducing Yankton County to breach and improperly terminate its contracts with each of the Plaintiffs. Documents that reflect or relate to these false and misleading statements include, but are not necessarily limited to, at least the following deposition exhibits marked to date in this action: Ex. 3, Ex. 7, Ex. 29, Ex. 30, Ex. 32, Ex. 33, Ex. 34, Ex. 36, Ex. 37, Ex. 38, Ex. 39, Ex. 40, Ex. 41, Ex. 44, Ex. 46, Ex. 47, Ex. 48, Ex. 51, Ex. 52, Ex. 53, Ex. 61, Ex. 63, Ex. 68, Ex. 69, Ex. 70, Ex. 71, Ex. 99, Ex. 100, Ex. 101, Ex. 105, Ex. 109, Ex. 111, Ex. 113, Ex. 114, Ex. 118, and Ex. 119.

- During the same time period and involving the same individuals identified above, NCIC made false and misleading statements regarding Plaintiffs' obligations or performance under the two contracts entered into in 2020 with Yankton County, specifically whether those contracts required the provision of large-size iPad devices to each inmate and the alleged non-delivery of technology and programming. The above-identified deposition

32

exhibits, including specifically Ex. 36 and Ex. 38, reflect these false and misleading statements.

- Pending further discovery, Plaintiffs reasonably believe that NCIC and the individuals identified above made similar false and misleading statements concerning the legality or propriety of telephone rates charged to inmates to one or more representatives or employees of Davison County, South Dakota. Similar false and misleading statements may have been made by the same NCIC individuals to other actual or potential customers of Plaintiffs, but discovery is continuing in this regard.

**AMENDED AND SUPPLEMENTAL ANSWER:** Subject to, and without waiver of their previously-stated objections, Plaintiffs amend and supplement the foregoing Answer by additionally stating that NCIC made false or misleading statements regarding Plaintiffs' business operations, qualities, and products in connection with the sale of NCIC's goods and services. This began no later than about April 11, 2023, when Scott Baniecke and Craig Storer (NCIC employees) met with Todd Brandt at the Yankton County Jail. At or about that time, NCIC, through its employees, started marketing and "selling" Yankton County to convince Yankton County to terminate its contracts with Plaintiffs and instead sign a contract with NCIC. *See* Depo. Ex. 27. That NCIC was marketing and selling its goods and services at this time is evidenced by the fact that it sent a written proposal to Brandt at Yankton on or about April 12, 2023, only one day after initially meeting with him. *See* Depo. Ex. 29. NCIC knew from its initial meeting at Yankton that Plaintiffs at that time had contracts with Yankton to provide the same type of goods and services as NCIC was proposing and soliciting to provide. In fact, in or about April 2023, Yankton provided copies of its contracts with Plaintiffs to NCIC's representatives. *See* Depo. Ex. 36. All of NCIC's false and misleading statements concerning Plaintiffs' business operations, qualities, and products

33

were made in the context of NCIC marketing its goods and services to replace Plaintiffs' goods and services. NCIC's false and misleading statements were made in the context of soliciting business and were attempting to induce (and succeeded in inducing) Yankton to improperly terminate its contracts with Plaintiffs and to instead execute a contract with NCIC for the provision of NCIC's goods and services. The false, misleading and disparaging statements were made by a competitor (NCIC) for the purpose of influencing a consumer (Yankton) to buy NCIC's goods and services instead of Plaintiffs' goods and services.

Based on investigation and discovery to date, NCIC's false and misleading statements regarding Plaintiffs' business operations, qualities and products were, on information and belief, made verbally and in writing by Scott Baniecke, Craig Storer and/or William Pope to Todd Brandt and/or Preston Crissey, and perhaps others at Yankton County, on a number of occasions between April 2023 and continuing into 2024. Upon information and belief, the same or similar false, misleading, and disparaging statements were made by the NCIC individuals identified above to representatives of Davison, Brown, Day and Faulk counties in South Dakota. The false and misleading statements, based on investigation and discovery to date, include, but are not necessarily limited to, the statements identified in Plaintiffs' previous answer as well as follows:

(a) As early as April 15, 2023, NCIC's employees provided draft "form" termination letters to Mr. Brandt at Yankton, for Yankton to send to Plaintiffs terminating their services with Plaintiffs. These draft form letters asserted that Yankton was "in the process of evaluating a variety of available technologies in the inmate communications space" when in fact that was not true, thereby giving Plaintiffs an inaccurate understanding of what was in fact going on. *See* Depo. Exs. 30, 31; Metadata for Depo. Ex. 31 showing it was drafted by Mr. Storer on April 25, 2023. This was false. In fact, Yankton was not

34

engaging in any evaluation of the "variety of available technologies in the inmate communications space." It was only considering NCIC.

(b) On April 25, 2023, Mr. Storer informed Mr. Baniecke that he could, "think of at least 4 things right off the top of my head that they [Yankton] could lean on, top [*sic*] terminate early with Reliance. I'll provide thoughts later, re. Davison. But those same 4 termination reasons would apply there, too." This internal communication shows that NCIC's employees were simply thinking up "things right off the top of" their heads to try to solicit and induce Yankton and Davison counties to terminate their contracts with Plaintiffs prematurely. NCIC likely used the same four concocted reasons in its efforts to get Davison County, South Dakota, and other clients of Plaintiffs, to improperly terminate their contracts with Plaintiffs.

(c) On or about April 28, 2023, Mr. Baniecke sent Mr. Brandt another form termination letter. *See* Depo. Ex.34. This draft letter falsely asserted that Plaintiffs had been tardy with payment of commission checks; had a "general lack of responsiveness;" and was not delivering promised technology and programming. Each of these assertions was either inapplicable and/or false and misleading and presented Plaintiffs in a bad light.

(d) In or about May 2023, Mr. Baniecke or Mr. Storer sent Yankton another form termination letter. *See* Depo. Ex. 61; Metadata for Depo. Ex. 61 showing it was created by Mr. Storer on April 28, 2023. This letter repeated the false statements contained in Depo. Exs. 30 and 31. This letter added false and misleading statements claiming that Plaintiffs' "video visitation" system required Yankton's staff to "reset the … system multiple times per week…." It also falsely claimed that Plaintiffs were contractually required to provide "ipads" to Yankton for its inmates. However, Yankton's contracts

contain no such requirement. NCIC knew this from its own reading of Plaintiffs' contracts. *See, e.g.,* Depo. Ex. 115.

(e) On or about July 10, 2023, Mr. Baniecke provided another termination letter to Mr. Brandt that Mr. Storer had written for Yankton to use. *See* Depo. Exs. 38, 39, 41, 44; Metadata for Depo. Ex. 39 showing it was created by Mr. Storer on July 10, 2023. Mr. Baniecke's email indicates that NCIC had discussed the false and misleading statements with Mr. Brandt during "our call last week." The draft letter again repeated the false and misleading statements regarding handheld devices (i.e., iPads vs. iPods); non-delivery of technology and programming; and alleged failures of the video visitation system. The draft letter added a new, and extremely damaging false assertion that Plaintiffs were unlawfully charging Yankton and its inmates, rates and fees in excess of those permitted by applicable Federal Communications Commission (FCC) regulations. The false and misleading assertion that Plaintiffs were charging rates and fees in excess of the amounts permitted was especially damaging, because it charged Plaintiffs with engaging in potentially criminal and unlawful activities. It made Plaintiffs appear that they were operating illegally and in violation of applicable laws and regulations. The four false and misleading grounds stated likely were the four reasons Mr. Storer thought of "off the top of [his] head." These false, misleading and disparaging statements were all made in connection with NCIC's on-going efforts to get Yankton to improperly terminate its contracts with Plaintiffs. *See* Depo. Ex. 102.

(f) Plaintiffs responded on July 30 to Yankton's letter dated July 17, 2023. Mr. Brandt promptly sent that letter to NCIC. *See* Depo. Ex. 46. Mr. Storer told Mr. Brandt in an email dated August 2 that NCIC "was prepared to push forward as planned, for reasons

we can discuss later." *See id. See also* Depo. Ex. 101 (email thread showing NCIC's statements were made as part of its ongoing efforts to obtain Yankton as a client). This further shows that NCIC's false and misleading communications to Yankton were made in the context of, and as part of, its efforts to sell NCIC's goods and services to Yankton and to displace Plaintiffs, at whatever the cost, as the services provider at the Yankton County jail.

(g) In an email sent August 4 by Mr. Pope, which included Mr. Brandt among the recipients, Mr. Pope made false and misleading statements regarding Plaintiffs, including asserting that they were "overcharging." Mr. Pope's email sent to Mr. Brandt made other false, misleading and disparaging statements regarding Plaintiffs relating to their charges and practices. In emails dated August 5 and 6, Messrs. Storer and Pope made further false, misleading and disparaging statements regarding Plaintiffs and the rates charged to Yankton and its inmates. These emails included Mr. Brandt as one of the recipients. *See* Depo. Ex. 46.

(h) NCIC employee Mr. Storer drafted the response letter for Yankton and sent it to Mr. Brandt on or about August 7 or 8. *See* Depo. Exs. 46, 47, 48, 112; Metadata for Depo. Ex. 48 showing it was created by Mr. Storer. This response letter, which was adopted by Mr. Brandt (*compare* Depo. Ex. 48 *with* Depo. Ex. 47), includes multiple false, misleading and disparaging statements, including false and misleading statements suggesting Yankton had conducted "research." The letter drafted by NCIC (not Yankton) threatened Plaintiffs with "submit[ting] a formal demand" for various records as part of the NCIC-concocted false narrative that Plaintiffs were charging unlawful rates. It also falsely accused Plaintiffs of "fee harvesting." The response letter drafted

by NCIC (not Yankton) continued the false assertions regarding the size of handheld devices required to be supplied and falsely claimed that "it's evident that you're [Plaintiffs] simply not aware of the various models that are available in the industry for accommodating both considerations." The draft letter sought to downplay and cover-up the fact that Yankton in fact had not been frequently contacting Plaintiffs regarding alleged deficiencies in the video visitation system. The reply letter drafted by NCIC (not Yankton) concluded with the implicit threat that it would provide unfavorable feedback regarding its experience with Plaintiffs if Plaintiffs did not simply accept the unlawful, premature termination of the contracts. *See* Depo. Ex. 46.

(i) In emails dated August 31, 2023, sent to and from Mr. Brandt, Mr. Storer stated, "We already spoke about the fact that Reliance's texting merely cannibalizes the Phone revenue, since the text message rates are low (by industry standards), while the calling rates are (illegally) high." Depo. Ex. 51. *See* Depo. Ex. 105. These statements were false and disparaging; placed Plaintiffs in a bad light; and were intended to induce Yankton to continue its effort to improperly terminate its contracts with Plaintiffs so that NCIC could replace them as Yankton's services provider for inmate telephone and texting services. *See also* Depo. Ex. 51.

(j) In an email dated September 5, 2023, Mr. Storer falsely stated to Mr. Baniecke, in response to a further response letter sent on behalf of Plaintiffs and which Mr. Brandt forwarded to him, "Leave it with me. They're [Plaintiffs] flat-out lying about violating FCC rate caps." Depo. Ex. 53. Upon information and belief, Mr. Baniecke communicated this, or similar false, misleading and disparaging statements to Mr. Brandt on other occasions. The accusation of "flat-out lying" was false and disparaging.

Plaintiffs' rates and fees were and are fully compliant with all applicable FCC regulations.

(k) In a series of emails beginning on or about October 19, 2023, various NCIC personnel communicated with Mr. Crissey regarding a response to a further letter sent on behalf of Plaintiffs. *See* Depo. Ex. 68. In these emails, NCIC once again prepared a response for Yankton to use. In the draft response prepared by Mr. Pope and sent to Mr. Crissey on or about October 26, 2023, he made false, misleading and disparaging statements alleging that Plaintiffs were, "not concerned with my [Yankton's] August 8th, 2023 letter outlining their violating the FCC rate caps and taking advantage of the ignorance of this law by our past leadership of Yankton County." The draft response again falsely and disparagingly accused Plaintiffs of "breaking the law by overcharging" and suggested Plaintiffs pay Yankton "over $100,000" as compensation. The draft response, sent to Mr. Crissey, demanded an apology "for these excessive overcharges and a willingness to accept liability and indemnify Yankton County when/if we release these abuses to the public." *Id. See* Depo. Exs. 111, 113. The draft response further threated the filing of a formal complaint to the FCC; notice to the South Dakota Public Service Commission; and distribution of Yankton's "countersuit" "to members o[*sic*] the South Dakota Sheriff's Association membership." In a follow-up email also dated October 26, Mr. Storer told Mr. Crissey that he [Storer] was available "to assist with polishing this up and getting it ready to send on to Reliance." Depo. Ex. 68.

(l) In an email dated November 13, 2023, Mr. Crissey told Plaintiffs' counsel, "It appears your client was not concerned with Jail Administrator Brandt's letter addressing the rate and fees per the FCC." Depo. Ex. 69. This email shows that the false, misleading and

39

disparaging statements concocted by NCIC, alleging Plaintiffs were illegally charging rates and fees in excess of those legally permitted by the FCC were the key, critical assertion made by NCIC to Yankton to induce Yankton to improperly terminate its contracts with Plaintiffs, and that Yankton focused on these statements in deciding to wrongly terminate its then-existing contracts with Plaintiffs.

(m) In a series of emails in early November 2023, NCIC internally revealed further that the false, misleading and disparaging accusation that Plaintiffs were "overcharging" for services in violation of FCC regulations was the key factor in driving Yankton to wrongfully terminate its contracts. *See* Depo. Ex. 114 (email from Pope to Storer dated November 8, 2023). Indeed, Mr. Pope admitted on November 10, "We [NCIC] will probably be ok if we don't try to get more to terminate early. [followed by two smiley-faced emojis]" *Id.* Mr. Storer quickly responded, "I agree!" Thus, NCIC knew and understood that it was engaging in actions intended to cause Yankton to improperly terminate its contracts with Plaintiffs. *See also* Depo. Exs. 116, 118 (showing that NCIC had animosity toward Plaintiffs and their owner; were willing to physically harm Plaintiffs' owner; and that NCIC planned and intended taking business from Plaintiffs and harming Plaintiff's owner's ability to sell his companies).

(n) In an email dated March 22, 2024, Mr. Pope told Yankton's counsel, "I would like to see if you can share with Reliance's attorney that if they refile in SD, we'll be forced to file a formal FCC complaint in order for them to confirm NCIC's argument that Reliance was, in fact, overcharge [*sic*] as Dave Hangsleben admitted in the attached July 30th, 2023 letter to Yankton County. I really want to push this on them so they just drop any further litigation." Depo. Ex. 119. This was another false, misleading and disparaging

40

statement by NCIC, this time made to Yankton's counsel. It also shows that NCIC knew its false assertions made repeatedly to Yankton regarding unlawful charges was only an "argument" and now was being pressed not only to cause Yankton to wrongly terminate its contracts with Plaintiffs, but also to attempt to coerce Plaintiffs to "drop any further litigation."

Upon information and belief, and based on the exhibits and deposition testimony in this action to date, Plaintiffs believe that NCIC's aforementioned employees and officers made the false, misleading, and disparaging statements identified above verbally to Yankton employees, including at least Messrs. Brandt and Crissey, in addition to the multiple occasions when they were made in writing.

Furthermore, upon information and belief, NCIC made similar, if not identical, false, misleading and disparaging statements to other clients of Plaintiffs in attempting to market NCIC's goods and services in competition with Plaintiffs. These clients include, but are not necessarily limited to, individuals at Davison County, South Dakota; Brown County, South Dakota; Day County, South Dakota; and Faulk County, South Dakota. *See* Depo. Ex. 36; Documents Bates No. NCIC-005394; NCIC-007082-84; NCIC-007058. Indeed, on May 1, 2023, Mr. Baniecke admitted he had "provided example termination letters to both Yankton County and Davison County last week as both want to go with us, but both are still under contract with Reliance." Document Bates No. NCIC-007058. He also stated he had meetings scheduled with Brown, Day and Faulk counties on May 15, 2023. *Id.* Given that NCIC was making false, misleading, and disparaging statements about Plaintiffs to Yankton, it undoubtedly was making similar false, misleading and disparaging statements to representatives of Davison, Brown, Day and Faulk counties in connection with its

41

efforts to sell its goods and services, and to convince those counties to terminate their relationships with Plaintiffs and to purchase NCIC's goods and services instead.

Investigation and discovery are continuing. Plaintiffs reserve their right to supplement or amend their answer to this interrogatory as investigation and discovery continues.

**SECOND AMENDED AND SUPPLEMENTAL ANSWER**: Subject to, and without waiver of their previously-stated objections, Plaintiffs amend and supplement the foregoing answers by stating that based on investigation and discovery to date, in addition to those false or misleading statements identified in its previous answers, NCIC made at least the following false or misleading statements:

(o) On or about July 7, 2023, Mr. Craig Storer drafted a letter for Yankton County and Mr. Brandt to use in which he asserted, *inter alia*, that Plaintiffs were unlawfully charging rates in excess of the amounts permitted under FCC regulations, were not offering refunds for unused balances on calling cards and were charging excessive rates for "back-end fees." *See* Depo. Exs. 39, 102. These false and misleading statements were communicated to Yankton County and were included in its July 17, 2023, termination letter. *See* Depo. Ex. 44.

(p) On or about August 4, 2023, Mr. Craig Storer drafted a letter for Yankton County and Mr. Brandt to use in which he asserted, *inter alia*, that Plaintiffs were charging rates in excess of the rates permitted under applicable FCC regulations and that Plaintiffs were engaged in "fee harvesting." *See* Depo. Ex. 165. These false and misleading statements were communicated to Yankton County. *See* Depo. Exs. 46, 47, 48.

(q) On or about August 31, 2023, in an email to Mr. Storer, Mr. Pope described Plaintiffs' rates as, "'illegally' high rates!" *See* Depo. Ex. 105.

(r) On or about January 27, 2023, Mr. Baniecke sent to Davison County Sheriff Steve Harr, an "analysis" of the rates being charged by Plaintiffs to Davison County under their existing contracts with Davison County. In the "analysis," NCIC asserted that Plaintiffs' prepaid in-state call rates were, "in violation of current FCC regulations regarding Inmate Calling Services". NCIC also asserted that Plaintiffs were, "'padding' the online funding fees with an additional amount equaling approximately three percent (3%) of the deposit amount, further eroding the commissionable revenue. *See* Depo. Ex. 160.

(s) On or about January 30, 2023, Mr. Baniecke sent to Davison County Sheriff Steve Harr a draft proposal for NCIC to become the provider of Davison County's inmate communication services. In the cover email, Mr. Baniecke stated that NCIC was "lowering calling rates and to [*sic*] under the FCC regulated amounts...." This statement reinforced the false and misleading statement previously communicated to Davison County that Plaintiffs were charging impermissible rates made in the January 27, 2023 "analysis." *See* Depo. Ex. 161.

(t) NCIC's practice is to provide draft termination letters to counties it is soliciting for business, including existing clients of Plaintiffs. Those termination letters often, if not as a matter of standard practice, included the false accusation that Plaintiffs were improperly or illegally charging telephone rates in excess of those permitted by FCC regulations. *See* Baniecke Depo. Vol. II 12:1-14; 14:20-15:4; 16:16-22; 17:6-19; 19:11-20; 32:1-7; 53:18-54:20; 55:1-6; 56:8-17; 80:9-17; 81:10-15; Depo. Exs. 36, 39, 46, 102, 114, 119, 164, 165, 166.

Plaintiffs also incorporate by reference their answer(s) to Interrogatory No. 2, above, to the extent those answer(s) establish various false and misleading statements made by NCIC to Yankton and other clients of Plaintiffs in order to try to induce or cause Yankton and other clients of Plaintiffs to improperly terminate or not renew their existing contracts with Plaintiffs.

Investigation and discovery are continuing. Plaintiffs reserve their right to supplement or amend their answer to this interrogatory as investigation and discovery continues.

**AS TO OBJECTIONS:**

Dated: May 4, 2026.

/s/Alan M. Anderson
Alan M. Anderson (MN Bar #149500)
(admitted *pro hac vice*)
L. Reagan Florence (MN Bar #0396468)
(admitted *pro hac vice*)
ALAN ANDERSON LAW FIRM LLC
11100 Wayzata Blvd., Suite 545
Minneapolis, MN 55305
Tel: 612-756-7010
Fax: 612-756-7050
Email: aanderson@anderson-lawfirm.com
           rflorence@anderson-lawfirm.com

and

Patrick L. Sealey AT0007085
HEIDMAN LAW FIRM, P.L.L.C.
1128 Historic Fourth Street
P.O. Box 3086
Sioux City, IA 51102
Phone: (712) 255-8838
Fax: (712) 258-6714
Email: Patrick.Sealey@heidmanlaw.com

*Attorneys for Plaintiffs Reliance Telephone of Grand Forks Incorporated and Reliance Systems Inc.*

44

**AS TO ANSWERS:**

I, Dave Hangsleben, as President of Reliance Telephone of Grand Forks Incorporated and Reliance Systems Inc., hereby state under penalty of perjury that I have reviewed the above Amended and Supplemental Answers to Interrogatories, and believe that they are true and correct based upon reasonable investigation and my knowledge as of the date of the execution of these Answers.

Dated: May 4, 2026.

Dave Hangsleben
President,
Reliance Telephone of Grand Forks
Incorporated and
Reliance Systems Inc.

45

## Certificate of Service

The undersigned hereby certifies that on this 4th day of May, 2026, they caused the foregoing document to be served upon counsel of record for Defendant NCIC.


Dated: May 4, 2026.                    /s/Alan M. Anderson