UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| RELIANCE TELEPHONE OF GRAND FOLKS INCORPORATED AND RELIANCE SYSTEMS, INC., | \* \* \* \* | 4:24-cv-4098-ECS |
| Plaintiffs, | \* \* | |
| vs. | \* \* | **DEFENDANT NETWORK COMMUNICATIONS** |
| NETWORK COMMUNICATIONS INTERNATIONAL CORP., | \* \* \* | **INTERNATIONAL CORP.'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT WITNESS, LEE G. PETRO** |
| Defendant. | \* \* \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Defendant Network Communications International Corp. ("NCIC") respectfully submits this memorandum in opposition to Plaintiffs' motion to exclude the testimony of Lee G. Petro.

## INTRODUCTION

Plaintiffs' motion seeks to prevent the jury from hearing from one of the most qualified witnesses in the country on the very regulatory subject Plaintiffs placed at the center of this case. The primary issue in this case involves the allegation that NCIC made false statements to Yankton County about whether Plaintiffs were charging inmate calling rates and fees in excess of those permitted by the Federal Communications Commission ("FCC"). Plaintiffs designated their own president, Dave Hangsleben, as an expert to tell the jury that Plaintiffs' rates were lawful and that NCIC's statements were false.

NCIC is entitled to respond with expert testimony of its own. In doing so, NCIC has disclosed the opinions of Lee Petro, a highly knowledgeable attorney in this area of law with over a decade of experience. Mr. Petro's testimony is not only relevant—it is critical. The

1

FCC's incarcerated-persons communications regulations are technical, specialized, and not within the ordinary experience of a lay jury. They involve rate caps, factors relating to the Universal Service Fund contribution, authorized fees, ancillary fees, public disclosure obligations, annual reporting requirements, and mandatory data submissions. A jury cannot fairly evaluate Plaintiffs' theory by hearing only from Plaintiffs' president. It should also hear from Mr. Petro, a nationally recognized FCC practitioner who has been involved in the FCC's incarcerated-persons communications rate-cap proceedings for years, has appeared before state regulatory and legislative bodies on these issues, and has served as President of the Federal Communications Bar Association.

While Plaintiffs dispute Mr. Petro's conclusions and argue he should have weighed the evidence differently, such disputes do not justify the extraordinary remedy of excluding rebuttal expert testimony on a central disputed issue. Instead, such arguments go to the weight of the evidence. Mr. Petro does not purport to tell the jury who wins. He does not opine on NCIC's ultimate liability. He does not offer an impermissible legal conclusion that Plaintiffs violated the law. Rather, he explains the FCC regulatory framework and applies his specialized knowledge to the rate information, public disclosures, and FCC filings identified in his report. His opinion directly rebuts Mr. Hangsleben's assertion that Reliance's $0.25/minute charge was compliant because it supposedly included the USF charge and therefore did not exceed the $0.21/minute rate cap. Mr. Petro explains why, under FCC standards, that assertion is not so simple— Plaintiffs' public disclosures did not disclose that the $0.25/minute rate included an ever-changing USF component, did not provide an itemized breakdown, and were inconsistent with Plaintiffs' FCC reporting.

2

Rule 702 favors admission, not exclusion. Any alleged weaknesses in Mr. Petro's factual assumptions, document review, or interpretation of FCC materials go to weight, not admissibility. Plaintiffs' motion should be denied.

## FACTUAL BACKGROUND

Plaintiffs allege that NCIC induced Yankton County to terminate its agreements with Reliance by telling Yankton County that Reliance was charging rates and fees in excess of FCC limits. Plaintiffs designated Dave Hangsleben, Reliance's founder, president, and CEO, to offer expert testimony that Reliance's rates were compliant with FCC regulations and that NCIC's statements were false. Mr. Hangsleben's report states that Reliance charged a flat $0.25/minute rate and contends that the charge was permissible because it included Reliance's USF contribution and did not exceed the $0.21/minute interstate rate cap once the USF component was backed out.

NCIC designated Mr. Petro to respond to the opinions of Mr. Hangsleben. Mr. Petro is a partner at Dickinson Wright PLLC in Washington, D.C. He has been involved in the FCC's efforts to adopt rate caps for incarcerated-persons communications services since 2011. He has authored or co-authored more than 140 submissions to the FCC. He has appeared in administrative and legislative hearings before several significant utility commissions and regulatory legislative bodies throughout the country regarding state and federal regulation of incarcerated-persons communications. He is a former President of the Federal Communications Bar Association, former Chairman of the FCBA Foundation, and recipient of the FCBA's Distinguished Service Award. He is one of the most qualified experts in this area of law, which is why NCIC has elected to use his expertise to explain to the jury its position regarding Reliance's excessive charges.

3

Mr. Petro reviewed the pleadings, Plaintiffs' discovery answers, Mr. Hangsleben's report, deposition testimony, Reliance FCC filings, NCIC FCC filings, and FCC releases in the relevant pleadings. His report addresses one central issue raised by Mr. Hangsleben: whether the alleged statements by NCIC employees regarding Plaintiffs' practice of charging more than $0.21/minute accurately reflected the FCC's rules.

Mr. Petro explained in his report and deposition testimony that, at the relevant time, FCC rules established a $0.21/minute rate cap for interstate calls from jails with an average daily population under 1,000. The FCC also permitted certain ancillary fees, mandatory taxes, mandatory fees, and authorized fees, including the USF fee, and required providers to clearly, accurately, and conspicuously disclose interstate, intrastate, and international rates and ancillary service charges to consumers on their websites.

Mr. Petro then analyzed Reliance's public rate disclosures and FCC filings. He noted that Reliance's Inmate Wallet product was advertised as "$0.25/minute + applicable taxes," while its Phone Card product was advertised as "$0.21/minute + Federal Universal Service Fund." In Mr. Petro's opinion, the Inmate Wallet disclosure did not tell consumers that the $0.25/minute rate included both a per-minute charge and the USF fee. Nor did Reliance's website explain which charges were "applicable taxes." Mr. Petro further notes that Reliance's FCC reporting listed only a $0.21/minute interstate rate for Yankton County, and that it was unclear whether the FCC had ever reviewed the Inmate Wallet product as Reliance now describes it.

Based on his review, Mr. Petro concluded that Reliance's disclosures and FCC filings raised serious questions about Mr. Hangsleben's opinion that NCIC's statements were false. He further concluded that Reliance's public and regulatory information was inconsistent and misrepresented the potential for rates at variances from the stated $0.21/minute rate.

4

## LEGAL STANDARD

Federal Rule of Evidence 702 permits expert testimony if: (a) the expert's specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert reliably applied those principles and methods to the facts of the case.

The Rule 702 inquiry is flexible. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594–95 (1993). The Eighth Circuit has repeatedly emphasized that Rule 702 is one of admissibility rather than exclusion. *See Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014). Doubts regarding the usefulness of expert testimony should generally be resolved in favor of admissibility. *Id.*; *see also Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006).

Contrary to Plaintiffs' insistence, the District Court's gatekeeping function is not intended to replace the adversary system. The opportunity for cross-examination, presentation of contrary evidence, and careful jury instructions remains the traditional and appropriate means of attacking admissible expert testimony. *Daubert*, 509 U.S. at 596. As a result, challenges to the factual basis of an expert's opinion ordinarily go to its weight, not admissibility, unless the opinion is so fundamentally unsupported that it can offer no assistance to the jury. *See Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 415–16 (8th Cir. 2005) (citing *Hartley v. Dillards, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002)).

5

## ARGUMENT AND ANALYSIS

I.  **Mr. Petro's testimony is directly relevant to the central issue Plaintiffs placed before the jury.**

In this case, Plaintiffs attempt to designate their own president as an expert to explain FCC rate compliance, while at the same time, they claim that NCIC's rebuttal expert on that same issue is irrelevant. Plaintiff cannot have it both ways. Plaintiffs' Lanham Act and tortious-interference claims are premised, in part, on the allegation that NCIC falsely told Yankton County that Reliance was charging inmate calling rates and fees in excess of FCC limits. Plaintiffs' own expert report squarely addresses that issue. Mr. Hangsleben opines that Reliance "at all times" charged fees in accordance with FCC regulation 47 C.F.R. Part 64. That opinion is offered to prove falsity, causation, and damages. NCIC is entitled to rebut it through its own expert testimony.

Mr. Petro's testimony addressed the same question from the perspective of a nationally recognized FCC practitioner. He explained the FCC rate cap, the treatment of USF charges, the distinction between rate caps and authorized fees, and the public disclosure obligations imposed on IPCS providers. He then evaluated whether Reliance's public disclosures and FCC filings support Mr. Hangsleben's claim that the $0.25/minute charge complied with FCC requirements because it included USF. *See Krasniqi v. Holdahl, Inc.*, 2022 WL 612660, *3 (D. S.D. Mar. 2, 2022) (quoting *Thomas v. St. Mary's Roman Cath. Church*, 283 N.W.2d 254, 257 (S.D. 1979)) (stating the purpose of expert testimony is to assist "when the issues presented relate to matters so far removed from the realm of common experience or beyond the ken of the average layman that with all the facts before it, the jury, without the assistance of the expert opinion, could not be expected to draw a correct inference.")

Mr. Petro's testimony will undoubtedly assist the jury on a very complex issue. *See United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) ("[W]hen the legal regime is complex and the judge determines that the witness' testimony would be helpful in explaining it to the jury, the testimony may be admitted."); *United States v. R. J. Reynolds Tobacco Co.*, 416 F. Supp. 313, 315 (D.N.J. 1976) (noting "it is the very purpose of expert testimony to assist the trier of the facts to understand, evaluate and decide the complex evidential materials in a case."); *see also Robinson*, 447 F.3d at 1100 ("Rule 702 only requires that an expert possess 'knowledge, skill, experience, training, or education' sufficient to 'assist' the trier of fact, which is 'satisfied where expert testimony advances the trier of fact's understanding to *any* degree.'" (emphasis added) (citation omitted)). A lay juror is unlikely to understand, without expert assistance, the difference between a rate cap, an authorized fee, a USF contribution factor, an ancillary fee, a pass-through charge, and a provider's obligation to disclose rates and fees clearly and conspicuously. Further, a reasonable lay juror would not understand why the manner in which Reliance disclosed and reported its rates matters to whether NCIC's statements were false or misleading. Expert testimony is critical to explain those concepts, and is particularly crucial to the tortious interference claims, as it relates to the truthfulness of portrayals that NCIC made to Yankton County.

Plaintiffs characterize Mr. Petro's testimony as being limited to "disclosure" rather than "rates." That is a false distinction. Under the FCC framework, rate compliance is not divorced from how a provider identifies, discloses, itemizes, and reports the amounts charged to consumers. Mr. Hangsleben's opinion depends on the premise that Reliance's $0.25/minute charge included USF and should therefore be treated as compliant. Mr. Petro responds that Reliance did not disclose the $0.25/minute charge that way, did not itemize it that way, and did not report it that way to the FCC. That is not a side issue. It goes directly to the factual and

regulatory premise of Plaintiffs' case. Accordingly, Mr. Petro should be allowed to testify on these complex matters that Plaintiff has put at issue in the case.

## II.    Mr. Petro is exceptionally qualified to offer the challenged opinions.

Plaintiffs cannot dispute the qualifications of Mr. Petro as it relates to regulations under the FCC for incarcerated-persons communications. As previously noted, Mr. Petro has been involved in FCC rate-cap proceedings for incarcerated-persons communications services since 2011. He has authored or co-authored a substantial number of FCC submissions. He has appeared before multiple public utilities commissions and legislative bodies on the regulation of incarcerated-persons communications. He practices in Washington, D.C., in the field of communications law. He is a former President of the Federal Communications Bar Association and recipient of the FCBA Distinguished Service Award.

It is impossible to oversell Mr. Petro's qualifications among the premier experts in this field. His experience is not academic or peripheral. It is directly tied to the FCC proceedings, FCC rules, rate-cap structure, and reporting requirements at issue in this case. While, Plaintiffs emphasize that Mr. Petro has represented NCIC in FCC matters, such information is merely fodder for cross-examination—it is not a basis for exclusion. Experts are often retained because they have prior experience with a party or industry. Bias, compensation, and prior work for a party may be proper subjects for cross-examination, but they do not make the expert unqualified. Indeed, Plaintiffs' own expert is not merely a retained expert with a prior relationship—he is Reliance's president and CEO. If Plaintiffs' president may offer expert testimony on Reliance's own rate compliance, then NCIC's experienced FCC counsel may certainly offer rebuttal testimony on the FCC framework and the reliability of Plaintiffs' compliance theory.

### III.    Mr. Petro's opinions are based on sufficient facts and reliable methodology.

Plaintiffs argue Mr. Petro did not review the "right" evidence. Again, that argument goes to weight, not admissibility. *See A.O.A. v. Rennert*, 2025 WL 2606548, at \*20 (E.D. Mo. Sept. 9, 2025) ("A challenge that an expert did not rely on 'the right' information in reaching his opinion may be a valid point on which to cross-examine the expert at trial but not to exclude his testimony *in toto*."). Mr. Petro reviewed Mr. Hangsleben's report, the pleadings, Plaintiffs' interrogatory answers, deposition testimony, Reliance's FCC submissions, NCIC's FCC submissions, and FCC orders and releases in the relevant rulemaking dockets. He also reviewed public rate information and FCC reporting materials. That is more than enough factual foundation for expert testimony responding to Mr. Hangsleben's regulatory compliance opinion.

Mr. Petro's method is straightforward and reliable: he identified the applicable FCC rate-cap and disclosure framework, reviewed Reliance's public rate disclosures, compared such disclosures to Reliance's FCC filings and annual reports, and evaluated whether those materials support Mr. Hangsleben's conclusion that the $0.25/minute charge complied with FCC standards because it included USF. Plaintiffs may argue he should have reviewed additional materials, or that the Barnes County disclosure is not identical to Yankton County's disclosure. They may argue that the jury should accept Mr. Hangsleben's explanation instead. But those are disputes for cross-examination, and should not render Mr. Petro's opinions inadmissible. *See id.* ("[T]o the extent defendants proffer their own experts who render different or conflicting opinions, competing expert testimony is best tested at trial through the adversary process.").

The Eighth Circuit does not require an expert to consider every piece of evidence a party believes to be relevant. *See Sappington v. Skyjack, Inc.*, 512 F.3d 440, 450 (8th Cir. 2008) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility." (quoting *Triton Corp. v. Hardrives, Inc.*, 85 F.3d 343, 347 (8th Cir. 1996)).

9

An expert's factual basis must be sufficient, not perfect. *See Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 632 (8th Cir. 2012) (holding that the studies on which the expert relied, although not perfect, were sufficient to support his opinion). So long as the expert's opinion rest on a reliable foundation and will assist the jury, disagreements over factual assumptions and the weight of the evidence are for the jury.

Here, Plaintiffs' criticisms are particularly misplaced because Mr. Petro is rebutting Mr. Hangsleben's regulatory premise. Mr. Hangsleben has concluded that Reliance could charge $0.25/minute because the charge included USF. Mr. Petro explains why Reliance's own public disclosures and FCC filings do not support that characterization. That is a proper rebuttal opinion, and Mr. Petro's testimony is crucial to explain that opinion to a jury.

## IV.     Mr. Petro is not offering an impermissible legal conclusion.

Plaintiffs further argue Mr. Petro improperly interprets FCC regulations. In technical regulatory cases, experts routinely explain industry standards, agency rules, specialized terminology, and how regulated entities apply those rules in practice. *See, e.g., United States v. Bilzerian,* 926 F.2d 1285, 1294 (2d Cir. 1991) ("Particularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts"); *Peckham v. Cont'l Cas. Ins. Co.,* 895 F.2d 830, 837 (1st Cir. 1990) (determining that expert testimony on proximate causation in insurance law was properly admitted because experts "could reasonably be expected to shed some light in a shadowy domain"). Indeed, that is what makes such witnesses "experts." Such testimony assists the jury so long as the expert does not instruct the jury on the law or tell the jury what result to reach. Fed. R. Evid. 704(a) also provides that an opinion is not objectionable merely because it embraces an ultimate issue. *See Offill,* 666 F.3d at 175 ("Indeed, courts and commentators have consistently concluded that

expert testimony that ordinarily might be excluded on the ground that it gives legal conclusions may nonetheless be admitted in cases that involve highly technical legal issues.").

Mr. Petro's report expressly states that he is not offering legal opinions regarding the rights and liabilities of the parties. Further, Mr. Petro will not instruct the jury that Plaintiffs violated the law. He does not define the legal elements of the Lanham Act or tortious interference. Instead, he explains the FCC regulatory context that a jury needs to understand in order to evaluate the parties' contentions as it relates to Reliance's billing framework.

There is a meaningful difference between instructing the jury on the law and explaining specialized regulatory concepts. *C.f. United States v. Orellana*, 833 F. App'x 98, 100–01 (9th Cir. 2020) (finding no abuse of discretion where district court found expert testimony generally explaining concepts of money laundering would be helpful to jury because applicable criminal law was complex and where "the [district] court instructed the jury 'to apply the law as I give it to you,' that [expert's] opinion testimony 'should be judged like any other testimony,' and that the jury was free to 'accept ... none of it.'"). The Court will instruct the jury on the law. Mr. Petro will explain how the FCC's IPCS rate-cap and disclosure framework operates, what providers were required to disclose and report, and why Reliance's disclosures and filings raise serious questions about Mr. Hangsleben's opinion. That is exactly what expert testimony is intended to do.

Simply put, Mr. Petro's testimony is admissible, and based on the materials he reviewed, he will testify that Reliance's rate disclosures and FCC filings were inconsistent with Mr. Hangsleben's claim that Reliance's $0.25/minute charge was properly disclosed and compliant.

## V.     Mr. Petro may explain why Mr. Hangsleben's expert opinion is unreliable.

Plaintiffs also argue Mr. Petro may not comment on Mr. Hangsleben's credibility. NCIC does not offer Mr. Petro to testify about Mr. Hangsleben's honesty, intent, or character for

11

truthfulness. However, Mr. Petro may criticize the reliability of Mr. Hangsleben's expert opinions. A rebuttal expert may identify flaws in an opposing expert's assumptions, methodology, data, and conclusions. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) ("The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." (quoting *United States v. Lamoreaux*, 422 F.3d 750, 755 (8th Cir.2005)); *Complaint of Borghese Lane, LLC*, 2023 WL 3114851, at *3 (W.D. Pa. Apr. 27, 2023) (listing cases). Mr. Petro's opinion that Mr. Hangsleben's analysis raises "serious questions" is not a credibility opinion. Rather, it is an expert critique of Mr. Hangsleben's regulatory analysis.

Mr. Hangsleben is Reliance's president and CEO. He has a direct financial and personal stake in the outcome of the case. Yet Plaintiffs offer him as an expert to tell the jury that Reliance complied with FCC rules. NCIC must be permitted to test that opinion through qualified rebuttal testimony. Mr. Petro should be allowed to explain that Mr. Hangsleben's opinion fails to account for Reliance's public disclosures, its lack of itemization, the ever-changing USF contribution factor, and inconsistencies in Reliance's FCC filings. Ultimately, the jury will decide upon the credibility of these experts. Mr. Petro will address the reliability of the opinions and the regulatory materials underlying them. That distinction defeats Plaintiffs' argument, and should allow Mr. Petro to comment on the credibility of Mr. Hangsleben's methodology as expressed in his report and deposition.

## VI.   Plaintiffs' motion would unfairly leave the jury with only Reliance's president's view of a technical FCC issue.

Excluding Mr. Petro would create a fundamentally unfair presentation of the evidence. Plaintiffs would be permitted to present expert testimony from their President on whether

Reliance's rates complied with FCC requirements, while NCIC would be prohibited from presenting one of the nation's leading FCC IPCS practitioners to respond.

That is directly opposed to the fundamental purpose of Rule 702, which is designed to assist juries in understanding highly technical issues. *R. J. Reynolds Tobacco Co.*, 416 F. Supp. at 315 ("[I]t is the very purpose of expert testimony to assist the trier of the facts to understand, evaluate and decide the complex evidential materials in a case."). Jurors should not be deprived from a competing expert analysis. Where both sides offer qualified experts on a specialized subject, the normal course is to allow the jury to hear both and decide what weight to give each opinion. *See A.O.A.*, 2025 WL 2606548, at *20 ("[C]ompeting expert testimony is best tested at trial through the adversary process."); *Kuhn*, 686 F.3d at 625 ("[T]rial courts are not empowered 'to determine which of several competing scientific theories has the best provenance.'" (quoting *Milward v. Acuity Specialty Prods. Grp.*, 639 F.3d 11, 15 (1st Cir. 2011)). That is especially important here. Plaintiffs' case depends on proving that NCIC's statements were false or misleading. Mr. Petro's testimony bears on that issue. If the jury accepts Mr. Petro's analysis, it may conclude that Reliance's public disclosures and FCC filings did not support the compliance position now advanced by Mr. Hangsleben. That would be highly relevant to falsity, materiality, intent, causation, and damages. Plaintiffs' motion is an attempt to win that factual dispute through exclusion rather than through cross-examination. The Court should reject that attempt.

## VII. At most, Plaintiffs' objections support cross-examination or limited tailoring, not exclusion.

Even if the Court credits some portion of Plaintiffs' criticisms, complete exclusion would be unwarranted. Plaintiffs challenge the scope of Mr. Petro's testimony, not his qualifications. They challenge the documents he reviewed, not whether he has specialized knowledge. They challenge his conclusions, not whether the FCC regulatory framework is relevant.

If necessary, the Court can impose reasonable limits.  NCIC does not intend to elicit testimony that Mr. Hangsleben is dishonest, that Plaintiffs are liable for violating the law, or that NCIC cannot be liable as a matter of law.  He is merely providing an expert opinion that Plaintiffs fail to make clear that they are charging rates in accordance with FCC regulations, and that Mr. Hangsleben's contentions on how that is reported to the FCC is misleading.  Mr. Petro should be permitted to testify about the FCC regulatory framework, Reliance's rate disclosures, Reliance's FCC filings, and why those materials undermine Mr. Hangsleben's compliance opinion.

<strong><u>CONCLUSION</u></strong>

Plaintiffs placed FCC rate compliance at the center of this case.  NCIC is entitled to respond to the expert opinions of Plaintiffs' own president, with qualified expert testimony of Mr. Petro.  Mr. Petro is exceptionally qualified. His opinions are relevant, reliable, and helpful. They concern technical FCC rate-cap, USF, disclosure, and reporting issues that are beyond ordinary lay understanding.  Plaintiffs' objections go to weight, not admissibility.  For these reasons, NCIC respectfully requests that the Court deny Plaintiffs' Motion to Exclude Lee G. Petro.

Dated this 15th day of June, 2026.

EVANS, HAIGH & ARNDT, L.L.P.

_____
Tyler W. Haigh
Ryan W.W. Redd
225 E. 11th Street, Suite 201
PO Box 2790
Sioux Falls, SD 57101-2790
(605) 275-9599; Fax:  (605) 275-9602
Email: thaigh@ehalawyers.com
      rredd@ehalawyers.com
*Attorneys for Defendant*

14